# Exhibit 2

Case 1:12-cv-05067-AT   Document 27-2   Filed 08/23/13   Page 2 of 51

# Exhibit A

OPTION ONE MORTGAGE CORPORATION,

as Originator and Seller

OPTION ONE OWNER TRUST 2001-1A,

OPTION ONE OWNER TRUST 2001-2,

OPTION ONE OWNER TRUST 2002-3,

OPTION ONE OWNER TRUST 2003-4,

OPTION ONE OWNER TRUST 2003-5,

OPTION ONE OWNER TRUST 2005-6,

OPTION ONE OWNER TRUST 2005-7,

OPTION ONE OWNER TRUST 2005-8,

OPTION ONE OWNER TRUST 2005-9

as Sellers

and

OPTION ONE MORTGAGE ACCEPTANCE CORPORATION,

as Purchaser

MORTGAGE LOAN PURCHASE AGREEMENT

Dated as of June 23, 2006

Fixed Rate and Adjustable Rate Mortgage Loans

Option One Mortgage Loan Trust 2006-2
Asset-Backed Certificates, Series 2006-2

**Table of Contents**

Page

ARTICLE I.

DEFINITIONS

Section 1.01        Definitions ...................................................................................................3

ARTICLE II.

SALE OF MORTGAGE LOANS; PAYMENT OF PURCHASE PRICE

Section 2.01        Sale of Mortgage Loans. ...........................................................................3
Section 2.02        Obligations of the Originator Upon Sale.....................................................3
Section 2.03        Payment of Purchase Price for the Mortgage Loans. ....................................6

ARTICLE III.

REPRESENTATIONS AND WARRANTIES; REMEDIES FOR BREACH

Section 3.01        Originator Representations and Warranties Relating to the Mortgage Loans.7
Section 3.02        Originator Representations And Warranties Relating to The Originator.....14
Section 3.03        Seller Trust Representations And Warranties ..............................................16
Section 3.04        Remedies For Breach of Representations And Warranties ..........................18

ARTICLE IV.

ORIGINATOR'S COVENANTS

Section 4.01        Covenants of The Originator......................................................................19

ARTICLE V.

INDEMNIFICATION WITH RESPECT TO THE MORTGAGE LOANS

Section 5.01        Indemnification. .........................................................................................20

ARTICLE VI.

TERMINATION

Section 6.01        Termination .................................................................................................23

i

ARTICLE VII.

MISCELLANEOUS PROVISIONS

| | | |
|---|---|---|
| Section 7.01 | Amendment | 23 |
| Section 7.02 | Governing Law | 23 |
| Section 7.03 | Notices | 23 |
| Section 7.04 | Severability of Provisions | 24 |
| Section 7.05 | Counterparts | 24 |
| Section 7.06 | Further Agreements | 24 |
| Section 7.07 | Intention of The Parties | 25 |
| Section 7.08 | Successors And Assigns, Assignment of Purchase Agreement | 25 |
| Section 7.09 | Survival | 26 |
| Section 7.10 | Owner Trustee | 26 |

SCHEDULES

| | |
|---|---|
| SCHEDULE I | MORTGAGE LOANS OWNED BY ORIGINATOR |
| SCHEDULE II | MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2001-1A |
| SCHEDULE IIII | MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2001-2 |
| SCHEDULE IV | MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2002-3 |
| SCHEDULE V | MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2003-4 |
| SCHEDULE VI | MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2003-5 |
| SCHEDULE VII | MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2005-6 |
| SCHEDULE VIII | MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2005-7 |
| SCHEDULE IX | MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2005-8 |
| SCHEDULE X | MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2005-9 |

[TPW: NYLEGAL:524239.5] 18091-00086  07/12/2006 06:40 PM

MORTGAGE LOAN PURCHASE AGREEMENT, dated as of June 23, 2006 (the "Agreement"), among Option One Mortgage Corporation (the "Originator"), Option One Owner Trust 2001-1A ("Seller Trust 1A"), Option One Owner Trust 2001-2 ("Seller Trust 2"), Option One Owner Trust 2002-3 ("Seller Trust 3"), Option One Owner Trust 2003-4 ("Seller Trust 4"), Option One Owner Trust 2003-5 ("Seller Trust 5"), Option One Owner Trust 2005-6 ("Seller Trust 6"), Option One Owner Trust 2005-7 ("Seller Trust 7"), Option One Owner Trust 2005-8 ("Seller Trust 8") and Option One Owner Trust 2005-9 ("Seller Trust 9"; each of Seller Trust 1A, Seller Trust 1B, Seller Trust 2, Seller Trust 3, Seller Trust 4, Seller Trust 5, Seller Trust 6, Seller Trust 7, Seller Trust 8 and Seller Trust 9, a "Seller Trust" and collectively the "Seller Trusts") (the Originator and each Seller Trust a "Seller" and collectively the "Sellers") and Option One Mortgage Acceptance Corporation (the "Purchaser").

### W I T N E S S E T H

WHEREAS, each Seller is the owner of (a) the notes or other evidence of indebtedness (the "Mortgage Notes") so indicated on the applicable Schedule hereto referred to below and (b) the other documents or instruments constituting the Mortgage File (collectively, the "Mortgage Loans"); and

WHEREAS, the Sellers, as of the date hereof, own the mortgages (the "Mortgages") on the properties (the "Mortgaged Properties") securing such Mortgage Loans, including rights to (a) any property acquired by foreclosure or deed in lieu of foreclosure or otherwise and (b) the proceeds of any insurance policies covering the Mortgage Loans or the Mortgaged Properties or the obligors on the Mortgage Loans; and

WHEREAS, the parties hereto desire that the Sellers sell the Mortgage Loans to the Purchaser pursuant to the terms of this Agreement; and

WHEREAS, each Seller Trust is an indirect subsidiary of the Originator and the Originator is the administrator of each Seller Trust; and

WHEREAS, the Originator originated or acquired the Mortgage Loans and subsequently sold the Mortgage Loans to the applicable Seller Trust; and

WHEREAS, pursuant to the terms of a Pooling and Servicing Agreement dated as of June 1, 2006 (the "Pooling and Servicing Agreement") among the Purchaser as depositor, the Originator as master servicer and Wells Fargo Bank, N.A. as trustee (the "Trustee"), the Purchaser will convey the Mortgage Loans to Option One Mortgage Loan Trust 2006-2 (the "Trust"); and

WHEREAS, the Originator is obligated, in connection with the transactions contemplated by this Agreement, to make certain representations, warranties and covenants with respect to itself and the Mortgage Loans; and

WHEREAS, each Seller Trust is obligated, in connection with the transactions contemplated by this Agreement, to make certain representations, warranties and covenants with respect to itself.

[TPW: NYLEGAL:524239.5] 18091-00086  07/12/2006 06:40 PM

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

[TPW: NYLEGAL:524239.5] 18091-00086  07/12/2006 06:40 PM

# ARTICLE I.

## DEFINITIONS

Section 1.01   <u>Definitions</u>.  All capitalized terms used but not defined herein and below shall have the meanings assigned thereto in the Pooling and Servicing Agreement.

"ORIGINATOR INFORMATION": The information in the Prospectus Supplement as follows: under "SUMMARY OF TERMS—Mortgage Loans", the first sentence under the fourth bullet point under "RISK FACTORS—Unpredictability of Prepayments and Effect on Yields," the first sentence under "RISK FACTORS— Delinquency Status of the Mortgage Loans," the first sentence under "RISK FACTORS—Second Lien Loan Risk", the first sentence under "RISK FACTORS—Interest Only Mortgage Loans", the first sentence in the third paragraph under "RISK FACTORS—Potential Inadequacy of Credit Enhancement for the Class A and Mezzanine Certificates, the second sentence under the third bullet point under "RISK FACTORS—Interest Generated by the Mortgage Loans May Be Insufficient to Maintain Overcollateralization", the second sentence under "RISK FACTORS—High Loan-to-Value Ratios Increase Risk of Loss", the third sentence under "RISK FACTORS—Balloon Loan Risk", the first two sentences under "RISK FACTORS—Simultaneous Second Lien Risk", "THE MORTGAGE POOL", "OPTION ONE MORTGAGE CORPORATION", and the first sentence of the seventh paragraph under "YIELD, PREPAYMENT AND MATURITY CONSIDERATIONS".

