# Exhibit 3

Case 1-13-cv-05067-AT   Document 37-3   Filed 08/23/13   Page 2 of 40

# Exhibit B

OPTION ONE MORTGAGE ACCEPTANCE CORPORATION,
Depositor

OPTION ONE MORTGAGE CORPORATION,
Master Servicer

and

WELLS FARGO BANK, N.A.,
Trustee

POOLING AND SERVICING AGREEMENT

Dated as of June 1, 2006

Option One Mortgage Loan Trust 2006-2

Asset-Backed Certificates, Series 2006-2

**Table of Contents**

ARTICLE I        DEFINITIONS                                                                          7

    SECTION 1.01.    Defined Terms. ..................................................................7
    SECTION 1.02.    Accounting. ......................................................................57
    SECTION 1.03.    Allocation of Certain Interest Shortfalls. ...........................57
    SECTION 1.04.    Rights of the NIMS Insurer. ............................................58

ARTICLE II       CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF
    CERTIFICATES                                                                                 59

    SECTION 2.01.    Conveyance of Mortgage Loans. ......................................59
    SECTION 2.02.    Acceptance by Trustee. ...................................................62
    SECTION 2.03.    Repurchase or Substitution of Mortgage Loans by the Originator. ...........63
    SECTION 2.04.    Intentionally Omitted. .....................................................66
    SECTION 2.05.    Representations, Warranties and Covenants of the Master Servicer. ........66
    SECTION 2.06.    Representations and Warranties of the Depositor......................68
    SECTION 2.07.    Issuance of Certificates. ..................................................70
    SECTION 2.08.    [Reserved]. .....................................................................70
    SECTION 2.09.    Conveyance of REMIC Regular Interests and Acceptance of
                      REMIC 2, REMIC 3, REMIC 4, REMIC 5 and REMIC 6 by the
                      Trustee; Issuance of Certificates....................................70
    SECTION 2.10.    Negative Covenants of the Trustee and the Master Servicer. ..................72

ARTICLE III      ADMINISTRATION AND SERVICING OF THE MORTGAGE LOANS      73

    SECTION 3.01.    Master Servicer to Act as Master Servicer. ........................73
    SECTION 3.02.    Sub-Servicing Agreements Between Master Servicer and Sub-
                      Servicers........................................................................75
    SECTION 3.03.    Successor Sub-Servicers. .................................................76
    SECTION 3.04.    Liability of the Master Servicer. .......................................76
    SECTION 3.05.    No Contractual Relationship Between Sub-Servicers and the NIMS
                      Insurer, the Trustee or Certificateholders. ................................77
    SECTION 3.06.    Assumption or Termination of Sub-Servicing Agreements by
                      Trustee............................................................................77
    SECTION 3.07.    Collection of Certain Mortgage Loan Payments. .....................77
    SECTION 3.08.    Sub-Servicing Accounts......................................................78
    SECTION 3.09.    Collection of Taxes, Assessments and Similar Items; Servicing
                      Accounts.........................................................................79
    SECTION 3.10.    Collection Account and Distribution Account..........................80
    SECTION 3.11.    Withdrawals from the Collection Account and Distribution
                      Account...........................................................................82
    SECTION 3.12.    Investment of Funds in the Collection Account and the
                      Distribution Account.........................................................84
    SECTION 3.13.    [Reserved]. .....................................................................86

i

| | | |
|---|---|---|
| SECTION 3.14. | Maintenance of Hazard Insurance and Errors and Omissions and Fidelity Coverage. | 86 |
| SECTION 3.15. | Enforcement of Due-On-Sale Clauses; Assumption Agreements. | 87 |
| SECTION 3.16. | Realization Upon Defaulted Mortgage Loans. | 88 |
| SECTION 3.17. | Trustee to Cooperate; Release of Mortgage Files. | 91 |
| SECTION 3.18. | Servicing Compensation. | 92 |
| SECTION 3.19. | Reports to the Trustee; Collection Account Statements. | 93 |
| SECTION 3.20. | Statement as to Compliance. | 93 |
| SECTION 3.21. | Assessment of Compliance and Attestation Report. | 94 |
| SECTION 3.22. | Access to Certain Documentation. | 96 |
| SECTION 3.23. | Title, Management and Disposition of REO Property. | 96 |
| SECTION 3.24. | Obligations of the Master Servicer in Respect of Prepayment Interest Shortfalls. | 99 |
| SECTION 3.25. | Reports Filed with Securities and Exchange Commission. | 99 |
| SECTION 3.26. | Obligations of the Master Servicer in Respect of Mortgage Rates and Monthly Payments. | 106 |
| SECTION 3.27. | Solicitations. | 106 |
| SECTION 3.28. | Net WAC Rate Carryover Reserve Account. | 107 |
| SECTION 3.29. | Advancing Facility. | 108 |
| SECTION 3.30. | Pool Policy; Claims Under the Pool Policy | 109 |

**ARTICLE IV    FLOW OF FUNDS**    111

| | | |
|---|---|---|
| SECTION 4.01. | Distributions. | 111 |
| SECTION 4.02. | [Reserved]. | 117 |
| SECTION 4.03. | Statements. | 117 |
| SECTION 4.04. | Remittance Reports; Advances. | 121 |
| SECTION 4.05. | Swap Account. | 122 |
| SECTION 4.06. | Distributions on the REMIC Regular Interests. | 124 |
| SECTION 4.07. | Allocation of Realized Losses. | 126 |
| SECTION 4.08. | Tax Treatment of Swap Payments and Swap Termination Payments | 128 |
| SECTION 4.09. | [Reserved] | 129 |

**ARTICLE V    THE CERTIFICATES**    130

| | | |
|---|---|---|
| SECTION 5.01. | The Certificates. | 130 |
| SECTION 5.02. | Registration of Transfer and Exchange of Certificates. | 130 |
| SECTION 5.03. | Mutilated, Destroyed, Lost or Stolen Certificates. | 136 |
| SECTION 5.04. | Persons Deemed Owners. | 137 |
| SECTION 5.05. | Appointment of Paying Agent. | 137 |

**ARTICLE VI    THE MASTER SERVICER AND THE DEPOSITOR**    138

| | | |
|---|---|---|
| SECTION 6.01. | Liability of the Master Servicer and the Depositor. | 138 |
| SECTION 6.02. | Merger or Consolidation of, or Assumption of the Obligations of, the Master Servicer or the Depositor. | 138 |

SECTION 6.03.    Limitation on Liability of the Master Servicer and Others.......................138
SECTION 6.04.    Master Servicer Not to Resign...................................................................139
SECTION 6.05.    Delegation of Duties. ................................................................................140
SECTION 6.06.    [Reserved]. ................................................................................................140
SECTION 6.07.    Inspection. .................................................................................................140

ARTICLE VII    DEFAULT                                                                                        141

SECTION 7.01.    Master Servicer Events of Termination. ...................................................141
SECTION 7.02.    Trustee to Act; Appointment of Successor. ..............................................143
SECTION 7.03.    Waiver of Defaults. ...................................................................................144
SECTION 7.04.    Notification to Certificateholders. ............................................................144
SECTION 7.05.    Survivability of Master Servicer Liabilities..............................................144

ARTICLE VIII    THE TRUSTEE                                                                                   145

SECTION 8.01.    Duties of Trustee........................................................................................145
SECTION 8.02.    Certain Matters Affecting the Trustee. .....................................................146
SECTION 8.03.    Trustee Not Liable for Certificates or Mortgage Loans............................148
SECTION 8.04.    Trustee May Own Certificates. .................................................................149
SECTION 8.05.    Trustee Fee and Expenses. ........................................................................149
SECTION 8.06.    Eligibility Requirements for Trustee. ........................................................150
SECTION 8.07.    Resignation or Removal of Trustee. ..........................................................150
SECTION 8.08.    Successor Trustee.......................................................................................151
SECTION 8.09.    Merger or Consolidation of Trustee...........................................................151
SECTION 8.10.    Appointment of Co-Trustee or Separate Trustee. .....................................151
SECTION 8.11.    Limitation of Liability................................................................................153
SECTION 8.12.    Trustee May Enforce Claims Without Possession of Certificates. ...........153
SECTION 8.13.    Suits for Enforcement. ..............................................................................153
SECTION 8.14.    Waiver of Bond Requirement. ...................................................................154
SECTION 8.15.    Waiver of Inventory, Accounting and Appraisal Requirement. ...............154

ARTICLE IX    REMIC ADMINISTRATION                                                                           155

SECTION 9.01.    REMIC Administration...............................................................................155
SECTION 9.02.    Prohibited Transactions and Activities. ....................................................157
SECTION 9.03.    Indemnification with Respect to Certain Taxes and Loss of
                 REMIC Status. ..........................................................................................157

ARTICLE X    TERMINATION                                                                                      159

SECTION 10.01.    Termination...............................................................................................159
SECTION 10.02.    Additional Termination Requirements. ....................................................161

ARTICLE XI    MISCELLANEOUS PROVISIONS                                                                        162

SECTION 11.01.    Amendment...............................................................................................162

SECTION 11.02.    Recordation of Agreement; Counterparts. ...............................................163
SECTION 11.03.    Limitation on Rights of Certificateholders. .............................................163
SECTION 11.04.    Governing Law; Jurisdiction.....................................................................164
SECTION 11.05.    Notices. ......................................................................................................164
SECTION 11.06.    Severability of Provisions. .......................................................................165
SECTION 11.07.    Article and Section References..................................................................165
SECTION 11.08.    Notice to the Rating Agencies and the NIMS Insurer. ............................165
SECTION 11.09.    Further Assurances.....................................................................................166
SECTION 11.10.    Third Party Rights......................................................................................166
SECTION 11.11.    Benefits of Agreement. ..............................................................................166
SECTION 11.12.    Acts of Certificateholders. .........................................................................167
SECTION 11.13.    No Petition. .................................................................................................167
SECTION 11.14.    Intention of the Parties and Interpretation. ...............................................167

