**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/12/2018

------------------------------ X
HOMEWARD RESIDENTIAL, INC., :
solely in its capacity as :
Master Servicer for the Option :
One Mortgage Loan Trust :
2006-2, for the benefit of the :
Trustee and the holders of :
Option One Mortgage Loan Trust :
2006-2 Certificates, :
  :
    Plaintiff, :
  :
 -against- :
  :
SAND CANYON CORPORATION, :
f/k/a Option One Mortgage :
Corporation, :
  :
    Defendant. : No. 12 Civ. 5067 (JFK)
------------------------------ : No. 12 Civ. 7319 (JFK)
HOMEWARD RESIDENTIAL, INC., : **OPINION & ORDER**
solely in its capacity as :
Master Servicer for the Option :
One Mortgage Loan Trust :
2006-3, for the benefit of the :
Trustee and the holders of :
Option One Mortgage Loan Trust :
2006-3 Certificates, :
  :
    Plaintiff, :
  :
 -against- :
  :
SAND CANYON CORPORATION, :
f/k/a Option One Mortgage :
Corporation, :
  :
    Defendant. :
------------------------------ X

APPEARANCES

FOR PROPOSED INTERVENORS LBF INTERNATIONAL I, LLC,
LBF INTERNATIONAL II, LLC, and BDC CREDIT, LLC
 David H. Wollmuth
 Lyndon M. Tretter

1

```
     Michael C. Ledley
     Ryan A. Kane
     John D. Giampolo
     WOLLMUTH MAHER & DEUTSCH LLP

FOR DEFENDANT SAND CANYON CORPORATION
     Michael L. Calhoon
     Richard P. Sobiecki
     Vernon Cassin
     Douglas W. Henkin
     Brian C. Kerr
     BAKER BOTTS L.L.P.

     James K. Goldfarb
     Daniel T. Brown
     MURPHY & McGONIGLE, P.C.
```

**JOHN F. KEENAN, United States District Judge:**

Before the Court are motions by LBF International I, LLC, LBF International II, LLC, and BDC Credit, LLC (collectively, the "Movants") to intervene in two pending actions. In the actions in question, Plaintiff Homeward Residential, Inc. ("Homeward") contends that Defendant Sand Canyon Corporation ("Sand Canyon") breached representations and warranties made in connection with transactions that involve the transfer of thousands of mortgage loans to a pair of residential mortgage-backed securities ("RMBS") trusts. Movants seek intervention as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) ("Rule 24(a)") or, in the alternative, permissive intervention under Federal Rule of Civil Procedure 24(b) ("Rule 24(b)"). Sand Canyon opposes the motions. For the reasons stated below, the Court denies Movants' requests to intervene.

## I. Background

Familiarity with this Court's prior opinions and orders, and the general structure of RMBS transactions, is presumed. The Court summarizes the factual background that is relevant to the instant motions below. The Court also reviews relevant allegations that Movants assert in their proposed complaints-in-intervention.

### A. The Pending Actions

As master servicer for the two RMBS trusts implicated here, Homeward has commenced two actions, each related to a separate trust. The first action, docketed as Case No. 12 Civ. 5067, arises from Sand Canyon's alleged breaches of representations and warranties made in the governing agreements related to the Option One Mortgage Loan Trust 2006-2 (the "2006-2 Action"). According to Homeward, the trust and its certificateholders suffered injury due to high rates of loan default and foreclosure, and Sand Canyon refused to cure or repurchase many allegedly breaching loans.

Homeward originally filed the 2006-2 Action in the Supreme Court of the State of New York, New York County on May 31, 2012. Sand Canyon subsequently removed the 2006-2 Action to this Court. (Notice of Removal, ECF No. 1 (filed June 28, 2012).) It became Case No. 12 Civ. 5067. In July 2013, Homeward filed an amended complaint. (Am. Compl., ECF No. 24 (filed July 19,

2013).). This Court and Judge Torres—who initially presided over both of the actions in which Movants seek to intervene—have decided various motions related to the 2006-2 Action, including a motion to dismiss the amended complaint, a motion for reconsideration, and a motion regarding the admissibility of statistical sampling testimony. Fact discovery in the 2006-2 Action closed on November 1, 2017. (See Fifth Amended Civil Case Management Plan and Scheduling Order, ECF No. 209 (filed Apr. 21, 2017).)