# ARTICLE II.

## SALE OF MORTGAGE LOANS; PAYMENT OF PURCHASE PRICE

Section 2.01   <u>Sale of Mortgage Loans.</u>  The applicable Seller, concurrently with the execution and delivery of this Agreement, does hereby sell, and in connection therewith hereby assigns to the Purchaser, effective as of the Closing Date, without recourse, (i) all of its right, title and interest in and to each Mortgage Loan identified on the related Schedule, including the related Cut-off Date Principal Balance, all interest accruing thereon on and after the Cut-off Date and all collections in respect of interest and principal due after the Cut-off Date; (ii) property which secured such Mortgage Loan and which has been acquired by foreclosure or deed in lieu of foreclosure; (iii) its interest in any insurance policies in respect of the Mortgage Loans and (iv) all proceeds of any of the foregoing.  In addition to the sale of the Mortgage Loans, the Originator will direct the Trustee to enter into the Interest Rate Swap Agreement and a Swap Administration Agreement on behalf of the Trust.

Section 2.02   <u>Obligations of the Originator Upon Sale</u>.  In connection with any transfer pursuant to Section 2.01 hereof, the Originator further agrees, at its own expense on or prior to the Closing Date, (a) to cause its books and records and the books and records of each Seller Trust, to indicate that the Mortgage Loans have been sold to the Purchaser pursuant to this Agreement and (b) to deliver to the Purchaser and the Trustee a computer file containing a true and complete list of all such Mortgage Loans specifying for each such Mortgage Loan, as of the

[TPW: NYLEGAL:524239.5] 18091-00086  07/12/2006 06:40 PM

Cut-off Date (i) its account number and (ii) the Cut-off Date Principal Balance. Such files, which form a part of Exhibit D to the Pooling and Servicing Agreement, shall also be marked as Schedules I-XI to this Agreement and are hereby incorporated into and made a part of this Agreement.

In connection with any conveyance by the Sellers, the Originator shall on behalf of the Purchaser deliver to, and deposit with the Trustee, as assignee of the Purchaser, on or before the Closing Date, the following documents or instruments with respect to each Mortgage Loan:

(i)     the original Mortgage Note, endorsed either (A) in blank, in which case the Trustee shall cause the endorsement to be completed or (B) in the following form: "Pay to the order of Wells Fargo Bank, N.A., as Trustee, without recourse", or with respect to any lost Mortgage Note, an original Lost Note Affidavit stating that the original mortgage note was lost, misplaced or destroyed, together with a copy of the related mortgage note; provided, however, that such substitutions of Lost Note Affidavits for original Mortgage Notes may occur only with respect to Mortgage Loans, the aggregate Cut-off Date Principal Balance of which is less than or equal to 1.00% of the Pool Balance as of the Cut-off Date;

(ii)     the original Mortgage with evidence of recording thereon, and the original recorded power of attorney, if the Mortgage was executed pursuant to a power of attorney, with evidence of recording thereon;

(iii)     an original Assignment of Mortgage, in form and substance acceptable for recording. The Mortgage shall be assigned either (A) in blank or (B) to "Wells Fargo Bank, N.A., as Trustee, without recourse";

(iv)     an original of any intervening assignment of Mortgage showing a complete chain of assignments;

(v)     the original or a certified copy of lender's title insurance policy; and

(vi)     the original or copies of each assumption, modification, written assurance or substitution agreement, if any.

The Originator hereby confirms to the Purchaser and the Trustee that it has caused the appropriate entries to be made in its general accounting records to indicate that such Mortgage Loans have been transferred to the Trustee and constitute part of the Trust in accordance with the terms of the Pooling and Servicing Agreement.

If any of the documents referred to in Section 2.02(ii), (iii) or (iv) above has as of the Closing Date been submitted for recording but either (x) has not been returned from the applicable public recording office or (y) has been lost or such public recording office has retained the original of such document, the obligations of the Originator to deliver such documents shall be deemed to be satisfied upon (1) delivery to the Trustee or the Custodian no later than the Closing Date, of a copy of each such document certified by the Originator in the case of (x) above or the applicable public recording office in the case of (y) above to be a true and complete copy of the original that was submitted for recording and (2) if such copy is

4

certified by the Originator, delivery to the Trustee or the Custodian, promptly upon receipt thereof of either the original or a copy of such document certified by the applicable public recording office to be a true and complete copy of the original. If the original lender's title insurance policy, or a certified copy thereof, was not delivered pursuant to Section 2.02(v) above, the Originator shall deliver or cause to be delivered to the Trustee or the Custodian, the original or a copy of a written commitment or interim binder or preliminary report of title issued by the title insurance or escrow company, with the original or a certified copy thereof to be delivered to the Trustee or the Custodian, promptly upon receipt thereof. The Originator shall deliver or cause to be delivered to the Trustee or the Custodian promptly upon receipt thereof any other documents constituting a part of a Mortgage File received with respect to any Mortgage Loan, including, but not limited to, any original documents evidencing an assumption or modification of any Mortgage Loan.

Upon discovery or receipt of notice of any materially defective document in, or that a document is missing from, a Mortgage File, the Originator shall have 120 days to cure such defect or deliver such missing document to the Purchaser. If the Originator does not cure such defect or deliver such missing document within such time period, the Originator shall either repurchase or substitute for such Mortgage Loan pursuant to Section 2.03 of the Pooling and Servicing Agreement.

The Purchaser hereby acknowledges its acceptance of all right, title and interest to the Mortgage Loans and other property, now existing and hereafter created, conveyed to it pursuant to Section 2.01.

The parties hereto intend that the transaction set forth herein be a sale by the Sellers to the Purchaser of all the applicable Seller's right, title and interest in and to the related Mortgage Loans and other property described above. In the event the transaction set forth herein is deemed not to be a sale, each Seller hereby grants to the Purchaser a security interest in all of such Seller's right, title and interest in, to and under the related Mortgage Loans and other property described above, whether now existing or hereafter created, to secure all of such Seller's obligations hereunder; and this Agreement shall constitute a security agreement under applicable law.

The Originator shall cause the Assignments which were delivered in blank to be completed and shall cause all Assignments referred to in Section 2.02(iii) hereof and, to the extent necessary, in Section 2.02(iv) hereof to be recorded.  The Originator shall be required to deliver such Assignments for recording within 90 days of the Closing Date.  Notwithstanding the foregoing, however, for administrative convenience and facilitation of servicing and to reduce closing costs, the Assignments of Mortgage shall not be required to be submitted for recording with respect to any Mortgage Loan in any jurisdiction where the Rating Agencies do not require recordation in order to receive the ratings on the Certificates at the time of their initial issuance; provided, however, each Assignment shall be submitted for recording by the Originator in the manner described above, at no expense to the Trust Fund or Trustee, upon the earliest to occur of: (i) reasonable direction by Holders of Certificates entitled to at least 25% of the Voting Rights, or the NIMS Insurer, (ii) the occurrence of a Master Servicer Event of Termination, (iii) the occurrence of a bankruptcy, insolvency or foreclosure relating to the Master Servicer, (iv) the occurrence of a servicing transfer as described in Section 7.02 of the Pooling and Servicing

Agreement, (v) if the Originator is not the Master Servicer and with respect to any one Assignment the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage and (vi) any Mortgage Loan that is 90 days or more Delinquent and such recordation would be necessary to facilitate conversion of the Mortgaged Property as provided herein. Upon (a) receipt of written notice from the Trustee that recording of the Assignments is required pursuant to one or more of the conditions (excluding (v) and (vi) above) set forth in the preceding sentence or (b) upon the occurrence of condition (v) or (vi) in the preceding sentence, the Originator shall be required to deliver such Assignments for recording as provided above, promptly and in any event within 30 days following receipt of such notice. Notwithstanding the foregoing, if the Originator fails to pay the cost of recording the Assignments, such expense will be paid by the Trustee and the Trustee shall be reimbursed for such expenses by the Trust. The Originator shall furnish the Trustee, or its designated agent, with a copy of each Assignment submitted for recording. In the event that any such Assignment is lost or returned unrecorded because of a defect therein, the Originator shall promptly have a substitute Assignment prepared or have such defect cured, as the case may be, and thereafter cause each such Assignment to be duly recorded.