<u>EXHIBITS</u>:

Exhibit A-1 Form of Class I-A-1 Certificates
Exhibit A-2 Form of Class II-A-1 Certificates
Exhibit A-3 Form of Class II-A-2 Certificates
Exhibit A-4 Form of Class II-A-3 Certificates
Exhibit A-5 Form of Class II-A-4 Certificates
Exhibit A-6 Form of Class M-1 Certificates
Exhibit A-7 Form of Class M-2 Certificates
Exhibit A-8 Form of Class M-3 Certificates
Exhibit A-9 Form of Class M-4 Certificates
Exhibit A-10 Form of Class M-5 Certificates
Exhibit A-11 Form of Class M-6 Certificates
Exhibit A-12 Form of Class M-7 Certificates
Exhibit A-13 Form of Class M-8 Certificates
Exhibit A-14 Form of Class M-9 Certificates
Exhibit A-15 Form of Class M-10 Certificates
Exhibit A-16 Form of Class C Certificates
Exhibit A-17 Form of Class P Certificates
Exhibit A-18 Form of Class R Certificates
Exhibit A-19 Form of Class R-X Certificates
Exhibit B     Form of Pool Policy
Exhibit C     Form of Mortgage Loan Purchase Agreement
Exhibit D     Mortgage Loan Schedule
Exhibit E     Request for Release
Exhibit F-1 Form of Trustee's Initial Certification
Exhibit F-2 Form of Trustee's Final Certification
Exhibit F-3 Form of Receipt of Mortgage Note
Exhibit G     Loss Mitigation Procedures
Exhibit H     Form of Lost Note Affidavit
Exhibit I     Form of Interest Rate Swap Agreement
Exhibit J     Form of Investment Letter

Exhibit K      Form of Residual Certificates Transfer Affidavit
Exhibit L      Form of Transferor Certificate
Exhibit M      Form of ERISA Representation Letter
Exhibit N      Form of Swap Administration Agreement
Exhibit O      Form of Remittance Report
Exhibit P      [Reserved]
Exhibit Q      [Reserved]
Exhibit R-1 Form of Certification to Be Provided by the Depositor with Form 10-K
Exhibit R-2 Form of Certification to Be Provided to Depositor by the Trustee
Exhibit S      Servicing Criteria to Be Addressed in Assessment of Compliance
Exhibit T      Form 10-D, Form 8-K and Form 10-K Reporting Responsibility
Exhibit U      Additional Disclosure Notification

Schedule I    Prepayment Charge Schedule

This Pooling and Servicing Agreement is dated as of June 1, 2006 (the "Agreement"), among OPTION ONE MORTGAGE ACCEPTANCE CORPORATION, as depositor (the "Depositor"), OPTION ONE MORTGAGE CORPORATION, as master servicer (the "Master Servicer") and WELLS FARGO BANK, N.A., as trustee (the "Trustee").

PRELIMINARY STATEMENT:

The Depositor intends to sell pass-through certificates (collectively, the "Certificates"), to be issued hereunder in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in the Trust Fund created hereunder. The Certificates will consist of nineteen classes of certificates, designated as (i) the Class I-A-1 Certificates, (ii) the Class II-A-1 Certificates, (iii) the Class II-A-2 Certificates, (iv) the Class II-A-3 Certificates, (v) the Class II-A-4 Certificates, (vi) the Class M-1 Certificates, (vii) the Class M-2 Certificates, (viii) the Class M-3 Certificates, (ix) the Class M-4 Certificates, (x) the Class M-5 Certificates, (xi) the Class M-6 Certificates, (xii) the Class M-7 Certificates, (xiii) the Class M-8 Certificates, (xiv) the Class M-9 Certificates, (xv) the Class M-10 Certificates, (xvi) the Class C Certificates, (xvii) the Class P Certificates, (xviii) the Class R Certificates and (xix) the Class R-X Certificates.

## REMIC 1

As provided herein, the Trustee will make an election to treat the segregated pool of assets consisting of the Group I Mortgage Loans, the Group II Mortgage Loans and certain other related assets subject to this Agreement (but exclusive of the Net WAC Rate Carryover Reserve Account, the Master Servicer Prepayment Charge Payment Amounts, the Swap Account and the Interest Rate Swap Agreement) as a real estate investment conduit (a "REMIC") for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 1." The Class R-1 Interest will represent the sole class of "residual interests" in REMIC 1 for purposes of the REMIC Provisions under federal income tax law. The following table irrevocably sets forth the designation, the Uncertificated REMIC 1 Pass-Through Rate, the initial Uncertificated Principal Balance, and for purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC 1 Regular Interests. None of the REMIC 1 Regular Interests will be certificated.

| Designation | Uncertificated REMIC 1 Pass-Through Rate[2] | Initial Uncertificated Balance | | Latest Possible Maturity Date[1] |
|---|---|---|---|---|
| I-1-A | Variable | $ | 750,000,000.00 | June 2036 |
| I-1-B | Variable | $ | 750,000,000.00 | June 2036 |

[1]   For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date immediately following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each REMIC 1 Regular Interest.

[2]   Calculated in accordance with the definition of "Uncertificated REMIC I Pass-Through Rate" herein.

## REMIC 2

As provided herein, the Trustee will make an election to treat the segregated pool of assets consisting of the REMIC 1 Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 2." The Class R-2 Interest will represent the sole class of "residual interests" in REMIC 2 for purposes of the REMIC Provisions under federal income tax law. The following table irrevocably sets forth the designation, the Uncertificated REMIC 2 Pass-Through Rate, the initial Uncertificated Principal Balance, and for purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC 2 Regular Interests. None of the REMIC 2 Regular Interests will be certificated.

| Designation | Uncertificated REMIC 2 Pass-Through Rate[2] | | Initial Uncertificated Principal Balance | Assumed Final Maturity Date[1] |
|---|---|---|---|---|
| LTAA | Variable | $ | 1,469,999,902.00 | June 2036 |
| LTIA1 | Variable | $ | 1,011,300.00 | June 2036 |
| LTIIA1 | Variable | $ | 5,537,850.00 | June 2036 |
| LTIIA2 | Variable | $ | 2,273,650.00 | June 2036 |
| LTIIA3 | Variable | $ | 1,815,520.00 | June 2036 |
| LTIIA4 | Variable | $ | 1,301,680.00 | June 2036 |
| LTM1 | Variable | $ | 592,500.00 | June 2036 |
| LTM2 | Variable | $ | 547,500.00 | June 2036 |
| LTM3 | Variable | $ | 315,000.00 | June 2036 |
| LTM4 | Variable | $ | 285,000.00 | June 2036 |
| LTM5 | Variable | $ | 270,000.00 | June 2036 |
| LTM6 | Variable | $ | 255,000.00 | June 2036 |
| LTM7 | Variable | $ | 247,500.00 | June 2036 |
| LTM8 | Variable | $ | 120,000.00 | June 2036 |
| LTM9 | Variable | $ | 82,500.00 | June 2036 |
| LTM10 | Variable | $ | 150,000.00 | June 2036 |
| LTZZ | Variable | $ | 15,194,998.00 | June 2036 |
| LTP | Variable | $ | 100.00 | June 2036 |
| LTIO | Variable | | [3] | June 2036 |

---

[1] For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date immediately following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each REMIC 2 Regular Interest.

[2] Calculated in accordance with the definition of "Uncertificated REMIC 2 Pass-Through Rate" herein.

[3] REMIC 2 Regular Interest LTIO will not have an Uncertificated Principal Balance, but will accrue interest on its Uncertificated Notional Amount.

## REMIC 3

As provided herein, the Trustee shall make an election to treat the segregated pool of assets consisting of the REMIC 2 Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 3." The Class R-3 Interest represents the sole class of "residual interests" in REMIC 3 for purposes of the REMIC Provisions.

The following table sets forth (or describes) the Class designation, Pass-Through Rate and Original Class Certificate Principal Balance for each Class of Certificates that represents one or more of the "regular interests" in REMIC 3 created hereunder:

| Class Designation | Pass-Through Rate | Original Class Certificate Principal Balance | Assumed Final Maturity Date[1] |
|---|---|---|---|
| Class I-A-1 ...................... | Variable[2] | $ 101,130,000.00 | June 2036 |
| Class II-A-1 ...................... | Variable[2] | $ 553,785,000.00 | June 2036 |
| Class II-A-2 ...................... | Variable[2] | $ 227,365,000.00 | June 2036 |
| Class II-A-3 ...................... | Variable[2] | $ 181,552,000.00 | June 2036 |
| Class II-A-4 ...................... | Variable[2] | $ 130,168,000.00 | June 2036 |
| Class M-1 ...................... | Variable[2] | $ 59,250,000.00 | June 2036 |
| Class M-2 ...................... | Variable[2] | $ 54,750,000.00 | June 2036 |
| Class M-3 ...................... | Variable[2] | $ 31,500,000.00 | June 2036 |
| Class M-4 ...................... | Variable[2] | $ 28,500,000.00 | June 2036 |
| Class M-5 ...................... | Variable[2] | $ 27,000,000.00 | June 2036 |
| Class M-6 ...................... | Variable[2] | $ 25,500,000.00 | June 2036 |
| Class M-7 ...................... | Variable[2] | $ 24,750,000.00 | June 2036 |
| Class M-8 ...................... | Variable[2] | $ 12,000,000.00 | June 2036 |
| Class M-9 ...................... | Variable[2] | $ 8,250,000.00 | June 2036 |
| Class M-10 ...................... | Variable[2] | $ 15,000,000.00 | June 2036 |
| Class C Interest.................. | Variable[3] | $ 19,499,900.00 | June 2036 |
| Class P Interest.................. | N/A[4] | $ 100.00 | June 2036 |
| Class SWAP-IO Interest.... | N/A[5] | N/A[5] | June 2036 |

---

[1] For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each Class of Certificates that represents one or more of the "regular interests" in REMIC 3.