The second action concerns similar allegations of Sand Canyon's breaches of representations and warranties made in the governing agreements related to another RMBS trust, the Option One Mortgage Loan Trust 2006-3 (the "2006-3 Action," and, together with the 2006-2 Action, the "Actions"). Homeward commenced the 2006-3 Action on September 28, 2012, and filed the first amended complaint on August 2, 2013. This action is docketed as Case No. 12 Civ. 7319. On September 30, 2016, Judge Torres granted Homeward leave to file a second amended complaint ("SAC"), which Homeward did on October 6, 2016. (Order, ECF No. 124 (filed Sept. 30, 2016); Second Am. Compl., ECF No. 126 (filed Oct. 6, 2016).) As relevant here, the SAC seeks to hold Sand Canyon accountable for an additional 649 loans that allegedly breached representations and warranties. (Second Am. Compl. ¶¶ 9-10.) This Court has decided various motions in

4

connection with the 2006-3 Action, including a motion to dismiss the SAC, a motion for reconsideration of Judge Torres' order permitting Homeward to file the SAC, and a motion to certify Judge Torres' order for interlocutory appeal under 28 U.S.C. § 1292(b). (Op. & Order, ECF No. 227 (filed Aug. 22, 2017); Op. & Order, ECF No. 259 (filed Jan. 24, 2018).) Fact discovery in the 2006-3 Action also closed on November 1, 2017. (Fifth Amended Civil Case Management Plan and Scheduling Order, ECF No. 185 (filed Apr. 21, 2017).)

**B. Movants and the Proposed Complaints-in-Intervention**

Movants sought to intervene in the Actions by motions dated December 21, 2016. (Mot. to Intervene, Case No. 12 Civ. 5067, ECF No. 190 (filed Feb. 13, 2017); Mot. to Intervene, Case No. 12 Civ. 7319, ECF No. 167 (filed Feb. 13, 2017).) Movants also filed a proposed complaint-in-intervention in each of the Actions, which would join Movants as plaintiffs and add a cause of action for declaratory judgment against a new defendant, H&R Block, Inc. ("Block"), on a corporate veil-piercing theory. (See Decl. of Lyndon M. Tretter, Case No. 12 Civ. 5067, ECF No. 192 Ex. A (filed Feb. 13, 2017) [the "2006-2 Action Proposed Complaint"]; Decl. of Lyndon M. Tretter, Case No. 12 Civ. 7319, ECF No. 169 Ex. B (filed Feb. 13, 2017) [the "2006-3 Action Proposed Complaint"].)

Movants were "until recently" beneficial holders of a minority interest of the voting rights in each trust.[1] (2006-2 Action Proposed Complaint ¶ 21; 2006-3 Action Proposed Complaint ¶ 19.) In October 2016, Movants contributed their certificates to a separate trust vehicle, which then gave Movants a power of attorney to pursue claims related to the certificates. (Id.) Movants' assert that they "represent certificateholders whose interests are related to . . . the 'Group II' loans" in each of the trusts. (Movants' Mem. at 13, Case No. 12 Civ. 5067, ECF No. 191 (filed Feb. 13, 2017).) Movants suggest that the rights associated with "Group II" loans differ from those of "Group I" loans. (Id. at 13 n.12.)

Block purchased Sand Canyon's predecessor, Option One Mortgage Corporation, in 1998. Movants argue that Block dominated and controlled Sand Canyon, and that it is liable for Sand Canyon's obligations (if any) in these Actions. (2006-2 Action Proposed Complaint ¶¶ 107-114; 2006-3 Action Proposed Complaint ¶¶ 84-91.) In support, Movants rely on a complaint filed by the Massachusetts Attorney General in 2008 as well as a complaint filed by the Securities and Exchange Commission ("SEC") in 2012 in other litigation. (See 2006-2 Action Proposed

---

[1] LBF International I, LLC and LBF International II, LLC seek to intervene in both Actions, whereas BDC Credit, LLC seeks to intervene in the 2006-3 Action only. (Movants' Mem. at 1, Case No. 12 Civ. 5067, ECF No. 191 (filed Feb. 13, 2017).)