The Originator shall forward to the Purchaser original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with the Pooling and Servicing Agreement within two weeks of their execution; provided, however, that the Originator shall provide the Purchaser with a certified true copy of any such document submitted for recordation within two weeks of its execution, and shall provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within 365 days of its submission for recordation. In the event that the Originator cannot provide a copy of such document certified by the public recording office within such 365 day period, the Originator shall deliver to the Purchaser, within such 365 day period, an Officer's Certificate of the Master Servicer which shall (A) identify the recorded document, (B) state that the recorded document has not been delivered to the Purchaser due solely to a delay caused by the public recording office, (C) state the amount of time generally required by the applicable recording office to record and return a document submitted for recordation, if known, and (D) specify the date the applicable recorded document is expected to be delivered to the Purchaser, and, upon receipt of a copy of such document certified by the public recording office, the Originator shall immediately deliver such document to the Purchaser. In the event the appropriate public recording office will not certify as to the accuracy of such document, the Originator shall deliver a copy of such document certified by an officer of the Originator to be a true and complete copy of the original to the Purchaser.

Section 2.03    Payment of Purchase Price for the Mortgage Loans.

(a)    In consideration of the sale of the Mortgage Loans from each Seller to the Purchaser on the Closing Date, the Purchaser agrees to pay each Seller on the Closing Date by transfer of (i) immediately available funds in the amount set forth below and (ii) a percentage interest, as specified below, in the Class C Certificates, the Class P Certificates and the Residual Certificates (collectively, the "Retained Certificates") which such Certificates shall be registered in the name of the applicable Seller or a designee.

6

| Seller | Cash Consideration | Percentage Interest in Retained Certificates |
|---|---|---|
| Originator | $135,842,147.64 | 9.06% |
| 2001-1A | $202,115,768.08 | 13.48% |
| 2001-2 | $94,219,460.76 | 6.28% |
| 2002-3 | $131,971,517.51 | 8.80% |
| 2003-4 | $134,316,579.23 | 8.96% |
| 2003-5 | $213,590,649.44 | 14.24% |
| 2005-6 | $131,131,649.49 | 8.74% |
| 2005-7 | $108,530,005.66 | 7.24% |
| 2005-8 | $274,008,976.46 | 18.27% |
| 2005-9 | $74,053,484.37 | 4.94% |

(b)     The Originator shall pay, and be billed directly for, all expenses incurred by the Purchaser in connection with the issuance of the Certificates, including, without limitation, printing fees incurred in connection with the prospectus relating to the Certificates, blue sky registration fees and expenses, fees and expenses of Purchaser's counsel, fees of the Rating Agencies requested to rate the Certificates, accountant's fees and expenses and the fees and expenses of the Trustee and other out-of-pocket costs, if any.

ARTICLE III.

REPRESENTATIONS AND WARRANTIES; REMEDIES FOR BREACH

Section 3.01   Originator Representations and Warranties Relating to the Mortgage Loans.

(a)     The Originator hereby represents and warrants with respect to the Mortgage Loans to the Purchaser that as of the Closing Date or as of such date specifically provided herein:

(1)     The applicable Seller has good title to and is the sole owner and holder of the related Mortgage Loans;

(2)     Immediately prior to the transfer and assignment to the Purchaser, the Mortgage Notes and the Mortgage Loans were not subject to an assignment or pledge, and the applicable Seller has full right and authority to sell and assign the related Mortgage Loans;

(3)     The applicable Seller is transferring the related Mortgage Loan to the Purchaser free and clear of any and all liens, pledges, charges or security interests of any nature encumbering the Mortgage Loans;

(4)     The information set forth on each Schedule is true and correct in all material respects as of the Cut-off Date or such other date as may be indicated in such schedule;

(5)     The Mortgage Loan has been acquired, serviced, collected and otherwise dealt with by the Originator and any affiliate of the Originator in compliance with all applicable

7

federal, state and local laws and regulations and the terms of the related Mortgage Note and Mortgage;

(6)    The related Mortgage Note and Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law);

(7)    The related Mortgage is a valid and enforceable first or second lien on the related Mortgaged Property, which Mortgaged Property is free and clear of all encumbrances and liens (including mechanics liens) having priority over the first or second lien of the Mortgage except for: (i) liens for real estate taxes and assessments not yet due and payable; (ii) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage, such exceptions appearing of record being acceptable to mortgage lending institutions generally or specifically reflected or considered in the lender's title insurance policy delivered to the originator of the Mortgage Loan and referred to in the appraisal made in connection with the origination of the related Mortgage Loan, (iii) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by such Mortgage and (iv) the first lien on the Mortgaged Property, in the case of the Mortgages that are second liens;

(8)    Any security agreement, chattel mortgage or equivalent document related to such Mortgage Loan establishes and creates a valid and enforceable first or second lien on the Mortgaged Property;

(9)    As of the last calendar day of May 2006 and with respect to any Mortgage Loan that had a payment due on or before May 1, 2006, except with respect to 4.40% of the Mortgage Loans by the aggregate Cut-off Date Principal Balance of the Mortgage Loans, the related Monthly Payment due on May 1, 2006 has been received.  In addition, 1.57% of the Group I Mortgage Loans and approximately 1.65% the Group II Mortgage Loans (by aggregate principal balance of the mortgage loans as of the cut-off date) have been 30-59 days delinquent as of May 31, 2006.

(10)    Neither the Originator nor any Seller Trust has advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan;

(11)    Neither the Originator nor any Seller Trust has impaired, waived, altered or modified the related Mortgage or Mortgage Note in any material respect, or satisfied, canceled, rescinded or subordinated such Mortgage or Mortgage Note in whole or in part or released all or any material portion of the Mortgaged Property from the lien of the Mortgage, or executed any instrument of release, cancellation, rescission or satisfaction of the Mortgage Note or Mortgage;

8

(12)     As of the Cut-off Date, the Mortgage has not been satisfied, canceled or subordinated, in whole or in part, or rescinded, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part (except for a release that does not materially impair the security of the Mortgage Loan or a release the effect of which is reflected in the Loan-to-Value Ratio or combined Loan-to-Value Ratio for the Mortgage Loan as set forth in the Schedule of Mortgage Loans), nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission;

(13)     No Mortgage Loan is subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of any Mortgage Note or Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or Mortgage unenforceable in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto;

(14)     To the Originator's knowledge, there is no proceeding pending for the total or partial condemnation and no eminent domain proceedings pending affecting any Mortgaged Property;

(15)     Each Mortgage Loan is covered by either (i) a mortgage title insurance policy or other generally acceptable form of insurance policy customary in the jurisdiction where the Mortgaged Property is located together with an adjustable rate rider if applicable or (ii) if generally acceptable in the jurisdiction where the Mortgaged Property is located, an attorney's opinion of title given by an attorney licensed to practice law in the jurisdiction where the Mortgaged Property is located. All of the Originator's rights under such policies, opinions or other instruments shall be transferred and assigned to Purchaser upon sale and assignment of the Mortgage Loans hereunder. The title insurance policy has been issued by a title insurer licensed to do business in the jurisdiction where the Mortgaged Property is located, insuring the original lender, its successor and assigns, as to the first or second priority lien of the Mortgage in the original principal amount of the Mortgage Loan, subject to the exceptions contained in such policy. The Originator is the sole insured of such mortgagee title insurance policy, and such mortgagee title insurance policy is in full force and effect and will be in force and effect upon the consummation of the transactions contemplated by this Agreement. Neither the Originator nor any affiliate of the Originator has made, and the Originator has no knowledge of, any claims under such mortgagee title insurance policy. The Originator is not aware of any action by a prior holder and neither the Originator nor any affiliate of the Originator has done, by act or omission, anything which could impair the coverage or enforceability of such mortgagee title insurance policy or the accuracy of such attorney's opinion of title;

(16)     There is no material default, breach, violation or event of acceleration existing under the related Mortgage or the related Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a material default, breach, violation or event of acceleration, other than a payment delinquency that is for a payment due after the date specified in (i) above. Neither the Originator, any Seller Trust nor any affiliate of the Originator or any Seller Trust has waived any default, breach, violation or event of acceleration;

9

(17)     With respect to any Mortgage Loan which provides for an adjustable interest rate, all rate adjustments have been performed in accordance with the terms of the related Mortgage Note or subsequent modifications, if any;

(18)     To the Originator's knowledge, there are no delinquent taxes, ground rents, water charges, sewer rents, assessments, insurance premiums, leasehold payments, including assessments payable in future installments or other outstanding charges, affecting the related Mortgaged Property;