[2] Calculated in accordance with the definition of "Pass-Through Rate" herein.

[3] The Class C Interest will accrue interest at its variable Pass-Through Rate on the Notional Amount of the Class C Interest outstanding from time to time which shall equal the aggregate of the Uncertificated Principal Balances of the REMIC 2 Regular Interests (other than REMIC 2 Regular Interest LTP). The Class C Interest will not accrue interest on its Class Certificate Principal Balance.

[4] The Class P Interest will not accrue interest.

[5] The Class SWAP-IO Interest will not have a Pass-Through Rate or a Certificate Principal Balance, but will be entitled to 100% of amounts distributed on REMIC 2 Regular Interest LTIO.

3

## REMIC 4

As provided herein, the Trustee shall make an election to treat the segregated pool of assets consisting of the Class C Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 4." The Class R-4 Interest represents the sole class of "residual interests" in REMIC 4 for purposes of the REMIC Provisions under federal income tax law.

The following table sets forth (or describes) the Class designation, Pass-Through Rate and Original Class Certificate Principal Balance for each Class of Certificates that represents one or more of the "regular interests" in REMIC 4 created hereunder:

| Class Designation | Pass-Through Rate | Original Class Certificate Principal Balance | Assumed Final Maturity Date[1] |
|---|---|---|---|
| Class C .............................. | Variable[2] | $   19,499,900.00 | June 2036 |

[1] For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each Class of Certificates that represents one or more of the "regular interests" in REMIC 4.

[2] The Class C Certificates will receive 100% of amounts received in respect of the Class C Interest.

## REMIC 5

As provided herein, the Trustee shall make an election to treat the segregated pool of assets consisting of the Class P Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 5." The Class R-5 Interest represents the sole class of "residual interests" in REMIC 5 for purposes of the REMIC Provisions under federal income tax law.

The following table sets forth (or describes) the Class designation, Pass-Through Rate and Original Class Certificate Principal Balance for each Class of Certificates that represents one or more of the "regular interests" in REMIC 5 created hereunder:

| Class Designation | Pass-Through Rate | Original Class Certificate Principal Balance | Assumed Final Maturity Date[1] |
|---|---|---|---|
| Class P ............................. | Variable[2] | $100.00 | June 2036 |

[1]   For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each Class of Certificates that represents one or more of the "regular interests" in REMIC 5

[2]   The Class P Certificates will receive 100% of amounts received in respect of the Class P Interest

## REMIC 6

As provided herein, the Trustee shall make an election to treat the segregated pool of assets consisting of the Class SWAP-IO Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 6." The Class R-6 Interest represents the sole class of "residual interests" in REMIC 6 for purposes of the REMIC Provisions under federal income tax law.

The following table sets forth (or describes) the Class designation, Pass-Through Rate and Original Class Certificate Principal Balance for each Class of Certificates that represents one or more of the "regular interests" in REMIC 6 created hereunder, which will be uncertificated:

| Class Designation | Pass-Through Rate | Original Class Certificate Principal Balance | Assumed Final Maturity Date[1] |
|---|---|---|---|
| SWAP-IO ......................... | Variable[2] | N/A | June 2036 |

[1] For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for REMIC 6 regular Interest SWAP-IO

[2] REMIC 6 Regular Interest SWAP-IO will receive 100% of amounts received in respect of the Class SWAP-IO Interest

ARTICLE I

DEFINITIONS

SECTION 1.01.        Defined Terms.

Whenever used in this Agreement or in the Preliminary Statement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article.  Unless otherwise specified, all calculations in respect of interest on the Class A Certificates and the Mezzanine Certificates shall be made on the basis of the actual number of days elapsed on the basis of a 360-day year and all calculations in respect of interest on the Class C Certificates and all other calculations of interest described herein shall be made on the basis of a 360-day year consisting of twelve 30-day months. The Class P Certificates and the Residual Certificates are not entitled to distributions in respect of interest and, accordingly, will not accrue interest.

"1933 Act":  The Securities Act of 1933, as amended.

"Account":  Either of the Collection Account or Distribution Account.

"Accrual Period":  With respect to the Class A Certificates and the Mezzanine Certificates and each Distribution Date, the period commencing on the preceding Distribution Date (or in the case of the first such Accrual Period, commencing on the Closing Date) and ending on the day preceding the current Distribution Date.  With respect to the Class C Certificates and each Distribution Date, the calendar month prior to the month of such Distribution Date.

"Additional Disclosure":  As defined in Section 3.25(a)(iv).

"Additional Form 10-D Disclosure":  As defined in Section 3.25(a)(i).

"Additional Form 10-K Disclosure":  As defined in Section 3.25(a)(iii).

"Adjustable-Rate Mortgage Loan":  A Mortgage Loan which provides at any period during the life of such loan for the adjustment of the Mortgage Rate payable in respect thereto.  The Adjustable-Rate Mortgage Loans are identified as such on the Mortgage Loan Schedule.

"Adjusted Net Maximum Mortgage Rate": With respect to any Distribution Date and any Mortgage Loan (or the related REO Property) in the Trust Fund as of the close of business on the last day of the preceding calendar month, a per annum rate of interest equal to the applicable Maximum Mortgage Rate for such Mortgage Loan (or the Mortgage Rate in the case of any Fixed-Rate Mortgage Loan) as of the first day of the month preceding the month in which the Distribution Date occurs minus the sum of (i) the Trustee Fee Rate and (ii) the Servicing Fee Rate.

"Adjusted Net Mortgage Rate": With respect to any Distribution Date and any Mortgage Loan (or the related REO Property) in the Trust Fund as of the close of business on the last day of the preceding prepayment period, a per annum rate of interest equal to the applicable

7

Mortgage Rate for such Mortgage Loan as of the first day of the month preceding the month in which the related Distribution Date occurs minus the sum of (i) the Trustee Fee Rate and (ii) the Servicing Fee Rate.

"Adjustment Date":  With respect to each Adjustable-Rate Mortgage Loan, each adjustment date, on which the Mortgage Rate of such Mortgage Loan changes pursuant to the related Mortgage Note.  The first Adjustment Date following the Cut-off Date as to each Adjustable-Rate Mortgage Loan is set forth in the Mortgage Loan Schedule.

"Advance":  As to any Mortgage Loan or REO Property, any advance made by the Master Servicer in respect of any Distribution Date pursuant to Section 4.04.

"Advancing Facility":  As defined in Section 3.29 hereof.

"Advancing Person":  As defined in Section 3.29 hereof.

"Adverse REMIC Event": As defined in Section 9.01(f) hereof.

"Affiliate":  With respect to any Person, any other Person controlling, controlled by or under common control with such Person.  For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

"Agreement":  This Pooling and Servicing Agreement and all amendments hereof and supplements hereto.

"Allocated Realized Loss Amount":  With respect to any Distribution Date and the Mezzanine Certificates, the sum of (i) any Realized Losses allocated to such Class of Certificates on such Distribution Date and (ii) the amount of any Allocated Realized Loss Amount for such Class of Certificates remaining unpaid from the previous Distribution Date as reduced by an amount equal to the increase in the related Certificate Principal Balance due to the receipt of Subsequent Recoveries.

"Assignment":  An assignment of Mortgage, notice of transfer or equivalent instrument, in recordable form (excepting therefrom, if applicable, the mortgage recordation information which has not been required pursuant to Section 2.01 hereof or returned by the applicable recorder's office and if the assignment has been delivered in blank, the name of the Assignee), which is sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect or record the sale of the Mortgage.

"Assumed Final Maturity Date":  As to each Class of Certificates, the date set forth as such in the Preliminary Statement.

"Available Funds":  With respect to any Distribution Date, an amount equal to the excess of (i) the sum of (a) the aggregate of the related Monthly Payments received on or prior to the related Determination Date, including any Subsequent Recoveries, (b) Liquidation Proceeds, Insurance Proceeds, Principal Prepayments and other unscheduled recoveries of principal and interest in respect of the Mortgage Loans received during the related Prepayment Period, (c) the

8

aggregate of any amounts received in respect of a related REO Property withdrawn from any REO Account and deposited in the Collection Account for such Distribution Date, (d) the aggregate of any amounts deposited in the Collection Account by the Master Servicer in respect of related Prepayment Interest Shortfalls for such Distribution Date, (e) the aggregate of any Advances made by the Master Servicer for such Distribution Date, (f) the aggregate of any related advances made by the Trustee for such Distribution Date pursuant to Section 7.02, (g) [reserved] (h) [reserved], (i) [reserved] and (j) the amount of any Prepayment Charges collected by the Master Servicer in connection with the full or partial prepayment of any of the Mortgage Loans and any Master Servicer Prepayment Charge Payment Amount over (ii) the sum of (a) amounts reimbursable or payable to the Master Servicer pursuant to Section 3.11(a) or the Trustee pursuant to Section 3.11(b), (b) amounts deposited in the Collection Account or the Distribution Account pursuant to clauses (a) through (j) above, as the case may be, in error, (c) the amount of any Prepayment Charges collected by the Master Servicer in connection with the full or partial prepayment of any of the Mortgage Loans and any Master Servicer Prepayment Charge Payment Amount, (d) the Trustee Fee payable from the Distribution Account pursuant to Section 8.05, (e) any Net Swap Payment or Swap Termination Payment owed to the Swap Provider but excluding any Swap Termination Payment owed to the Swap Provider resulting from a Swap Provider Trigger Event (after taking into account any upfront payment received from the counterparty to a replacement swap agreement), (f) [reserved], and (g) any indemnification payments or expense reimbursements made by the Trust Fund pursuant to Section 8.05.