6

Complaint ¶¶ 78-79; 2006-3 Action Proposed Complaint ¶¶ 72-73; see also Movants' Mem. at 7-8.) Additionally, in their briefs, Movants emphasize a May 2016 proceeding in Minnesota state court (the "Minnesota Proceeding") in which "an entity known as the 'Separate Trustee' for the 2006-3 Trust filed [a] Petition . . . for court approval of a proposed $1 million settlement with Sand Canyon relating to many 'Group 1' loans over which Homeward has been litigating in this Court." (Movants' Mem. at 16.) Movants contend that the "paucity" of a $1 million settlement "compared to Sand Canyon's potential exposure" there illustrates "the threat to Group 2 certificateholders" here. (Id.) Although Movants are "concerned" about "what they consider to be the extremely low settlement under review in Minnesota courts relating to Group 1 loans in the 2006-3 Trust," Movants admit that they "are not directly affected by" the Minnesota Proceeding. (Id. at 5-6.)

The Court heard oral argument on the motions on August 10, 2017.

## II. Applicable Law

### A. Rule 24(a)

A movant seeking to intervene in an action pursuant to Rule 24(a) must show that: "(1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject matter of the action; (3) the

7

protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party." St. John's Univ., N.Y. v. Bolton, 450 F. App'x 81, 83 (2d Cir. 2011) (quoting Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir. 1984)). "Failure to satisfy any one of these [four] requirements is a sufficient ground to deny the application." R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 241 (2d Cir. 2006) (emphasis and alteration in original) (internal quotation marks omitted).

### B. Rule 24(b)

Under Rule 24(b), a court may allow intervention if the movant makes a timely application and "has a claim or defense that shares with the main action a common question of law or fact." Whether to permit intervention under Rule 24(b) is "wholly discretionary with the trial court" and the trial court's discretion is "very broad[.]" United States Postal Serv. v. Brennan, 579 F.2d 188, 191-92 (2d Cir. 1978). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Other relevant factors include: (1) the nature and extent of the movant's interests; (2) whether the existing parties adequately represent those interests; and (3) whether allowing intervention would

significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. See Tymoshenko v. Firtash, No. 11 Civ. 2794(RJS), 2011 WL 5059180, at *3 (S.D.N.Y. Oct. 19, 2011) (quoting United States Postal Serv., 579 F.2d at 191-92).

### III. Discussion

#### A. Intervention in the 2006-2 Action

With respect to the 2006-2 Action, the Court denies the motion to intervene pursuant to Rule 24(a) as untimely. When determining whether a motion to intervene is timely, courts consider: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994). Here, the Court finds that Movants had notice of their interest in the 2006-2 Action for at least three years before making their motion to intervene.

"Among the most important factors in a timeliness decision is 'the length of time the applicant knew or should have known of his interest before making the motion.'" Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996) (quoting Farmland Dairies v.

9

Comm'r of N.Y. State Dep't of Agric. & Mkts., 847 F.2d 1038, 1044 (2d Cir. 1988)). "Numerous courts have found that . . . the initiation of a lawsuit where the complaint addresses the would-be intervenors' interests may trigger constructive notice." Floyd v. City of New York, 302 F.R.D. 69, 89 (S.D.N.Y. 2014); see also Kamdem-Ouaffo v. Pepsico, Inc., 314 F.R.D. 130, 134-35 (S.D.N.Y. 2016) (denying Rule 24(a) motion where lawsuit was brought in December 2013, giving would-be intervenor constructive notice, and would-be intervenor did not move to intervene until July 2015). Here, the original and amended complaints each contain allegations and seek relief that should have put Movants on notice of their interest in the 2006-2 Action. (See Notice of Removal Ex. A ¶ 89, ECF No. 1 (filed June 28, 2012) (seeking "damages sufficient to compensate the Trust and its Certificateholders for their losses" stemming from Sand Canyon's alleged breaches of representations and warranties and failure to repurchase breaching loans); see also Am. Compl. ¶ 91, ECF No. 24 (filed July 19, 2013) (same)). Movants do not claim otherwise. Thus, Movants had constructive notice of their interest by July 2013, when Homeward filed the amended complaint, at the latest.