(19)     No foreclosure proceedings are pending against the Mortgaged Property and the Mortgage Loan is not subject to any pending bankruptcy or insolvency proceeding, and to the Originator's best knowledge, no material litigation or lawsuit relating to the Mortgage Loan is pending;

(20)     The Mortgaged Property for each Mortgage Loan is insured under a hazard insurance policy ("Hazard Insurance") in an amount at least equal to the lesser of (i) the maximum insurable value of such improvements or (ii) the principal balance of the Mortgage Loan with a standard mortgagee clause, in either case in an amount sufficient to avoid the application of any "co-insurance provisions," and, if it was in place at origination of the Mortgage Loan, flood insurance, at the mortgagor's cost and expense. If the Mortgaged Property is in an area identified in the Federal Register by the Federal Emergency Management Agency ("FEMA") as having special flood hazards, a flood insurance policy is in effect which met the requirements of FEMA at the time such policy was issued. The Mortgage obligates the Mortgagor to maintain the Hazard Insurance, and, if applicable, flood insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at the Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor;

(21)     The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage;

(22)     The Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder. The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale and (ii) otherwise by judicial foreclosure. Since the date of origination of the Mortgage Loan, the Mortgaged Property has not been subject to any bankruptcy proceeding or foreclosure proceeding and the Mortgagor has not filed for protection under applicable bankruptcy laws. There is no homestead or other exemption available to the Mortgagor that would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage. In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, as been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by Purchaser to the trustee under the deed of trust, except in connection with a trustee's

10

sale after default by the related Mortgagor. The Mortgagor has not notified the Originator or any affiliate of the Originator and the Originator has no knowledge of any relief requested or allowed to the Mortgagor under the Servicemembers Civil Relief Act;

(23)     Except as set forth in the appraisal which forms part of the related Mortgage File, the Mortgaged Property, normal wear and tear excepted, is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect materially and adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended;

(24)     To the Originator's knowledge, there was no fraud involved in the origination of the Mortgage Loan by the mortgagee or by the Mortgagor, any appraiser or any other party involved in the origination of the Mortgage Loan;

(25)     Each Mortgage File contains an appraisal of the Mortgaged Property indicating the appraised value at the time of origination for such Mortgaged Property. Each appraisal has been performed in accordance with the provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989;

(26)     To the best of the Originator's knowledge, all parties which have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) in compliance with any and all applicable "doing business" and licensing requirements of the laws of the state wherein the Mortgaged Property is located;

(27)     No improvements on the related Mortgaged Property (upon which value was given) encroach on adjoining properties (and in the case of a condominium unit, such improvements are within the project with respect to that unit), and no improvements on adjoining properties encroach upon the Mortgaged Property unless there exists in the Mortgage File a title Policy with endorsements which insure against losses sustained by the insured as a result of such encroachments;

(28)     Each Mortgage Loan was originated or acquired by a savings and loan association, a savings bank, a commercial bank or similar banking institution which is supervised and examined by a federal or state authority, or by a mortgagee approved by the Secretary of HUD. Each Mortgage Loan was originated substantially in accordance with the Originator's underwriting criteria, which are at least as stringent as the underwriting criteria set forth in the Prospectus Supplement. Each Mortgage Loan is currently being serviced by the Originator and has been serviced by the Originator since the date of origination of such Mortgage Loan;

(29)     (i) Principal payments on the Mortgage Loan commenced no more than two months after the proceeds of the Mortgage Loan were disbursed and (ii) each Mortgage Note is payable on the first day of each month;

(30)     The Mortgage Loan bears interest at the Mortgage Rate and the Mortgage Note does not permit negative amortization. No Mortgage Loan bearing interest at an adjustable rate permits the Mortgagor to convert the Mortgage Loan to a fixed rate Mortgage Loan;

11

(31)    With respect to escrow deposits, if any, all such payments are in the possession of, or under the control of, the Master Servicer and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or escrow advances or other charges or payments due the Master Servicer have been capitalized under any Mortgage or the related Mortgage Note;

(32)    No Mortgage Loan contains provisions pursuant to which scheduled payments are: (i) paid or partially paid with funds deposited in any separate account established by the Originator, the related Seller Trust, the Mortgagor, or anyone on behalf of the Mortgagor; or (ii) paid by any source other than the Mortgagor or contains any other similar provisions which may constitute a "buydown" provision. The Mortgage Loan is not a graduated payment mortgage loan and the Mortgage Loan does not have a shared appreciation or other contingent interest feature;

(33)    As of the origination date of each Mortgage Loan, the related Mortgaged Property is lawfully permitted to be occupied under applicable law;

(34)    Except as disclosed in the Prospectus Supplement, there are no proceedings or investigations pending, with respect to servicing, collection or notification practices and with respect to origination practices, violating any law in connection with any Mortgage Loan transferred to the Purchaser pursuant to this Agreement, including, without limitation, usury, truth in lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws. The Mortgage Loan has been serviced in accordance with the terms of the Mortgage Note.

(35)    No Mortgage Loan was made in connection with (a) the construction or rehabilitation of a Mortgaged Property or (b) facilitating the trade-in or exchange of a Mortgaged Property;

(36)    The proceeds of the Mortgage Loan have been fully disbursed to or for the account of the Mortgagor and there is no obligation for the Mortgagee to advance additional funds thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage have been paid, and the Mortgagor is not entitled to any refund of any amounts paid or due to the Mortgagee pursuant to the Mortgage Note or Mortgage;

(37)    There are no mechanics' or similar liens or claims that have been filed for work, labor or material (and no rights are outstanding that under law could give rise to such lien) affecting the related Mortgaged Property that are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(38)    As to each Mortgage Loan, interest is calculated on the Mortgage Note on the basis of twelve 30-day months and a 360 day year;

(39)    The Mortgaged Property consists of one of the following: detached or semi-detached one- to four-family dwelling units, townhouses, individual condominium units

12

and individual units in planned unit developments, or manufactured homes treated as real property under local law;

(40)     The Mortgage Loans were not intentionally selected by the related Seller in a manner intended to adversely affect the Purchaser or the Trust;

(41)     [reserved];

(42)     The Mortgage Loans have original terms to maturity ranging from 10 to 30 years;

(43)     As of the Cut-off Date; each Mortgage Loan, including any Mortgage Loan seasoned more than 12 months as of the Cut-off Date, had an loan-to-value-ratio that was less than or equal to 100%;

(44)     With respect to each Mortgage Loan, the Mortgage Note related thereto bears a fixed Mortgage Rate or an adjustable Mortgage Rate which will be adjusted on each Adjustment Date to equal the Index plus the Gross Margin, rounded to the nearest or next highest 0.125%, subject to the Periodic Rate Cap, the Maximum Mortgage Rate and the Minimum Mortgage Rate;

(45)     No Mortgage Loan underlying the security is covered by the Home Ownership and Equity Protection Act of 1994 ("HOEPA") and no mortgage loan is in violation of any comparable state law;

(46)     Each Mortgage Loan conforms, and all Mortgage Loans in the aggregate conform, in all material respects, to the description thereof set forth in the Prospectus Supplement;

(47)     With respect to second lien Mortgage Loans, either (a) no consent for the Mortgage Loan is required by the holder of the related first lien or (b) such consent has been obtained and is contained in the Mortgage File;

(48)     Each Mortgage Note is comprised of one original promissory note and each such promissory note constitutes an "instrument" for purposes of section 9-102(a)(65) of the UCC;

(49)     No Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act;

(50)     Each Mortgage Loan was originated in compliance with all applicable local, state and federal laws, including, but not limited to, all applicable anti-predatory and anti-abusive lending laws;

(51)     None of the Mortgage Loans are High Cost as defined by the applicable predatory and abusive lending laws;

13

(52)    No Mortgage Loan is a high cost loan or a covered loan, as applicable (as such terms are defined in the then current Standard & Poor's LEVELS Glossary which is now Version 5.6(c), Appendix E);

(53)    Each Mortgage Loan is a "qualified mortgage" under Section 860G(a)(3); and

(54)    No mortgage loan in the trust is a "high cost home," "covered" (excluding home loans defined as "covered home loans" in the New Jersey Home Ownership Security Act of 2002 that were originated between November 26, 2003 and July 7, 2004), "high risk home" or "predatory" loan under any other applicable state, federal or local law (or a similarly classified loan using different terminology under a law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees).