"Back-Up Certification": As defined in Section 3.25(a)(ii).

"Bankruptcy Code": The Bankruptcy Reform Act of 1978 (Title 11 of the United States Code), as amended.

"Book-Entry Certificates": Any of the Certificates that shall be registered in the name of the Depository or its nominee, the ownership of which is reflected on the books of the Depository or on the books of a Person maintaining an account with the Depository (directly, as a "Depository Participant", or indirectly, as an indirect participant in accordance with the rules of the Depository and as described in Section 5.02 hereof). On the Closing Date, the Class A Certificates and the Mezzanine Certificates shall be Book-Entry Certificates.

"Business Day": Any day other than a Saturday, a Sunday or a day on which banking or savings institutions in the State of Delaware, the State of New York, the State of Maryland, the State of California, the Commonwealth of Pennsylvania, the State of Florida, the State of Minnesota or any city in which the Corporate Trust Office of the Trustee is located are authorized or obligated by law or executive order to be closed.

"Certificate": Any Regular Certificate or Residual Certificate.

"Certificateholder": The Person in whose name a Certificate is registered in the Certificate Register, except that a Disqualified Organization or non-U.S. Person shall not be a Holder of a Residual Certificate for any purpose hereof and, solely for the purposes of giving any consent pursuant to this Agreement, any Certificate registered in the name of the Depositor or the Master Servicer or any Affiliate thereof shall be deemed not to be outstanding and the Voting Rights to which it is entitled shall not be taken into account in determining whether the requisite

percentage of Voting Rights necessary to effect any such consent has been obtained, except as otherwise provided in Section 11.01.  The Trustee and the NIMS Insurer may conclusively rely upon a certificate of the Depositor or the Master Servicer in determining whether a Certificate is held by an Affiliate thereof.  All references herein to "Certificateholders" shall reflect the rights of Certificate Owners as they may indirectly exercise such rights through the Depository and participating members thereof, except as otherwise specified herein; provided, however, that the Trustee and the NIMS Insurer shall be required to recognize as a "Certificateholder" only the Person in whose name a Certificate is registered in the Certificate Register.

"Certificate Margin": With respect to each Class of Adjustable-Rate Certificates and for purposes of the Marker Rate and the Maximum LTZZ Uncertificated Interest Deferral Amount, the specified REMIC 2 Regular Interest, as follows:

| Class | REMIC 2 Regular Interest | Certificate Margin | |
|---|---|---|---|
| | | (1) (%) | (2) (%) |
| I-A-1 | LTIA1 | 0.050% | 0.100% |
| II-A-1 | LTIIA1 | 0.050% | 0.100% |
| II-A-2 | LTIIA2 | 0.100% | 0.200% |
| II-A-3 | LTIIA3 | 0.140% | 0.280% |
| II-A-4 | LTIIA4 | 0.250% | 0.500% |
| M-1 | LTM1 | 0.300% | 0.450% |
| M-2 | LTM2 | 0.320% | 0.480% |
| M-3 | LTM3 | 0.330% | 0.495% |
| M-4 | LTM4 | 0.400% | 0.600% |
| M-5 | LTM5 | 0.430% | 0.645% |
| M-6 | LTM6 | 0.480% | 0.720% |
| M-7 | LTM7 | 1.000% | 1.500% |
| M-8 | LTM8 | 1.250% | 1.875% |
| M-9 | LTM9 | 2.000% | 3.000% |
| M-10 | LTM10 | 2.250% | 3.375% |

(1)    For the Accrual Period for each Distribution Date on or prior to the Optional Termination  Date.
(2)    For each other Accrual Period.

"Certificate Owner":  With respect to each Book-Entry Certificate, any beneficial owner thereof.

"Certificate Principal Balance":  With respect to any Class of Regular Certificates (other than the Class C Certificates) immediately prior to any Distribution Date, will be equal to the Initial Certificate Principal Balance thereof (A) increased, in the case of a Mezzanine Certificate by the amount of  any Subsequent Recoveries added to the Certificate Principal Balance of such Class pursuant to Section 4.01, (B) reduced by the sum of all amounts actually distributed in respect of principal of such Class and (C) further reduced, in the case of a Mezzanine Certificate by Realized Losses allocated thereto on all prior Distribution Dates.  With respect to the Class C Certificates as of any date of determination, an amount equal to the excess, if any, of (A) the then aggregate Uncertificated Principal Balance of the REMIC 2 Regular Interests over (B) the then aggregate Certificate Principal Balances of the Class A Certificates, the Mezzanine Certificates and the Class P Certificates then outstanding.

"Certificate Register" and "Certificate Registrar":  The register maintained and registrar appointed pursuant to Section 5.02 hereof.

"Certification Parties":  As defined in Section 3.25(a)(ii).

10

"Certifying Person":  As defined in Section 3.25 (a)(ii).

"Class":  Collectively, Certificates which have the same priority of payment and bear the same class designation and the form of which is identical except for variation in the Percentage Interest evidenced thereby.

"Class A Certificateholder":  Any Holder of a Class A Certificate.

"Class A Certificates":  Any Class I-A-1 Certificate, Class II-A-1 Certificate, Class II-A-2 Certificate, Class II-A-3 Certificate or Class II-A-4 Certificate.

"Class A Principal Distribution Amount":  With respect to any Distribution Date, the sum of (i) the Group I Senior Principal Distribution Amount and (ii) the Group II Senior Principal Distribution Amount.

"Class I-A-1 Certificate":  Any one of the Class I-A-1 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-1, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class II-A-1 Certificate":  Any one of the Class II-A-1 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-2, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class II-A-2 Certificate":  Any one of the Class II-A-2 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-3, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class II-A-3 Certificate":  Any one of the Class II-A-3 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-4, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class II-A-4 Certificate":  Any one of the Class II-A-4 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-5, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class C Certificate":  Any one of the Class C Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-16, representing (i) a Regular Interest in REMIC 4, (ii) the

11

obligation to pay Net WAC Rate Carryover Amounts and Swap Termination Payments and (iii) the right to receive the Class IO Distribution Amount.

"Class C Interest": An uncertificated interest in the Trust held by the Trustee on behalf of the Holders of the Class C Certificates, evidencing a Regular Interest in REMIC 3 for purposes of the REMIC Provisions.

"Class IO Distribution Amount": As defined in Section 4.05 hereof. For purposes of clarity, the Class IO Distribution Amount for any Distribution Date shall equal the amount payable to the Swap Administrator on such Distribution Date in excess of the amount payable on the Class Swap-IO Interest on such Distribution Date, all as further provided in Section 4.05 hereof.

"Class Swap-IO Interest": An uncertificated interest in the Trust Fund evidencing a Regular Interest in REMIC 3.

"Class M-1 Certificate": Any one of the Class M-1 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-6, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-1 Principal Distribution Amount": An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date) and (ii) the Certificate Principal Balance of the Class M-1 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 67.10% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-2 Certificate": Any one of the Class M-2 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-7, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-2 Principal Distribution Amount": An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date) and (iii) the Certificate Principal Balance of the Class M-2

Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 74.40% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-3 Certificate":  Any one of the Class M-3 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-8, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-3 Principal Distribution Amount":  An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date) and (iv) the Certificate Principal Balance of the Class M-3 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 78.60% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-4 Certificate":  Any one of the Class M-4 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-9, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-4 Principal Distribution Amount":  An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (iv) the Certificate Principal Balance of the Class M-3

Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date) and (v) the Certificate Principal Balance of the Class M-4 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 82.40% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-5 Certificate":  Any one of the Class M-5 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-10, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-5 Principal Distribution Amount":  An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (iv) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date), (v) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the distribution of the Class M-4 Principal Distribution Amount on such Distribution Date) and (vi) the Certificate Principal Balance of the Class M-5 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 86.00% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-6 Certificate":  Any one of the Class M-6 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-11, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-6 Principal Distribution Amount":  An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A

Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (iv) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date), (v) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the distribution of the Class M-4 Principal Distribution Amount on such Distribution Date), (vi) the Certificate Principal Balance of the Class M-5 Certificates (after taking into account the distribution of the Class M-5 Principal Distribution Amount on such Distribution Date) and (vii) the Certificate Principal Balance of the Class M-6 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 89.40% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-7 Certificate": Any one of the Class M-7 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-12, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-7 Principal Distribution Amount": An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (iv) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date), (v) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the distribution of the Class M-4 Principal Distribution Amount on such Distribution Date), (vi) the Certificate Principal Balance of the Class M-5 Certificates (after taking into account the distribution of the Class M-5 Principal Distribution Amount on such Distribution Date), (vii) the Certificate Principal Balance of the Class M-6 Certificates (after taking into account the distribution of the Class M-6 Principal Distribution Amount on such Distribution Date) and (viii) the Certificate Principal Balance of the Class M-7 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 92.70% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during

the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-8 Certificate":  Any one of the Class M-8 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-13, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-8 Principal Distribution Amount":  An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (iv) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date), (v) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the distribution of the Class M-4 Principal Distribution Amount on such Distribution Date), (vi) the Certificate Principal Balance of the Class M-5 Certificates (after taking into account the distribution of the Class M-5 Principal Distribution Amount on such Distribution Date), (vii) the Certificate Principal Balance of the Class M-6 Certificates (after taking into account the distribution of the Class M-6 Principal Distribution Amount on such Distribution Date), (viii) the Certificate Principal Balance of the Class M-7 Certificates (after taking into account the distribution of the Class M-7 Principal Distribution Amount on such Distribution Date) and (ix) the Certificate Principal Balance of the Class M-8 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 94.30% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-9 Certificate":  Any one of the Class M-9 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-14, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-9 Principal Distribution Amount": An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (iv) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date), (v) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the distribution of the Class M-4 Principal Distribution Amount on such Distribution Date), (vi) the Certificate Principal Balance of the Class M-5 Certificates (after taking into account the distribution of the Class M-5 Principal Distribution Amount on such Distribution Date), (vii) the Certificate Principal Balance of the Class M-6 Certificates (after taking into account the distribution of the Class M-6 Principal Distribution Amount on such Distribution Date), (viii) the Certificate Principal Balance of the Class M-7 Certificates (after taking into account the distribution of the Class M-7 Principal Distribution Amount on such Distribution Date), (ix) the Certificate Principal Balance of the Class M-8 Certificates (after taking into account the distribution of the Class M-8 Principal Distribution Amount on such Distribution Date) and (x) the Certificate Principal Balance of the Class M-9 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 95.40% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-10 Certificate": Any one of the Class M-10 Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-15, representing (i) a Regular Interest in REMIC 3, (ii) the right to receive the Net WAC Rate Carryover Amount and (iii) the obligation to pay the Class IO Distribution Amount.