Movants' extensive delay between having notice and seeking intervention—at a minimum, more than three years—exceeds the relevant period in various cases where a Rule 24 motion was

found to be untimely. See, e.g., Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 182-83 (2d Cir. 2001) (delay of nearly one year was untimely); Catanzano, 103 F.3d at 232-34 (delay of eighteen months was untimely). Even delays of less than one year may be untimely. See, e.g., MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 390-91 (2d Cir. 2006) (delay of three to five months was untimely); In re Holocaust Victim Assets Litig., 225 F.3d 191, 198-99 (2d Cir. 2000) (delay of eight months was untimely). The Court's conclusion that Movants' request to intervene is untimely therefore finds much support in case law.

Movants do not offer any persuasive reason for their delay in moving to intervene in the 2006-2 Action.[2] The complaints filed by the Massachusetts Attorney General and SEC, upon which Movants rely to support their veil-piercing claim, date back to 2012 or earlier. Furthermore, Movants cannot claim, as they try to do with respect to the 2006-3 Action, that recent activity by Homeward has had any effect on their interest here. (See Movants' Mem. at 13-14 ("Homeward's recent amendment to the

---

[2] Movants' argument that the Court should allow intervention in the 2006-2 Action because "the 2006-3 Movants' intervention Motion is undeniably timely and the 2006-2 Movants' motion and declaratory judgment claims are identical" clearly ignores the "timely motion" requirement of Rule 24(a). (Movants' Reply at 6, ECF No. 195 (filed Feb. 13, 2017); Tr. of Hr'g at 10-11, Case No. 12 Civ. 5067, ECF No. 255 (filed Aug. 24, 2017).)

11

2006-3 Complaint renders even more pressing the need . . . to establish vicarious liability against Block[.]").) Since Homeward filed the amended complaint in 2013, the only event that Movants identify as bearing on their interest in the 2006-2 Action is the Minnesota Proceeding, which, according to Movants, is noteworthy because it demonstrates the potential risk of an inadequate recovery. (Id. at 5-6.) Such a risk, however, does not transform Movants' stated interest in the underlying "loans sold by Sand Canyon to each Trust" or "the sale of each Trust's certificates based on representations and warranties as to the qualities of those loans," which Movants have possessed from the start. (See Movants' Reply at 3-4 (identifying property and transactions that are the subject matter of the 2006-2 Action and arguing that "Movants are advancing legally-protectable 'interests' for intervention purposes of Rule 24(a)(2).").) Additionally, to whatever extent the Minnesota Proceeding illustrates the risk of an inadequate recovery in the 2006-2 Action, Movants acknowledge that they have faced such a risk since the outset of this litigation.[3]

---

[3] Movants cite an article published in October 2010—well before the 2006-2 Action was commenced—reporting that "Sand Canyon had reserved only $188 million to cover its exposure in RMBS litigation[.]" (Movants' Mem. at 5 & n.5.)

12

The Court also observes that the 2006-2 Action was commenced in 2012 and fact discovery has closed. (See Fifth Amended Civil Case Management Plan Case Management Plan and Scheduling Order, ECF No. 209 (filed Apr. 21, 2017).)

Movants themselves argue that the applicable statute of limitations does not preclude the relief that they seek.[4] (Movants' Mem. at 14 n.13.) Movants remain free to file a separate action. See In re Holocaust Victim Assets Litig., 225 F.3d at 199 ("Because [the would-be intervenors] remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied."). Movants fail to satisfy the threshold requirement of timeliness and are not entitled to intervention as a matter of right under Rule 24(a).

Additionally, the Court declines to exercise its discretion to permit intervention under Rule 24(b) because, as explained above, the motion is untimely. See Catanzano, 103 F.3d at 234 ("A motion for permissive intervention, like one for intervention of right, must be timely.").

---

[4] There is some authority for Movants' position. See In re Holborn Oil Trading Ltd., 774 F. Supp. 840, 847 (S.D.N.Y. 1991) ("[A]n action to pierce the corporate veil is most closely analogous to an action to recover on a judgment, which bears a twenty year statute of limitations under New York law."); see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 295 F. Supp. 2d 366, 376-77 (S.D.N.Y. 2003).