(55)    The Mortgaged Property is either a fee simple estate or a long-term residential lease.  If the Mortgage Loan is secured by a long-term residential lease, unless otherwise specifically disclosed in the Mortgage Loan Schedule, (A) the terms of such lease expressly permit the mortgaging of the leasehold estate, the assignment of the lease without the lessor's consent (or the lessor's consent has been obtained and such consent is the Mortgage File) and the acquisition by the holder of the Mortgage of the rights of the lessee upon foreclosure or assignment in lieu of foreclosure or provide the holder of the Mortgage with substantially similar protection; (B) the terms of such lease do not (x) allow the termination thereof upon the lessee's default without the holder of the Mortgage being entitled to receive written notice of, and opportunity to cure, such default or (y) prohibit the holder of the Mortgage from being insured under the hazard insurance policy relating to the Mortgaged Property; (C) the original term of such lease is not less than 15 years; (D) the term of such lease does not terminate earlier than ten years after the maturity date of the Mortgage Note; and (E) the Mortgaged Property is located in a jurisdiction in which the use of leasehold estates for residential properties is an accepted practice;

(56)    [reserved].

(b)    [Reserved].

Section 3.02   Originator Representations And Warranties Relating to The Originator. The Originator represents, warrants and covenants to the Purchaser as of the Closing Date or as of such other date specifically provided herein or in the applicable Assignment and Conveyance:

(i)    The Originator is duly organized, validly existing and in good standing as a corporation under the laws of the State of California and is and will remain in compliance with the laws of each state in which any Mortgaged Property is located to the extent necessary to ensure the enforceability of each Mortgage Loan in accordance with the terms of this Agreement;

(ii)    The Originator has the full power and authority to execute, deliver and perform, and to enter into and consummate, all transactions contemplated by this Agreement.

14

The Originator has duly authorized the execution, delivery and performance of this Agreement, has duly executed and delivered this Agreement and this Agreement, assuming due authorization, execution and delivery by the Purchaser and the related Seller, constitutes a legal, valid and binding obligation of the Originator, enforceable against it in accordance with its terms except as the enforceability thereof may be limited by bankruptcy, insolvency or reorganization. At the time of the sale of each Mortgage Loan by the Originator, the Originator had the full power and authority to hold each Mortgage Loan and to sell each Mortgage Loan;

(iii)    The execution and delivery of this Agreement by the Originator and the performance of and compliance with the terms of this Agreement will not violate the Originator's articles of incorporation or by-laws or constitute a default under or result in a breach or acceleration of, any material contract, agreement or other instrument to which the Originator is a party or which may be applicable to the Originator or its assets;

(iv)    The Originator is not in violation of, and the execution and delivery of this Agreement by the Originator and its performance and compliance with the terms of this Agreement will not constitute a violation with respect to, any order or decree of any court or any order or regulation of any federal, state, municipal or governmental agency having jurisdiction over the Originator or its assets, which violation might have consequences that would materially and adversely affect the condition (financial or otherwise) or the operation of the Originator or its assets or might have consequences that would materially and adversely affect the performance of its obligations and duties hereunder;

(v)    The Originator is a HUD approved mortgagee pursuant to Section 203 and Section 211 of the National Housing Act. No event has occurred, including but not limited to a change in insurance coverage, which would make the Originator unable to comply with HUD eligibility requirements or which would require notification to HUD;

(vi)    The Originator does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement;

(vii)    There are no actions or proceedings against, or investigations known to it of, the Originator before any court, administrative or other tribunal (A) that might prohibit its entering into this Agreement, (B) seeking to prevent the sale of the Mortgage Loans or the consummation of the transactions contemplated by this Agreement or (C) that might prohibit or materially and adversely affect the performance by the Originator of its obligations under, or validity of enforceability of, this Agreement;

(viii)    No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Originator of, or compliance by the Originator with, this Agreement or the consummation of the transactions contemplated by this Agreement, except for such consents, approvals, authorizations or orders, if any, that have been obtained;

(ix)    The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Originator. The sale of the Mortgage Loans was in the ordinary course of business of the Originator and the assignment and

15

conveyance of the Mortgage Notes and the Mortgages by the Originator are not subject to the bulk transfer or any similar statutory provisions;

(x)     The information delivered by the Originator to the Purchaser with respect to the Originator's loan loss, foreclosure and delinquency experience on mortgage loans underwritten to similar standards as the Mortgage Loans and covering mortgaged properties similar to the Mortgaged Properties, is true and correct in all material respects as of the date of such report;

(xi)     Except with respect to any statement regarding the intentions of the Purchaser, or any other statement contained herein the truth or falsity of which is dependant solely upon the actions of the Purchaser, this Agreement does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained herein not misleading. The written statements, reports and other documents prepared and furnished or to be prepared and furnished by the Originator pursuant to this Agreement or in connection with the transactions contemplated hereby taken in the aggregate do not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained therein not misleading; and

(xii)     The Originator has not transferred the Mortgage Loans with any intent to hinder, delay or defraud any of its creditors.

Section 3.03     Seller Trust Representations And Warranties.     Each Seller Trust represents, warrants and covenants to the Purchaser as of the Closing Date or as of such other date specifically provided herein:

(a)     The Seller Trust is duly organized, validly existing and in good standing as a business trust under the laws of the State of Delaware and is and will remain in compliance with the laws of each state in which any Mortgaged Property is located to the extent necessary to ensure the enforceability of each Mortgage Loan in accordance with the terms of this Agreement;

(b)     The Seller Trust has the full power and authority to hold each Mortgage Loan, to sell each Mortgage Loan, to execute, deliver and perform, and to enter into and consummate, all transactions contemplated by this Agreement. The Seller Trust has duly authorized the execution, delivery and performance of this Agreement, has duly executed and delivered this Agreement and this Agreement, assuming due authorization, execution and delivery by the Purchaser and the Originator, constitutes a legal, valid and binding obligation of the Seller Trust, enforceable against it in accordance with its terms except as the enforceability thereof may be limited by bankruptcy, insolvency or reorganization;

(c)     The execution and delivery of this Agreement by the Seller Trust and the performance of and compliance with the terms of this Agreement will not violate the Seller Trust's certificate of trust or constitute a default under or result in a breach or acceleration of, any material contract, agreement or other instrument to which the Seller Trust is a party or which may be applicable to the Seller Trust or its assets;

(d)     The Seller Trust is not in violation of, and the execution and delivery of this Agreement by the Seller Trust and its performance and compliance with the terms of this

16

Agreement will not constitute a violation with respect to, any order or decree of any court or any order or regulation of any federal, state, municipal or governmental agency having jurisdiction over such Seller Trust or its assets, which violation might have consequences that would materially and adversely affect the condition (financial or otherwise) or the operation of the Seller Trust or its assets or might have consequences that would materially and adversely affect the performance of its obligations and duties hereunder; and

(e)     Immediately prior to the payment of the mortgage loan purchase price for each Mortgage Loan, the Seller Trust was the owner of the related Mortgage and the indebtedness evidenced by the related Mortgage Note and upon the payment of the mortgage loan purchase price by the Purchaser, in the event that the Seller Trust retains record title, the Seller Trust shall retain such record title to each Mortgage, each related Mortgage Note and the related Mortgage Files with respect thereto in trust for the Purchaser as the owner thereof;

(f)     The Seller Trust has not transferred the Mortgage Loans to the Purchaser with any intent to hinder, delay or defraud any of its creditors;

(g)     There are no actions or proceedings against, or investigations known to it of, the Seller Trust before any court, administrative or other tribunal (A) that might prohibit its entering into this Agreement, (B) seeking to prevent the sale of the Mortgage Loans or the consummation of the transactions contemplated by this Agreement or (C) that might prohibit or materially and adversely affect the performance by the Seller Trust of its obligations under, or validity or enforceability of, this Agreement;

(h)     No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Seller Trust of, or compliance by the Seller Trust with, this Agreement or the consummation of the transactions contemplated by this Agreement, except for such consents, approvals, authorizations or orders, if any, that have been obtained;

(i)     The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller Trust, and the transfer assignment and conveyance of the related Mortgage Notes and the Mortgages by the Seller Trust pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions; and

(j)     Except with respect to liens released immediately prior to the transfer herein contemplated, the applicable Mortgage Note and related Mortgage have not been assigned or pledged and immediately prior to the transfer and assignment herein contemplated, the Seller Trust held good, marketable and indefeasible title to, and was the sole owner and holder of, the related Mortgage Loan subject to no liens, charges, mortgages, claims, participation interests, equities, pledges or security interests of any nature, encumbrances or rights of others (collectively, a "Lien"); the Seller Trust has full right and authority under all governmental and regulatory bodies having jurisdiction over the Seller Trust, subject to no interest or participation of, or agreement with, any party, to sell and assign the same pursuant to this Agreement; and immediately upon the transfers and assignments herein contemplated, the Seller Trust shall have transferred all of its right, title and interest in and to the related Mortgage Loans and the Trustee

[TPW: NYLEGAL:524239.5] 18091-00086  07/12/2006 06:40 PM

will hold good, marketable and indefeasible title to, and be the sole owner of, the related Mortgage Loans subject to no Liens.