"Class M-10 Principal Distribution Amount": An amount, not less than zero, equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (iv) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date), (v) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the distribution of the Class M-4 Principal Distribution

17

Amount on such Distribution Date), (vi) the Certificate Principal Balance of the Class M-5 Certificates (after taking into account the distribution of the Class M-5 Principal Distribution Amount on such Distribution Date), (vii) the Certificate Principal Balance of the Class M-6 Certificates (after taking into account the distribution of the Class M-6 Principal Distribution Amount on such Distribution Date), (viii) the Certificate Principal Balance of the Class M-7 Certificates (after taking into account the distribution of the Class M-7 Principal Distribution Amount on such Distribution Date), (ix) the Certificate Principal Balance of the Class M-8 Certificates (after taking into account the distribution of the Class M-8 Principal Distribution Amount on such Distribution Date), (x) the Certificate Principal Balance of the Class M-9 Certificates (after taking into account the distribution of the Class M-9 Principal Distribution Amount on such Distribution Date) and (xi) the Certificate Principal Balance of the Class M-10 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 97.40% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class P Certificate": Any one of the Class P Certificates executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-17, representing the right to distributions as set forth herein and therein and evidencing a regular interest in REMIC 5.

"Class P Interest": An uncertificated interest in the Trust Fund held by the Trustee on behalf of the Holders of the Class P Certificates, evidencing a Regular Interest in REMIC 3 for purposes of the REMIC Provisions.

"Class R Certificate": The Class R Certificate executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-18 and evidencing the ownership of the Class R-1 Interest, the Class R-2 Interest and the Class R-3 Interest.

"Class R-X Certificate": The Class R-X Certificate executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-19 and evidencing the ownership of the Class R-4 Interest, the Class R-5 Interest and the Class R-6 Interest.

"Class R-1 Interest": The uncertificated Residual Interest in REMIC 1.

"Class R-2 Interest": The uncertificated Residual Interest in REMIC 2.

"Class R-3 Interest": The uncertificated Residual Interest in REMIC 3.

"Class R-4 Interest": The uncertificated Residual Interest in REMIC 4.

"Class R-5 Interest":  The uncertificated Residual Interest in REMIC 5.

"Class R-6 Interest":  The uncertificated Residual Interest in REMIC 6.

"Close of Business":  As used herein, with respect to any Business Day, 5:00 p.m. (New York time).

"Closing Date":  June 29, 2006.

"Closing Date Deposit Amount":  $1,030.32 deposited by the Depositor into the Distribution Account on the Closing Date.  $0.52 of the Closing Date Deposit Amount shall be attributable to interest in respect of the Group I Mortgage Loans and $86.38 of the Closing Date Deposit Amount shall be attributable to principal in respect of the Group I Mortgage Loans. $5.62 of the Closing Date Deposit Amount shall be attributable to interest in respect of the Group II Mortgage Loans and $937.80 of the Closing Date Deposit Amount shall be attributable to principal in respect of the Group II Mortgage Loans.

"Code":  The Internal Revenue Code of 1986, as amended.

"Collection Account":   The segregated account or accounts created and maintained by the Master Servicer pursuant to Section 3.10(a), which shall be entitled "Wells Fargo Bank, N.A., as Trustee, in trust for registered Holders of Option One Mortgage Loan Trust 2006-2, Asset-Backed Certificates, Series 2006-2," which must be an Eligible Account.

"Commission":  The U.S. Securities and Exchange Commission.

"Compensating Interest":  As defined in Section 3.24 hereof.

"Convertible Mortgage Loan":  Any Adjustable-Rate Mortgage Loan which allows the Mortgagor thereunder to convert the Mortgage Rate thereon to a fixed Mortgage Rate.

"Corporate Trust Office": The principal corporate trust office of the Trustee at which at any particular time its corporate trust business in connection with this Agreement shall be administered, which office at the date of the execution of this instrument is located at Sixth Street and Marquette Avenue, Minneapolis, Minnesota 55479-0113, Attention:  Option One Series 2006-2, or at such other address as the Trustee may designate from time to time by notice to the Certificateholders, the Depositor, the Master Servicer, the Originator and the Seller.

"Corresponding Certificate":  With respect to each REMIC 2 Regular Interest set forth below, the corresponding Regular Certificate set forth in the table below:

| REMIC 2 Regular Interest | Regular Certificate |
|---|---|
| LTIA1 | Class I-A-1 |
| LTIIA1 | Class II-A-1 |
| LTIIA2 | Class II-A-2 |
| LTIIA3 | Class II-A-3 |
| LTIIA4 | Class II-A-4 |
| LTM1 | Class M-1 |
| LTM2 | Class M-2 |
| LTM3 | Class M-3 |
| LTM4 | Class M-4 |
| LTM5 | Class M-5 |
| LTM6 | Class M-6 |
| LTM7 | Class M-7 |
| LTM8 | Class M-8 |
| LTM9 | Class M-9 |
| LTM10 | Class M-10 |
| LTP | Class P |

"Covered Mortgage Loans":  Those Mortgage Loans covered by the Pool Policy.

"Custodian":  Wells Fargo Bank, N.A., as custodian of the Mortgage Files, and any successor thereto.

"Cut-off Date":  With respect to any Mortgage Loan, June 1, 2006.  With respect to all Qualified Substitute Mortgage Loans, their respective dates of substitution.  References herein to the "Cut-off Date," when used with respect to more than one Mortgage Loan, shall be to the respective Cut-off Dates for such Mortgage Loans.

"Cut-off Date Principal Balance":  With respect to any Mortgage Loan, the unpaid principal balance thereof as of the Cut-off Date, as applicable (or as of the applicable date of substitution with respect to a Qualified Substitute Mortgage Loan), after application of scheduled payments due thereon, whether or not received.

"Debt Service Reduction":  With respect to any Mortgage Loan, a reduction in the scheduled Monthly Payment for such Mortgage Loan by a court of competent jurisdiction in a proceeding under the Bankruptcy Code, except such a reduction resulting from a Deficient Valuation.

"Deficient Valuation":  With respect to any Mortgage Loan, a valuation of the related Mortgaged Property by a court of competent jurisdiction in an amount less than the then

outstanding principal balance of the Mortgage Loan, which valuation results from a proceeding initiated under the Bankruptcy Code.

"Definitive Certificates":  As defined in Section 5.02(c) hereof.

"Deleted Mortgage Loan":  A Mortgage Loan replaced or to be replaced by one or more Qualified Substitute Mortgage Loans.

"Delinquency Master Servicer Termination Trigger":  A Delinquency Master Servicer Termination Trigger will have occurred with respect to the Certificates on a Distribution Date if the Three Month Rolling Delinquency Percentage for the Mortgage Loans exceeds 18.00%.

"Delinquency Percentage":  For any Distribution Date, the percentage obtained by dividing (x) the aggregate Stated Principal Balance of Mortgage Loans (not including any Liquidated Mortgage Loan as of the end of the related Prepayment Period) Delinquent 60 days or more by (y) the aggregate Stated Principal Balance of the Mortgage Loans (not including any Liquidated Mortgage Loan as of the end of the related Prepayment Period), in each case, as of the last day of the previous calendar month.

"Delinquent":  Any Mortgage Loan, the Monthly Payment due on a Due Date which is not made by the Close of Business on the next scheduled Due Date for such Mortgage Loan. For example, a Mortgage Loan is 60 or more days Delinquent if the Monthly Payment due on a Due Date is not made by the Close of Business on the second scheduled Due Date after such Due Date.

"Depositor":  Option One Mortgage Acceptance Corporation, a Delaware corporation, or any successor in interest.

"Depository": The initial Depository shall be The Depository Trust Company and upon request, Clearstream Banking Luxembourg and the Euroclear System, whose nominee is Cede & Co., or any other organization registered as a "clearing agency" pursuant to Section 17A of the Securities Exchange Act of 1934, as amended.  The Depository shall initially be the registered Holder of the Book-Entry Certificates. The Depository shall at all times be a "clearing corporation" as defined in Section 8-102(3) of the Uniform Commercial Code of the State of New York.

"Depository Participant":  A broker, dealer, bank or other financial institution or other person for whom from time to time a Depository effects book-entry transfers and pledges of securities deposited with the Depository.

"Determination Date":  With respect to any Distribution Date, the 15th day of the calendar month in which such Distribution Date occurs or, if such 15th day is not a Business Day, the Business Day immediately preceding such 15th day.

"Directly Operate":  With respect to any REO Property, the furnishing or rendering of services to the tenants thereof, the management or operation of such REO Property, the holding of such REO Property primarily for sale to customers, the performance of any

21

construction work thereon or any use of such REO Property in a trade or business conducted by the REMIC other than through an Independent Contractor; provided, however, that the Trustee (or the Master Servicer on behalf of the Trustee) shall not be considered to Directly Operate an REO Property solely because the Trustee (or the Master Servicer on behalf of the Trustee) establishes rental terms, chooses tenants, enters into or renews leases, deals with taxes and insurance, or makes decisions as to repairs or capital expenditures with respect to such REO Property.