13

**B. Intervention in the 2006-3 Action**

With respect to the 2006-3 Action, Movants claim that their motion is timely because Homeward filed the SAC, which "'put back' hundreds of defective Group II loans to Sand Canyon," in October 2016. (Movants' Mem. at 13-14; Tr. of Hr'g at 10.) According to Movants, the SAC motivated them to seek intervention in the 2006-3 Action because: (1) the addition of 649 loans "materially change[d]" Movants' interest in the 2006-3 Action, and (2) Movants did not have standing "to add hundreds of Group 2 loans to the 2006-3 Action before Homeward itself decided to do so." (Movants' Reply at 5.)

Despite Movants' claim that the SAC "materially change[d]" their interest in the 2006-3 Action, they evidently concede that, prior to amendment, at least several relevant loans were already at issue. (See Movants' Reply at 4-5 ("Movants did not have a sufficient interest in the 2006-3 Action on which they had standing to intervene until October 6, 2016 when Homeward succeeded in adding the 649 'Group 2' loans to its complaint, which previously involved fewer than 10 such loans.").) Movants offer no authority for the proposition that an <u>increased</u> interest in an action is tantamount to a <u>new</u> interest for the purpose of satisfying Rule 24's timeliness requirement.

In any event, "the Second Circuit has repeatedly explained that the date on which the proposed intervenor learns of his or

14

her <u>interest</u> in the litigation is of primary importance in the timeliness inquiry." <u>Hnot v. Willis Grp. Holdings Ltd.</u>, No. 01 Civ. 6558(GEL), 2006 WL 3476746, at *3 (S.D.N.Y. Nov. 30, 2006) (emphasis in original). As explained above, the commencement of an action "where the complaint addresses the would-be intervenors' interests may trigger constructive notice." <u>Floyd</u>, 302 F.R.D. at 89. Thus, it is appropriate to measure the timeliness of Movants' motion from the date they received notice of their interest in the 2006-3 Action. The first amended complaint—which, as Movants admit, involved several loans in which Movants have an interest—was filed in August 2013. From that time, more than three years passed before Movants attempted to intervene. As noted above, such an interval exceeds the relevant period in other cases where a Rule 24 motion was found to be untimely. <u>See, e.g.</u>, <u>Butler</u>, 250 F.3d at 182-83; <u>In re Holocaust Victim Assets Litig.</u>, 225 F.3d at 198-99.

Even assuming that Movants' motion with respect to the 2006-3 Action is timely, however, Movants do not satisfy the remaining criteria of Rule 24(a). Movants contend that, if the motion is denied, their interest may be impaired by disposition of the action. (Movants' Mem. at 16.) Movants' request differs from the usual case, though, in seeking to add not just themselves to the 2006-3 Action, but also a new defendant, i.e., Block. (<u>Id.</u>) Movants offer no authority for the proposition

15

that a putative intervenor's interest in a pending action may be impaired if another party (that is, other than the putative intervenor) is not also joined under a new theory of liability. (See Tr. of Hr'g at 5.) Such a notion appears to be at odds with statements by the Second Circuit regarding the proper function and scope of intervention. See Wash. Elec. Coop., Inc., v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990) (Rule 24(a) "is not intended to allow for the creation of whole new suits by intervenors"); see also New York News, Inc. v. Kheel, 972 F.2d 482, 486 (2d Cir. 1992) ("Intervention under Rule 24(a)(2) . . . cannot be used as a means to inject collateral issues into an existing action." (internal quotation marks omitted)).

The Court also is not persuaded that Movants' interest "is not adequately protected" by Homeward. (Movants' Mem. at 2, 17.) "While the burden to demonstrate inadequacy of representation is generally speaking minimal, we have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." Butler, 250 F.3d at 179 (internal quotation marks and citation omitted). "Where there is an identity of interest . . . the movant to intervene must rebut the presumption of adequate representation by the party already in the action." Id. at 179-80. A "'presumption of adequate representation' attaches in the

16

absence of 'evidence of collusion, adversity of interest, nonfeasance, or incompetence.'" St. John's Univ., 450 F. App'x at 84 (quoting Butler, 250 F.3d at 180).