Section 3.04   Remedies For Breach of Representations And Warranties.  It is understood and agreed that the representations and warranties set forth in Sections 3.01 and 3.02 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment or the examination or lack of examination of any Mortgage File. With respect to the representations and warranties contained herein that are made to the knowledge or the best knowledge of the Originator or as to which the Originator has no knowledge, if it is discovered that the substance of any such representation and warranty is inaccurate and the inaccuracy materially and adversely affects the value of the related Mortgage Loan, or the interest therein of the Purchaser or the Purchaser's assignee, designee or transferee, then notwithstanding the Originator's lack of knowledge with respect to the substance of such representation and warranty being inaccurate at the time the representation and warranty was made, such inaccuracy shall be deemed a breach of the applicable representation and warranty and the Originator shall take such action described in the following paragraphs of this Section 3.03 in respect of such Mortgage Loan. Upon discovery by either the Originator, the Master Servicer or the Purchaser of a breach of any of the foregoing representations and warranties that materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser (or which materially and adversely affects the interests of the Purchaser in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the party discovering such breach shall give prompt written notice to the others.  It is understood by the parties hereto that a breach of the representations and warranties made in Section 3.01(a) (45), (50), (53) and (54) will be deemed to materially and adversely affect the value of the related Mortgage Loan or the interest of the Purchaser.

Within 120 days of the earlier of either discovery by or notice to the Originator of any breach of a representation or warranty made by the Originator that materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest therein of the Purchaser, the Originator shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Originator shall, at the Purchaser's option, repurchase such Mortgage Loan at the Purchase Price. In the event that a breach shall involve any representation or warranty set forth in Section 3.02 and such breach cannot be cured within 120 days of the earlier of either discovery by or notice to the Originator of such breach, all of the Mortgage Loans shall, at the Purchaser's option, be repurchased by the Originator at the Purchase Price. The Originator may, at the request of the Purchaser and assuming the Originator has a Qualified Substitute Mortgage Loan, rather than repurchase a deficient Mortgage Loan as provided above, remove such Mortgage Loan and substitute in its place a Qualified Substitute Mortgage Loan or Loans. If the Originator does not provide a Qualified Substitute Mortgage Loan or Loans, it shall repurchase the deficient Mortgage Loan. Any repurchase of a Mortgage Loan(s) pursuant to the foregoing provisions of this Section 3.03 shall occur on a date designated by the Purchaser and shall be accomplished by deposit in accordance with Section 2.03 of the Pooling and Servicing Agreement. Any repurchase or substitution required by this Section shall be made in a manner consistent with Section 2.03 of the Pooling and Servicing Agreement.

[TPW: NYLEGAL:524239.5] 18091-00086  07/12/2006 06:40 PM

At the time of substitution or repurchase of any deficient Mortgage Loan, the Purchaser and the Originator shall arrange for the reassignment of the repurchased or substituted Mortgage Loan to the Originator and the delivery to the Originator of any documents held by the Trustee relating to the deficient or repurchased Mortgage Loan. In the event the Purchase Price is deposited in the Collection Account, the Originator shall, simultaneously with such deposit, give written notice to the Purchaser that such deposit has taken place. Upon such repurchase, the Mortgage Loan Schedule shall be amended to reflect the withdrawal of the repurchased Mortgage Loan from this Agreement.

As to any Deleted Mortgage Loan for which the Originator substitutes a Qualified Substitute Mortgage Loan or Loans, the Originator shall effect such substitution by delivering to the Purchaser or its designee for such Qualified Substitute Mortgage Loan or Loans the Mortgage Note, the Mortgage, the Assignment and such other documents and agreements as are required by the Pooling and Servicing Agreement, with the Mortgage Note endorsed as required therein. The Originator shall deposit in the Collection Account the Monthly Payment less the Servicing Fee due on such Qualified Substitute Mortgage Loan or Loans in the month following the date of such substitution. Monthly Payments due with respect to Qualified Substitute Mortgage Loans in the month of substitution will be retained by the Originator. For the month of substitution, distributions to the Purchaser will include the Monthly Payment due on such Deleted Mortgage Loan in the month of substitution, and the Originator shall thereafter be entitled to retain all amounts subsequently received by the Originator in respect of such Deleted Mortgage Loan. Upon such substitution, the Qualified Substitute Mortgage Loans shall be subject to the terms of this Agreement in all respects, and the Originator shall be deemed to have made with respect to such Qualified Substitute Mortgage Loan or Loans as of the date of substitution, the covenants, representations and warranties set forth in Sections 3.01 and 3.02

It is understood and agreed that the representations and warranties set forth in Section 3.01 shall survive delivery of the respective Mortgage Files to the Trustee on behalf of the Purchaser.

It is understood and agreed that the obligations of the Originator set forth in Section 3.04 to cure, repurchase and substitute for a defective Mortgage Loan and to indemnify the Purchaser as provided in Section 5.01 constitute the sole remedies of the Purchaser respecting a missing or defective document or a breach of the representations and warranties contained in Section 3.01, 3.02 or 3.03.

ARTICLE IV.

ORIGINATOR'S COVENANTS

Section 4.01   Covenants of The Originator.   The Originator hereby covenants that except for the transfer hereunder, neither the Originator nor any Seller Trust will sell, pledge, assign or transfer to any other Person, or grant, create, incur, assume or suffer to exist any Lien on any Mortgage Loan, or any interest therein; the Originator will notify the Trustee, as assignee of the Purchaser, of the existence of any Lien on any Mortgage Loan immediately upon discovery thereof, and the Originator will defend the right, title and interest of the Trust, as assignee of the Purchaser, in, to and under the Mortgage Loans, against all claims of third parties

19

claiming through or under the Originator or any Seller Trust; provided, however, that nothing in this Section 4.01 shall prevent or be deemed to prohibit the Originator or any Seller Trust from suffering to exist upon any of the Mortgage Loans any Liens for municipal or other local taxes and other governmental charges if such taxes or governmental charges shall not at the time be due and payable or if the Originator or any Seller shall currently be contesting the validity thereof in good faith by appropriate proceedings and shall have set aside on its books adequate reserves with respect thereto.

ARTICLE V.

INDEMNIFICATION WITH RESPECT TO THE MORTGAGE LOANS

Section 5.01    Indemnification.

(a)    The Originator agrees to indemnify and hold harmless the Purchaser, each of its directors, each of its officers and each person or entity who controls the Purchaser or any such person, within the meaning of Section 15 of the Securities Act, against any and all losses, claims, damages or liabilities, joint and several, as incurred, to which the Purchaser, or any such person or entity may become subject, under the Securities Act or otherwise, and will reimburse the Purchaser, each such director and officer and each such controlling person for any legal or other expenses incurred by the Purchaser or such controlling person in connection with investigating or defending any such losses, claims, damages or liabilities, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon (i) any untrue statement or alleged untrue statement of any material fact contained in the Prospectus Supplement or any amendment or supplement to the Prospectus Supplement approved in writing by the Originator or the omission or the alleged omission to state therein a material fact necessary in order to make the statements in the Prospectus Supplement or any amendment or supplement to the Prospectus Supplement approved in writing by the Originator, in the light of the circumstances under which they were made, not misleading, but only to the extent that such untrue statement or alleged untrue statement or omission or alleged omission relates to the Originator Information contained in the Prospectus Supplement, (ii) any untrue statement or alleged untrue statement of any material fact contained in the information on any computer tape furnished to the Purchaser or an affiliate thereof by or on behalf of the Originator containing information regarding the assets of the Trust or (iii) any untrue statement or alleged untrue statement of any material fact contained in any information provided by the Originator to the Purchaser or any affiliate thereof, or any material omission from the information purported to be provided hereby, and disseminated to KPMG LLP or prospective investors (directly or indirectly through available information systems) in connection with the issuance, marketing or offering of the Certificates. This indemnity agreement will be in addition to any liability which the Originator may otherwise have.