"Disqualified Organization": A "disqualified organization" under Section 860E of the Code, which as of the Closing Date is any of: (i) the United States, any state or political subdivision thereof, any foreign government, any international organization, or any agency or instrumentality of any of the foregoing, (ii) any organization (other than certain farmers cooperatives described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the Code unless such organization is subject to the tax imposed by Section 511 of the Code, (iii) any organization described in Section 1381(a)(2)(C) of the Code, (iv) an "electing large partnership" within the meaning of Section 775 of the Code or (v) any other Person so designated by the Trustee based upon an Opinion of Counsel provided by nationally recognized counsel to the Trustee that the holding of an ownership interest in a Residual Certificate by such Person may cause any REMIC formed hereunder or any Person having an ownership interest in any Class of Certificates (other than such Person) to incur liability for any federal tax imposed under the Code that would not otherwise be imposed but for the transfer of an ownership interest in the Residual Certificate to such Person. A corporation will not be treated as an instrumentality of the United States or of any state or political subdivision thereof, if all of its activities are subject to tax and, a majority of its board of directors is not selected by a governmental unit. The terms "United States," "state" and "international organizations" shall have the meanings set forth in Section 7701 of the Code.

"Distribution Account": The segregated trust account or accounts created and maintained by the Trustee pursuant to Section 3.10(b) which shall be entitled "Distribution Account, Wells Fargo Bank, N.A., as Trustee, in trust for the registered Certificateholders of Option One Mortgage Loan Trust 2006-2, Asset-Backed Certificates, Series 2006-2" and which must be an Eligible Account.

"Distribution Date": The 25th day of any calendar month, or if such 25th day is not a Business Day, the Business Day immediately following such 25th day, commencing in July 2006.

"Due Date": With respect to each Mortgage Loan and any Distribution Date, the first day of the calendar month in which such Distribution Date occurs on which the Monthly Payment for such Mortgage Loan was due (or, in the case of any Mortgage Loan under the terms of which the Monthly Payment for such Mortgage Loan was due on a day other than the first day of the calendar month in which such Distribution Date occurs, the day during the related Due Period on which such Monthly Payment was due), exclusive of any days of grace.

"Due Period": With respect to any Distribution Date, the period commencing on the second day of the month preceding the month in which such Distribution Date occurs and ending on the first day of the month in which such Distribution Date occurs.

22

"Eligible Account": Any of (i) an account or accounts maintained with a federal or state chartered depository institution or trust company the short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the short-term unsecured debt obligations of such holding company) are rated P-1 by Moody's, F-1 by Fitch and A-1+ by S&P (or comparable ratings if Moody's, Fitch and S&P are not the Rating Agencies) at the time any amounts are held on deposit therein, (ii) an account or accounts the deposits in which are fully insured by the FDIC (to the limits established by such corporation), the uninsured deposits in which account are otherwise secured such that, as evidenced by an Opinion of Counsel delivered to the NIMS Insurer, the Trustee and to each Rating Agency, the Certificateholders will have a claim with respect to the funds in such account or a perfected first priority security interest against such collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, (iii) a trust account or accounts maintained with the trust department of a federal or state chartered depository institution, national banking association or trust company acting in its fiduciary capacity or (iv) an account otherwise acceptable to each Rating Agency without reduction or withdrawal of their then current ratings of the Certificates as evidenced by a letter from each Rating Agency to the Trustee and the NIMS Insurer.  Eligible Accounts may bear interest.

"ERISA":  The Employee Retirement Income Security Act of 1974, as amended.

"Escrow Payments":  The amounts constituting ground rents, taxes, assessments, water rates, fire and hazard insurance premiums and other payments required to be escrowed by the Mortgagor with the mortgagee pursuant to any Mortgage Loan.

"Estate in Real Property":  A fee simple estate in a parcel of real property.

"Excess Overcollateralized Amount": With respect to the Class A Certificates and the Mezzanine Certificates and any Distribution Date, the excess, if any, of (i) the Overcollateralized Amount for such Distribution Date, assuming that 100% of the Principal Remittance Amount is applied as a principal payment on such Distribution Date over (ii) the Overcollateralization Target Amount for such Distribution Date.

"Exchange Act":  The Securities Exchange Act of 1934, as amended.

"Extra Principal Distribution Amount": With respect to any Distribution Date, the lesser of  (x) the Monthly Interest Distributable Amount payable on the Class C Certificates on such Distribution Date as reduced by Realized Losses allocated thereto with respect to such Distribution Date pursuant to Section 4.08 and (y) the Overcollateralization Deficiency Amount for such Distribution Date.

"Fannie Mae":  Federal National Mortgage Association or any successor thereto.

"FDIC":  Federal Deposit Insurance Corporation or any successor thereto.

"Final Recovery Determination":  With respect to any defaulted Mortgage Loan or any REO Property (other than a Mortgage Loan or REO Property purchased by the Originator

or the Master Servicer pursuant to or as contemplated by Section 2.03 or 10.01), a determination made by the Master Servicer that all Insurance Proceeds, Liquidation Proceeds and other payments or recoveries which the Master Servicer, in its reasonable good faith judgment, expects to be finally recoverable in respect thereof have been so recovered.  The Master Servicer shall maintain records, prepared by a Servicing Officer, of each Final Recovery Determination made thereby.

"Fitch": Fitch Ratings, or its successor in interest.

"Fixed-Rate Mortgage Loan":  A first or second lien Mortgage Loan which provides for a fixed Mortgage Rate payable with respect thereto.  The Fixed-Rate Mortgage Loans are identified as such on the Mortgage Loan Schedule.

"Fixed Swap Payment":  With respect to any Distribution Date, the amount calculated based on a fixed rate as set forth in the Interest Rate Swap Agreement.

"Floating Swap Payment":  With respect to any Distribution Date, a floating amount equal to the product of (i) Swap LIBOR, (ii) the related Notional Amount (as defined in the Interest Rate Swap Agreement) and (iii) a fraction, the numerator of which is the actual number of days elapsed from and including the previous Floating Rate Payer Period End Date (as defined in the Interest Rate Swap Agreement) to but excluding the current Floating Rate Payer Period End Date (or, for the first Distribution Date, the actual number of days elapsed from the Closing Date to but excluding the first Floating Rate Payer Period End Date), and the denominator of which is 360.

"Form 8-K Disclosure Information":  As defined in Section 3.25(a)(ii).

"Formula Rate":  For any Distribution Date and any Class of the Class A Certificates and the Mezzanine Certificates, the lesser of (i) LIBOR plus the related Certificate Margin and (ii) the applicable Maximum Cap Rate.

"Freddie Mac":  The Federal Home Loan Mortgage Corporation, or any successor thereto.

"Gross Margin":  With respect to each Adjustable-Rate Mortgage Loan, the fixed percentage set forth in the related Mortgage Note that is added to the Index on each Adjustment Date in accordance with the terms of the related Mortgage Note used to determine the Mortgage Rate for such Mortgage Loan.

"Group I Allocation Percentage":  With respect to any Distribution Date, the percentage equivalent of a fraction, the numerator of which is (i) the Group I Principal Remittance Amount for such Distribution Date, and the denominator of which is (ii) the Principal Remittance Amount for such Distribution Date.

"Group I Basic Principal Distribution Amount":  With respect to any Distribution Date, the excess of (i) the Group I Principal Remittance Amount for such Distribution Date over (ii) the Overcollateralization Release Amount, if any, for such Distribution Date multiplied by the Group I Allocation Percentage.

"Group I Certificates": The Class I-A-1 Certificates.

"Group I Interest Remittance Amount": With respect to any Distribution Date, that portion of the Available Funds for such Distribution Date attributable to interest received or advanced with respect to the Group I Mortgage Loans minus a *pro rata* portion (based on the Certificate Principal Balance of the Group I Certificates divided by the aggregate Certificate Principal Balance of the Class A Certificates) of the sum of any Net Swap Payment owed to the Swap Provider on that Distribution Date and any Swap Termination Payment or unpaid portion thereof owed to the Swap Provider on that Distribution Date (other than a Swap Termination Payment resulting from a Swap Provider Trigger Event).

"Group I Mortgage Loan": A Mortgage Loan assigned to Loan Group I. The aggregate principal balance of the Group I Mortgage Loans as of the Cut-off Date is equal to $126,517,437.00.

"Group I Overcollateralization Floor": With respect to the Group I Certificates, $635,236.14.

"Group I Principal Distribution Amount": With respect to any Distribution Date, the sum of (i) the Group I Basic Principal Distribution Amount for such Distribution Date and (ii) the Extra Principal Distribution Amount for such Distribution Date multiplied by the Group I Allocation Percentage.

"Group I Principal Remittance Amount": With respect to any Distribution Date, the sum of (i) each scheduled payment of principal collected or advanced on the Group I Mortgage Loans by the Master Servicer that were due during the related Due Period, (ii) the principal portion of all partial and full principal prepayments of the Group I Mortgage Loans received by the Master Servicer during the related Prepayment Period, (iii) the principal portion of all related Net Liquidation Proceeds, Subsequent Recoveries and Insurance Proceeds received during such Prepayment Period with respect to the Group I Mortgage Loans, (iv) that portion of the Purchase Price, representing principal of any repurchased Group I Mortgage Loan, deposited to the Collection Account during such Prepayment Period, (v) the principal portion of any related Substitution Adjustments deposited in the Collection Account during such Prepayment Period with respect to the Group I Mortgage Loans and (vi) on the Distribution Date on which the Trust Fund is to be terminated pursuant to Section 10.01, that portion of the Termination Price, in respect of principal on the Group I Mortgage Loans.