Various courts in this District have determined that a named plaintiff and a putative intervenor share the same "ultimate objective" when, as here, both seek to obtain the maximum recovery arising from a contractual dispute. See MASTR Adjustable Rate Mortgages Trust 2006-OA3 v. UBS Real Estate Sec., Inc., No. 12 Civ. 7322(HB), 2013 WL 139636, at *3 (S.D.N.Y. Jan. 11, 2013) ("Proposed Intervenors share the same 'ultimate objective' against Defendant in this litigation: to obtain maximum recovery for all certificate holders by demonstrating that Defendant breached its representations and repurchase obligations under the PSAs."); see also Wells Fargo Bank, N.A. v. Wales LLC, No. 13 Civ. 6781(PGG), 2014 WL 4672395, at *4 (S.D.N.Y. Sept. 19, 2014); Mitchell v. Faulkner, No. 07 Civ. 2318(DAB), 2009 WL 585882, at *5 (S.D.N.Y. Mar. 5, 2009). Because Movants and Homeward share the same ultimate objective of obtaining the maximum recovery for Sand Canyon's alleged contractual breaches, Movants must rebut the presumption that Homeward's representation is adequate.

That Movants would choose an alternative strategy in pursuing a recovery is not sufficient. See Butler, 250 F.3d at 181 ("If disagreement with an existing party over trial strategy

qualified as inadequate representation, the requirement of Rule 24 would have no meaning."). Nor is the argument that Movants and Homeward may have different reasons for litigating. See Natural Res. Def. Council v. N.Y. State Dep't of Envtl. Conservation, 834 F.2d 60, 61-62 (2d Cir. 1987) ("A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party.") Furthermore, there can be no doubt that Homeward has vigorously prosecuted these actions: it has filed amended complaints (one in the 2006-2 Action and two in the 2006-3 Action) and engaged in motion practice related to discovery and the admissibility of statistical sampling evidence. "So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented." Id. at 62. Accordingly, Movants have not rebutted the presumption that Homeward's representation is adequate.

The Court again declines to exercise its discretion to permit intervention under Rule 24(b). Movants concede that the claims they wish to press are "legally distinct" from Homeward's claims for breach of contract. (Movants' Mem. at 10.) Even assuming the veracity of Movants' assertion that their proposed

claims and Homeward's existing claims share common questions of fact, (id. at 2-3), the Court is not persuaded that permissive intervention is warranted.  Intervention would require the reopening of fact discovery and would delay this matter, which was originally filed in 2012. See John Wiley & Sons, Inc. v. Book Dog Books, LLC, 315 F.R.D. 169, 174 (S.D.N.Y. 2016) (finding prejudice to original parties and denying Rule 24(b) motion where "intervention would require the reopening of discovery and further delay in this three-year-old case"); see also Compagnie Noga D'Importation Et D'Exportation S.A. v. Russian Fed'n, No. 00 Civ. 0632WHP, 2005 WL 1690537, at *6 (S.D.N.Y. July 20, 2005) (denying Rule 24(b) motion where putative intervenor's involvement would "substantially delay a litigation that already bears a protracted history"). Additionally, permitting Movants to intervene would "introduce new issues of law while not contributing to the development of the factual record related to the current parties' dispute." Tymoshenko, 2011 WL 5059180, at *3.  It is not clear how the evidence that Movants would marshal in support of their veil-piercing claim would contribute to or advance Homeward's claims for breach of contract, and there is a significant risk that

Movants' involvement would further complicate an already complicated matter.[5]

Accordingly, Movants' request to intervene in the 2006-3 Action is denied.

## CONCLUSION

For the reasons stated above, Movants' motions to intervene are DENIED. The Clerk of the Court is respectfully directed to close the motions docketed at ECF No. 190 in Case No. 12 Civ. 5067 and ECF No. 167 in Case No. 12 Civ. 7319, and to terminate LBF International I LLC, LBF International II LLC, and BDC Credit LLC as parties to these actions.

**SO ORDERED.**

Dated:  New York, New York
        February 12, 2018

*John F. Keenan*
John F. Keenan
United States District Judge

---

[5] These considerations apply with equal force to Movants' Rule 24(b) request to intervene in the 2006-2 Action, which, as the Court explained earlier, also suffers from a lack of timeliness.