(b)    The Purchaser agrees to indemnify and hold harmless each Seller Trust and the Originator, each of their respective officers, directors and each person or entity who controls each Seller Trust, the Originator or any such person, against any and all losses, claims, damages or liabilities, joint and several, to which the related Seller Trust, the Originator or any such person or entity may become subject, under the Securities Act or otherwise, and will reimburse the applicable Seller Trust and/or the Originator for any legal or other expenses

20

incurred by such Seller Trust, the Originator, each officer and director and controlling person in connection with investigating or defending any such losses, claims, damages or liabilities insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement or alleged untrue statement of any material fact contained in the Prospectus Supplement or any amendment or supplement to the Prospectus Supplement or the omission or the alleged omission to state therein a material fact necessary in order to make the statements in the Prospectus Supplement or any amendment or supplement to the Prospectus Supplement, in the light of the circumstances under which they were made, not misleading, but only to the extent that such untrue statement or alleged untrue statement or omission or alleged omission is not contained in the Originator Information in the Prospectus Supplement. This indemnity agreement will be in addition to any liability which the Purchaser may otherwise have.

(c)   Promptly after receipt by any indemnified party under this Article V of notice of any claim or the commencement of any action, such indemnified party shall, if a claim in respect thereof is to be made against any indemnifying party under this Article V, notify the indemnifying party in writing of the claim or the commencement of that action; provided, however, that the failure to notify an indemnifying party shall not relieve it from any liability which it may have under this Article V except to the extent it has been materially prejudiced by such failure and, provided further, that the failure to notify any indemnifying party shall not relieve it from any liability which it may have to any indemnified party otherwise than under this Article V.

If any such claim or action shall be brought against an indemnified party, and it shall notify the indemnifying party thereof, the indemnifying party shall be entitled to participate therein and, to the extent that it wishes, jointly with any other similarly notified indemnifying party, to assume the defense thereof with counsel reasonably satisfactory to the indemnified party. After notice from the indemnifying party to the indemnified party of its election to assume the defense of such claim or action, the indemnifying party shall not be liable to the indemnified party under this Article V for any legal or other expenses subsequently incurred by the indemnified party in connection with the defense thereof other than reasonable costs of investigation.

Any indemnified party shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such indemnified party unless: (i) the employment thereof has been specifically authorized by the indemnifying party in writing; (ii) such indemnified party shall have been advised in writing by such counsel that there may be one or more legal defenses available to it which are different from or additional to those available to the indemnifying party and in the reasonable judgment of such counsel it is advisable for such indemnified party to employ separate counsel; or (iii) the indemnifying party has failed to assume the defense of such action and employ counsel reasonably satisfactory to the indemnified party, in which case, if such indemnified party notifies the indemnifying party in writing that it elects to employ separate counsel at the expense of the indemnifying party, the indemnifying party shall not have the right to assume the defense of such action on behalf of such indemnified party, it being understood, however, the indemnifying party shall not, in connection with any one such action or separate but substantially similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one

21

separate firm of attorneys (in addition to local counsel) at any time for all such indemnified parties, which firm shall be designated in writing by the Purchaser, if the indemnified parties under this Article V consist of the Purchaser, by the Originator, if the indemnified parties in this Article V consist of the Originator, or by the related Seller Trust, if the indemnified parties in this Article V consist of such Seller Trust.

Each indemnified party, as a condition of the indemnity agreements contained in Section 5.01 (a) and (b) hereof, shall use its best efforts to cooperate with the indemnifying party in the defense of any such action or claim. No indemnifying party shall be liable for any settlement of any such action effected without its written consent (which consent shall not be unreasonably withheld), but if settled with its written consent or if there be a final judgment for the plaintiff in any such action, the indemnifying party agrees to indemnify and hold harmless any indemnified party from and against any loss or liability by reason of such settlement or judgment. Notwithstanding the foregoing sentence, if at any time an indemnified party shall have requested an indemnifying party to consent to a settlement of any action, the indemnifying party agrees that it shall be liable for any settlement of any proceeding effected without its written consent if such settlement is entered into more than 30 days after receipt by such indemnifying party of the aforesaid request and the indemnifying party has not previously provided the indemnified party with written notice of its objection to such settlement. No indemnifying party shall effect any settlement of any pending or threatened proceeding in respect of which an indemnified party is or could have been a party and indemnity is or could have been sought hereunder, without the written consent of such indemnified party, unless settlement includes an unconditional release of such indemnified party from all liability and claims that are the subject matter of such proceeding.

(d)     In order to provide for just and equitable contribution in circumstances in which the indemnity agreement provided for in this Article is for any reason held to be unenforceable although applicable in accordance with its terms, each Seller Trust and the Originator, on the one hand, and the Purchaser, on the other, shall contribute to the aggregate losses, liabilities, claims, damages and expenses of the nature contemplated by said indemnity agreement incurred by the related Seller Trust, the Originator and the Purchaser in such proportions as shall be appropriate to reflect the relative benefits received by each Seller Trust and the Originator on the one hand and the Purchaser on the other from the sale of the Mortgage Loans such that the Purchaser is responsible for the lesser of (i) 0.25% thereof and (ii) 0.25% of the aggregate proceeds to the respective Seller Trust from the sale of the related Mortgage Loans and the Originator shall be responsible for the balance; provided, however, that no person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation. For purposes of this Section, each officer and director of the Purchaser and each person, if any, who controls the Purchaser within the meaning of Section 15 of the Securities Act shall have the same rights to contribution as the Purchaser, each director of the Originator, each officer of the Originator, and each person, if any, who controls the Originator within the meaning of Section 15 of the Securities Act shall have the same rights to contribution as the Originator and each director of the related Seller Trust, each officer of such Seller Trust, and each person, if any, who controls such Seller within the meaning of Section 15 of the Securities Act shall have the same rights to contribution as the related Seller.

[TPW: NYLEGAL:524239.5] 18091-00086  07/12/2006 06:40 PM

(e)     The Originator agrees to indemnify and to hold each of the Purchaser, the Trustee, each of the officers and directors of each such entity and each person or entity who controls each such entity or person and each Certificateholder harmless against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser, the Trustee, or any such person or entity and any Certificateholder may sustain in any way (i) related to the failure of the Originator to perform its duties in compliance with the terms of this Agreement, (ii) arising from a breach by the Originator of its representations and warranties in Section 3.01 and 3.02 of this Agreement or (iii) related to the origination or prior servicing of the Mortgage Loans by reason of any acts, omissions, or alleged acts or omissions of the Originator, the related Seller or any servicer. The Originator shall immediately notify the Purchaser, the Trustee and each Certificateholder if a claim is made by a third party with respect to this Agreement. The Originator shall assume the defense of any such claim and pay all expenses in connection therewith, including reasonable counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against the Purchaser, the Trustee or any such person or entity and/or any Certificateholder in respect of such claim.

## ARTICLE VI.

## TERMINATION

Section 6.01   <u>Termination</u>.   The respective obligations and responsibilities of the Originator, each Seller and the Purchaser created hereby shall terminate, except for the Originator's indemnity obligations as provided herein upon the termination of the Trust as provided in Article X of the Pooling and Servicing Agreement.

## ARTICLE VII.

## MISCELLANEOUS PROVISIONS

Section 7.01   <u>Amendment</u>.   This Agreement may be amended from time to time, with the consent of the NIMS Insurer, if any, by the Originator, each Seller Trust and the Purchaser, by written agreement signed by the Originator, each Seller Trust and the Purchaser.

Section 7.02   <u>Governing Law</u>.   This Agreement shall be governed by and construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Section 7.03   <u>Notices</u>.   All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by registered mail, postage prepaid, addressed as follows:

if to the Originator:

Option One Mortgage Corporation
3 Ada
Irvine, CA 92618
Attention: C. Robert Fulton

23

or such other address as may hereafter be furnished to the Purchaser and any Seller Trust in writing by the Originator.

if to the Purchaser:

> Option One Mortgage Acceptance Corporation
> 3 Ada
> Irvine, CA 92618
> Attention: C. Robert Fulton

or such other address as may hereafter be furnished to any Seller and the Originator in writing by the Purchaser.

if to the Seller Trusts:

> Option One Owner Trust 2001-1A
> Option One Owner Trust 2001-2
> Option One Owner Trust 2002-3
> Option One Owner Trust 2003-4
> Option One Owner Trust 2003-5
> Option One Owner Trust 2005-6
> Option One Owner Trust 2005-7
> Option One Owner Trust 2005-8
> Option One Owner Trust 2005-9
> c/o Wilmington Trust Company
> One Rodney Square North
> 1100 North Market Street
> Wilmington, Delaware 19890
> Attention: Corporate Trust Administration

or such other address as may hereafter be furnished to the Originator and the Purchaser in writing by the related Seller.