"Group I Senior Principal Distribution Amount": An amount, not less than zero, equal to the excess of (x) the aggregate Certificate Principal Balance of the Group I Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 59.20% and (ii) the aggregate Stated Principal Balance of the Group I Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Group I Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Group I Overcollateralization Floor.

"Group II Allocation Percentage":  With respect to any Distribution Date, the percentage equivalent of a fraction, the numerator of which is (i) the Group II Principal Remittance Amount for such Distribution Date, and the denominator of which is (ii) the Principal Remittance Amount for such Distribution Date.

"Group II Basic Principal Distribution Amount":  With respect to any Distribution Date, the excess of (i) the Group II Principal Remittance Amount for such Distribution Date over (ii) the Overcollateralization Release Amount, if any, for such Distribution Date multiplied by the Group II Allocation Percentage.

"Group II Certificates":  The Class II-A-1 Certificates, Class II-A-2 Certificates, the Class II-A-3 Certificates and the Class II-A-4 Certificates.

"Group II Interest Remittance Amount": With respect to any Distribution Date, that portion of the Available Funds for such Distribution Date attributable to interest received or advanced with respect to the Group II Mortgage Loans minus a pro rata portion (based on the aggregate Certificate Principal Balance of the Group II Certificates divided by the aggregate Certificate Principal Balance of the Class A Certificates) of the sum of any Net Swap Payment owed to the Swap Provider on that Distribution Date and any Swap Termination Payment or unpaid portion thereof owed to the Swap Provider on that Distribution Date (other than a Swap Termination Payment resulting from a Swap Provider Trigger Event).

"Group II Mortgage Loan":  A Mortgage Loan assigned to Loan Group II.  The aggregate principal balance of the Group II Mortgage Loans as of the Cut-off Date is equal to $1,373,481,538.82.

"Group II Overcollateralization Floor":  With respect to the Group II Certificates, $6,864,763.86.

"Group II Principal Distribution Amount":  With respect to any Distribution Date, the sum of (i) the Group II Basic Principal Distribution Amount for such Distribution Date and (ii) the Extra Principal Distribution Amount for such Distribution Date multiplied by the Group II Allocation Percentage.

"Group II Principal Remittance Amount": With respect to any Distribution Date, the sum of (i) each scheduled payment of principal collected or advanced on the Group II Mortgage Loans by the Master Servicer that were due during the related Due Period, (ii) the principal portion of all partial and full principal prepayments of the Group II Mortgage Loans received by the Master Servicer during the related Prepayment Period, (iii) the principal portion of all related Net Liquidation Proceeds, Subsequent Recoveries and Insurance Proceeds received during such Prepayment Period with respect to the Group II Mortgage Loans, (iv) that portion of the Purchase Price, representing principal of any repurchased Group II Mortgage Loan, deposited to the Collection Account during such Prepayment Period, (v) the principal portion of any related Substitution Adjustments deposited in the Collection Account during such Prepayment Period with respect to the Group II Mortgage Loans and (vi) on the Distribution Date on which the Trust Fund is to be terminated pursuant to Section 10.01, that portion of the Termination Price, in respect of principal on the Group II Mortgage Loans.

"Group II Senior Principal Distribution Amount": An amount, not less than zero, equal to the excess of (x) the Certificate Principal Balance of the Group II Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 59.20% and (ii) the aggregate Stated Principal Balance of the Group II Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the positive difference, if any, of the aggregate Stated Principal Balance of the Group II Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Group II Overcollateralization Floor.

"Highest Priority":  As of any date of determination, the Class of Mezzanine Certificates then outstanding with a Certificate Principal Balance greater than zero, with the highest priority for payments pursuant to Section 4.01, in the following order: Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8, Class M-9 and Class M-10 Certificates.

"Holder":  See "Certificateholder."

"Independent":  When used with respect to any specified Person, any such Person who (a) is in fact independent of the Depositor, the Master Servicer and their respective Affiliates, (b) does not have any direct financial interest in or any material indirect financial interest in the Depositor or the Master Servicer or any Affiliate thereof, and (c) is not connected with the Depositor or the Master Servicer or any Affiliate thereof as an officer, employee, promoter, underwriter, trustee, partner, director or Person performing similar functions; provided, however, that a Person shall not fail to be Independent of the Depositor or the Master Servicer or any Affiliate thereof merely because such Person is the beneficial owner of 1% or less of any class of securities issued by the Depositor or the Master Servicer or any Affiliate thereof, as the case may be.

"Independent Contractor":  Either (i) any Person (other than the Master Servicer) that would be an "independent contractor" with respect to any of the REMICs created hereunder within the meaning of Section 856(d)(3) of the Code if such REMIC were a real estate investment trust (except that the ownership tests set forth in that section shall be considered to be met by any Person that owns, directly or indirectly, 35% or more of any Class of Certificates), so long as each such REMIC does not receive or derive any income from such Person and provided that the relationship between such Person and such REMIC is at arm's length, all within the meaning of Treasury Regulation Section 1.856-4(b)(5), or (ii) any other Person (including the Master Servicer) if the Trustee has received an Opinion of Counsel to the effect that the taking of any action in respect of any REO Property by such Person, subject to any conditions therein specified, that is otherwise herein contemplated to be taken by an Independent Contractor will not cause such REO Property to cease to qualify as "foreclosure property" within the meaning of Section 860G(a)(8) of the Code (determined without regard to the exception applicable for purposes of Section 860D(a) of the Code), or cause any income realized in respect of such REO Property to fail to qualify as Rents from Real Property.

27

"Indenture": An indenture relating to the issuance of notes secured by the Class C Certificates, the Class P Certificates and/or Residual Certificates (or any portion thereof) which may or may not be guaranteed by the NIMS Insurer.

"Index":  With respect to each Adjustable-Rate Mortgage Loan and with respect to each related Adjustment Date, the index as specified in the related Mortgage Note.

"Initial Certificate Principal Balance":  With respect to any Regular Certificate, the amount designated "Initial Certificate Principal Balance" on the face thereof.

"Insurance Proceeds":  Proceeds of any title policy, hazard policy or other insurance policy covering a Mortgage Loan (including the Pool Policy), to the extent such proceeds are received by the Master Servicer and are not to be applied to the restoration of the related Mortgaged Property or released to the Mortgagor in accordance with the procedures that the Master Servicer would follow in servicing mortgage loans held for its own account, subject to the terms and conditions of the related Mortgage Note and Mortgage.

"Interest Determination Date":  With respect to the Class A Certificates and the Mezzanine Certificates and each related Accrual Period, the second LIBOR Business Day preceding the commencement of such Accrual Period.

"Interest Rate Swap Agreement":   The 1992 ISDA Master Agreement (Multicurrency-Cross Border) dated as of June 29, 2006 (together with the schedule thereto, the Master Agreement)  between the Swap Provider and the Trustee (in its capacity as Supplemental Interest Trust Trustee) and a confirmation of the same date, which supplements and forms part of the Master Agreement.

"Late Collections":  With respect to any Mortgage Loan, all amounts received subsequent to the Determination Date immediately following any related Due Period, whether as late payments of Monthly Payments or as Insurance Proceeds, Liquidation Proceeds, Subsequent Recoveries or otherwise, which represent late payments or collections of principal and/or interest due (without regard to any acceleration of payments under the related Mortgage and Mortgage Note) but delinquent on a contractual basis for such Due Period and not previously recovered.

"LIBOR":  With respect to each Accrual Period for the Class A Certificates and the Mezzanine Certificates, the rate determined by the Trustee on the related Interest Determination Date on the basis of the London interbank offered rate for one-month United States dollar deposits, as such rate appears on the Telerate Page 3750, as of 11:00 a.m. (London time) on such Interest Determination Date.  If such rate does not appear on Telerate Page 3750, the rate for such Interest Determination Date will be determined on the basis of the offered rates of the Reference Banks for one-month United States dollar deposits, as of 11:00 a.m. (London time) on such Interest Determination Date. The Trustee will request the principal London office of each of the Reference Banks to provide a quotation of its rate. On such Interest Determination Date, LIBOR for the related Accrual Period for the Class A Certificates and the Mezzanine Certificates will be established by the Trustee as follows:

(i)     If on such Interest Determination Date two or more Reference Banks provide such offered quotations, LIBOR for the related Accrual Period shall be the

arithmetic mean of such offered quotations (rounded upwards if necessary to the nearest whole multiple of 1/16 of 1%); and

(ii)    If on such Interest Determination Date fewer than two Reference Banks provide such offered quotations, LIBOR for the related Accrual Period shall be the higher of (i) LIBOR as determined on the previous Interest Determination Date and (ii) the Reserve Interest Rate.

Notwithstanding the foregoing, LIBOR for the Class A and Mezzanine Certificates for the first Accrual Period will be 5.3500%.

"LIBOR Business Day":  Any day on which banks in London, England and The City of New York are open and conducting transactions in foreign currency and exchange.

"Liquidated Mortgage Loan":  As to any Distribution Date, any Mortgage Loan in respect of which the Master Servicer has determined, in accordance with the servicing procedures specified herein, as of the end of the related Prepayment Period, that all Liquidation Proceeds which it expects to recover with respect to the liquidation of the Mortgage Loan or disposition of the related REO Property have been recovered.

"Liquidation Event":  With respect to any Mortgage Loan, any of the following events: (i) such Mortgage Loan is paid in full, (ii) a Final Recovery Determination is made as to such Mortgage Loan or (iii) such Mortgage Loan is removed from the Trust Fund by reason of its being purchased, sold or replaced pursuant to or as contemplated by Section 2.03 or Section 10.01.  With respect to any REO Property, either of the following events: (i) a Final Recovery Determination is made as to such REO Property or (ii) such REO Property is removed from the Trust Fund by reason of its being sold or purchased pursuant to Section 3.23 or Section 10.01.