Section 7.04   Severability of Provisions.   If any one or more of the covenants, agreements, provisions of terms of this Agreement shall be held invalid for any reason whatsoever, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity of enforceability of the other provisions of this Agreement.

Section 7.05   Counterparts.   This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original and such counterparts, together, shall constitute one and the same agreement.

Section 7.06   Further Agreements.   The Purchaser, each Seller and the Originator each agree to execute and deliver to the other such additional documents, instruments or agreements as may be necessary or reasonable and appropriate to effectuate the purposes of this Agreement

24

or in connection with the issuance of any series of Certificates representing interests in the Mortgage Loans.

Without limiting the generality of the foregoing, as a further inducement for the Purchaser to purchase the Mortgage Loans from the Sellers, the Originator will cooperate with the Purchaser in connection with the sale of any of the securities representing interests in the Mortgage Loans. In that connection, the Originator will provide to the Purchaser any and all information and appropriate verification of information, whether through letters of its auditors and counsel or otherwise, as the Purchaser shall reasonably request and will provide to the Purchaser such additional representations and warranties, covenants, opinions of counsel, letters from auditors, and certificates of public officials or officers of the Originator as are reasonably required in connection with such transactions and the offering of investment grade securities rated by the Rating Agencies.

Section 7.07   Intention of The Parties.  It is the intention of the parties that the Purchaser is purchasing, and each Seller is selling, the Mortgage Loans rather than pledging the Mortgage Loans to secure a loan by the Purchaser to each Seller. Accordingly, the parties hereto each intend to treat the transaction for federal income tax purposes and all other purposes as a sale by the related Seller, and a purchase by the Purchaser, of the Mortgage Loans. The Purchaser will have the right to review the Mortgage Loans and the related Mortgage Files to determine the characteristics of the Mortgage Loans which will affect the federal income tax consequences of owning the Mortgage Loans and the related Seller will cooperate with all reasonable requests made by the Purchaser in the course of such review.

Section 7.08   Successors And Assigns, Assignment of Purchase Agreement.   This Agreement shall bind and inure to the benefit of and be enforceable by each Seller, the Originator, the Purchaser, the Trustee and the NIMs Insurer, if any. The NIMs Insurer, if any, shall be a third party beneficiary hereof and may enforce the terms hereof as if a party hereto. The obligations of each Seller and the Originator under this Agreement cannot be assigned or delegated to a third party without the consent of the Purchaser which consent shall be at the Purchaser's sole discretion, except that the Purchaser acknowledges and agrees that each Seller or the Originator may assign its obligations hereunder to any Person into which the related Seller or the Originator is merged or any corporation resulting from any merger, conversion or consolidation to which the related Seller or the Originator is a party or any Person succeeding to the business of the related Seller or the Originator. The parties hereto acknowledge that the Purchaser is acquiring the Mortgage Loans for the purpose of contributing them to a trust that will issue a series of Certificates representing undivided interests in such Mortgage Loans. As an inducement to the Purchaser to purchase the Mortgage Loans, the related Seller and the Originator each acknowledge and consent to the assignment by the Purchaser to the Trustee of all of the Purchaser's rights against each Seller and the Originator pursuant to this Agreement insofar as such rights relate to Mortgage Loans transferred to the Trustee and to the enforcement or exercise of any right or remedy against each Seller or the Originator pursuant to this Agreement by the Trustee. Such enforcement of a right or remedy by the Trustee shall have the same force and effect as if the right or remedy had been enforced or exercised by the Purchaser directly.

[TPW: NYLEGAL:524239.5] 18091-00086  07/12/2006 06:40 PM

Section 7.09   <u>Survival</u>.  The representations and warranties set forth in Sections 3.01, 3.02 and 3.03 and the provisions of Article V hereof shall survive the purchase of the Mortgage Loans hereunder.

Section 7.10   <u>Owner Trustee</u>.  It is expressly understood and agreed by the parties to this Agreement that (a) this Agreement is executed and delivered by Wilmington Trust Company, not individually or personally but solely as Owner Trustee of the Seller Trusts, in the exercise of the powers and authority conferred and vested in it as trustee, (b) each of the representations, undertakings and agreements herein made on the part of the related Seller Trust is made and intended not as personal representations, undertakings and agreements by Wilmington Trust Company but is made and intended for the purpose of binding only the related Seller Trust, (c) nothing herein contained shall be construed as creating any liability on Wilmington Trust Company, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties to this Agreement and by any person claiming by, through or under the parties to this Agreement and (d) under no circumstances shall Wilmington Trust Company be personally liable for the payment of any indebtedness or expenses of any Seller Trust or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by any Seller Trust under this Agreement or any other document.

26

IN WITNESS WHEREOF, each Seller, the Originator and the Purchaser have caused their names to be signed to this Mortgage Loan Purchase Agreement by their respective officers thereunto duly authorized as of the day and year first above written.

OPTION ONE MORTGAGE ACCEPTANCE CORPORATION,
as Purchaser


By: _____
Name:
Title:


OPTION ONE MORTGAGE CORPORATION,
as Originator


By: _____
Name:
Title:

OPTION ONE OWNER TRUST 2001-1A,
as a Seller

By:     Wilmington Trust Company, not in its
        individual capacity but solely as Owner
        Trustee.


By:     _____
Name:
Title:

OPTION ONE OWNER TRUST 2001-2,
as a Seller


By:    Wilmington Trust Company, not in its
individual capacity but solely as Owner
Trustee.



By:    _____
Name:
Title:

OPTION ONE OWNER TRUST 2002-3,
as a Seller


By:       Wilmington Trust Company, not in its
          individual capacity but solely as Owner
          Trustee.



By:       _____
Name:
Title:

OPTION ONE OWNER TRUST 2003-4,
as a Seller

By:    Wilmington Trust Company, not in its
individual capacity but solely as Owner
Trustee.

By:
Name:
Title:

OPTION ONE OWNER TRUST 2003-5,
as a Seller

By:     Wilmington Trust Company, not in its
        individual capacity but solely as Owner
        Trustee.


By:     _____
Name:
Title:

OPTION ONE OWNER TRUST 2005-6,
as a Seller

By:    Wilmington Trust Company, not in its
individual capacity but solely as Owner
Trustee.


By:    _____
Name:
Title:

OPTION ONE OWNER TRUST 2005-7,
as a Seller

By:     Wilmington Trust Company, not in its
individual capacity but solely as Owner
Trustee.


By: _____
Name:
Title:

OPTION ONE OWNER TRUST 2005-8,
as a Seller

By: Wilmington Trust Company, not in its
individual capacity but solely as Owner
Trustee.

By: _____
Name:
Title:

OPTION ONE OWNER TRUST 2005-9,
as a Seller


By:     Wilmington Trust Company, not in its
individual capacity but solely as Owner
Trustee.



By:     _____
Name:
Title:

## SCHEDULE I

## MORTGAGE LOANS OWNED BY THE ORIGINATOR

### AVAILABLE UPON REQUEST

SCHEDULE II

MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2001-1A

AVAILABLE UPON REQUEST

SCHEDULE III

MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2001-2

AVAILABLE UPON REQUEST

SCHEDULE IV

MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2002-3

AVAILABLE UPON REQUEST

SCHEDULE V

MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2003-4

AVAILABLE UPON REQUEST

SCHEDULE VI

MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2003-5

AVAILABLE UPON REQUEST

SCHEDULE VII

MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2005-6

AVAILABLE UPON REQUEST

SCHEDULE VIII

MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2005-7

AVAILABLE UPON REQUEST

SCHEDULE IX

MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2005-8

AVAILABLE UPON REQUEST

SCHEDULE X

MORTGAGE LOANS OWNED BY OPTION ONE OWNER TRUST 2005-9

AVAILABLE UPON REQUEST