"Liquidation Proceeds":  The amount (other than amounts received in respect of the rental of any REO Property prior to REO Disposition) received by the Master Servicer in connection with (i) the taking of all or a part of a Mortgaged Property by exercise of the power of eminent domain or condemnation, (ii) the liquidation of a defaulted Mortgage Loan by means of a trustee's sale, foreclosure sale or otherwise or (iii) the repurchase, substitution or sale of a Mortgage Loan or an REO Property pursuant to or as contemplated by Section 2.03, Section 3.23 or Section 10.01.

"Loan-to-Value Ratio":  As of any date and as to any Mortgage Loan, the fraction, expressed as a percentage, the numerator of which is the Principal Balance of the Mortgage Loan (and, with respect to any second lien Mortgage Loan, the Principal Balance of the related first lien Mortgage Loan plus the Principal Balance of such second lien Mortgage Loan), and the denominator of which is the Value of the related Mortgaged Property.

"Loan Group":  Either Loan Group I or Loan Group II, as the context requires.

"Loan Group I":  The group of Mortgage Loans identified in the Mortgage Loan Schedule as having been assigned to Loan Group I.

"Loan Group II":  The group of Mortgage Loans identified in the Mortgage Loan Schedule as having been assigned to Loan Group II.

"Losses":  As defined in Section 9.03.

"Loss Mitigation Procedures": The policies and procedures set forth in Exhibit G hereto relating to the realization on delinquent Mortgage Loans.

"Lost Note Affidavit":  With respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost, misplaced or destroyed and has not been replaced, an affidavit from the Originator certifying that the original Mortgage Note has been lost, misplaced or destroyed (together with a copy of the related Mortgage Note) and indemnifying the Trust against any loss, cost or liability resulting from the failure to deliver the original Mortgage Note in the form of Exhibit H hereto.

"Majority Certificateholders":  The Holders of Certificates evidencing at least 51% of the Voting Rights.

"Marker Rate":  With respect to the Class C Interest and any Distribution Date, a per annum rate equal to two (2) times the weighted average of the Uncertificated REMIC 1 Pass-Through Rates for REMIC 2 Regular Interest LTIA1, REMIC 2 Regular Interest LTIIA1, REMIC 2 Regular Interest LTIIA2, REMIC 2 Regular Interest LTIIA3, REMIC 2 Regular Interest LTIIA4, REMIC 2 Regular Interest LTM1, REMIC 2 Regular Interest LTM2, REMIC 2 Regular Interest LTM3, REMIC 2 Regular Interest LTM4, REMIC 2 Regular Interest LTM5, REMIC 2 Regular Interest LTM6, REMIC 2 Regular Interest LTM7, REMIC 2 Regular Interest LTM8, REMIC 2 Regular Interest LTM9, REMIC 2 Regular Interest LTM10, and REMIC 2 Regular Interest LTZZ, with the rates on such REMIC 2 Regular Interests (other than REMIC 2 Regular Interest LTZZ) subject to a cap equal to lesser of (i) LIBOR plus the related Certificate Margin and (ii) the Net WAC Rate for the purpose of this calculation; and with the rate on REMIC 2 Regular Interest LTZZ subject to a cap of zero for the purpose of this calculation; provided, however, that for this purpose, calculations of the Uncertificated REMIC 2 Pass-Through Rate and the related caps with respect to each such REMIC 2 Regular Interest shall be multiplied by a fraction, the numerator of which is the actual number of days in the Accrual Period and the denominator of which is 30.

"Master Servicer": Option One Mortgage Corporation, a California corporation, or any successor servicer appointed as herein provided, in its capacity as Master Servicer hereunder.

"Master Servicer Affiliate":  A Person (i) controlling, controlled by or under common control with the Master Servicer or which is 50% or more owned by the Master Servicer and (ii) which is qualified to service residential mortgage loans.

"Master Servicer Event of Termination":  One or more of the events described in Section 7.01.

"Master Servicer Optional Purchase Delinquency Trigger": A Master Servicer Optional Purchase Delinquency Trigger has occurred with respect to a Distribution Date if the Delinquency Percentage exceeds 35.00% of the Senior Credit Enhancement Percentage.

"Master Servicer Prepayment Charge Payment Amount": The amounts payable by the Master Servicer in respect of any Prepayment Charges pursuant to Section 2.05 or Section 3.01.

"Master Servicer Remittance Date":  With respect to any Distribution Date, the Business Day prior to such Distribution Date.

"Maximum Cap Rate":  For any Distribution Date, a per annum rate equal to the sum of (i) the product of (x) the weighted average of the Adjusted Net Maximum Mortgage Rates of the Mortgage Loans and (y) a fraction, the numerator of which is 30 and the denominator of which is the actual number of days elapsed in the related Accrual Period and (ii) an amount, expressed as a percentage, equal to a fraction, the numerator of which is equal to the Net Swap Payment made by the Swap Provider and the denominator of which is equal to the aggregate Stated Principal Balance of the Mortgage Loans, multiplied by 12 minus (a) an amount, expressed as a percentage, equal to the product of (i) the Net Swap Payment, if any, paid by the Trust for such Distribution Date divided by the aggregate Stated Principal Balance of the Mortgage Loans and (ii) 12 and (b) an amount, expressed as a percentage, equal to the product of (x) the Swap Termination Payment, if any, due from the Trust (other than any Swap Termination Payment resulting from a Swap Provider Trigger Event) for such Distribution Date divided by the aggregate Stated Principal Balance of the Mortgage Loans and (y) 12.

"Maximum LTZZ Uncertificated Accrued Interest Deferral Amount": With respect to any Distribution Date, the excess of (i) accrued interest at the Uncertificated REMIC 1 Pass-Through Rate applicable to REMIC 1 Regular Interest LTZZ for such Distribution Date on a balance equal to the Uncertificated Principal Balance of REMIC 1 Regular Interest LTZZ minus the REMIC 2 Overcollateralization Amount, in each case for such Distribution Date, over (ii) Uncertificated Interest on REMIC 2 Regular Interest LTIIA1, REMIC 2 Regular Interest LTIIA1, REMIC 2 Regular Interest LTIIA2, REMIC 2 Regular Interest LTIIA3, REMIC 2 Regular Interest LTIIA4, REMIC 2 Regular Interest LTM1, REMIC 2 Regular Interest LTM2, REMIC 2 Regular Interest LTM3, REMIC 2 Regular Interest LTM4, REMIC 2 Regular Interest LTM5, REMIC 2 Regular Interest LTM6, REMIC 2 Regular Interest LTM7, REMIC 2 Regular Interest LTM8, REMIC 2 Regular Interest LTM9 and REMIC 2 Regular Interest LTM10 for such Distribution Date, with the rate on each such REMIC 1 Regular Interest subject to a cap equal to the lesser of (i) LIBOR plus the related Certificate Margin and (ii) the related Net WAC Rate provided, however, that solely for this purpose, calculations of the Uncertificated REMIC 1 Pass-Through Rate and the related caps with respect to each such REMIC 1 Regular Interest shall be multiplied by a fraction, the numerator of which is the actual number of days in the Accrual Period and the denominator of which is 30.

"Maximum Mortgage Rate":  With respect to each Adjustable-Rate Mortgage Loan, the percentage set forth in the related Mortgage Note as the maximum Mortgage Rate thereunder.

"Mezzanine Certificate": Any Class M-1 Certificates, Class M-2 Certificates, Class M-3 Certificates, Class M-4 Certificates, Class M-5 Certificates, Class M-6 Certificates, Class M-7 Certificates, Class M-8 Certificates, Class M-9 Certificates or Class M-10 Certificates.

"Minimum Mortgage Rate": With respect to each Adjustable-Rate Mortgage Loan, the percentage set forth in the related Mortgage Note as the minimum Mortgage Rate thereunder.

"Monthly Interest Distributable Amount":   With respect to the Class A Certificates, the Mezzanine Certificates, the Class C Certificates and any Distribution Date the amount of interest accrued during the related Accrual Period at the related Pass-Through Rate on the Certificate Principal Balance (or Notional Amount in the case of the Class C Certificates) of such Class immediately prior to such Distribution Date, reduced by any Net Prepayment Interest Shortfalls and Relief Act Interest Shortfalls as allocated to such Certificate as provided in Section 1.03 and based on its respective entitlements to interest irrespective of any Net Prepayment Interest Shortfalls and Relief Act Interest Shortfalls for such Distribution Date).

"Monthly Payment":  With respect to any Mortgage Loan, the scheduled monthly payment of principal and interest on such Mortgage Loan which is payable by the related Mortgagor from time to time under the related Mortgage Note, determined: (a) after giving effect to (i) any Deficient Valuation and/or Debt Service Reduction with respect to such Mortgage Loan and (ii) any reduction in the amount of interest collectible from the related Mortgagor pursuant to the Relief Act; (b) without giving effect to any extension granted or agreed to by the Master Servicer pursuant to Section 3.01; and (c) on the assumption that all other amounts, if any, due under such Mortgage Loan are paid when due.

"Monthly Statement":  As defined in Section 4.03(a) hereof.

"Moody's":  Moody's Investors Service, Inc. or its successor in interest.

"Mortgage":  The mortgage, deed of trust or other instrument creating a first lien or second lien on, or first or second priority security interest in, a Mortgaged Property securing a Mortgage Note.

"Mortgage File":  The mortgage documents listed in Section 2.01 pertaining to a particular Mortgage Loan and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

"Mortgage Loan":  Each mortgage loan transferred and assigned to the Trustee pursuant to Section 2.01, Section 2.03(d) or Section 2.08 as from time to time held as a part of the Trust Fund, the Mortgage Loans so held being identified in the Mortgage Loan Schedule.

"Mortgage Loan Purchase Agreement":  The agreement among the Originator, the Sellers and the Depositor, regarding the transfer of the Mortgage Loans by the Sellers to or at the direction of the Depositor, substantially in the form attached hereto as Exhibit C.

32