UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
HOMEWARD RESIDENTIAL, INC., *solely in its* :
*capacity as Master Servicer for the Option One Mortgage* :
*Loan Trust 2006-2, for the benefit of the Trustee and the* : 12-CV-5067 (JMF)
*holders of Option One Mortgage Loan Trust 2006-2* :
*Certificates*, : MEMORANDUM OPINION
: AND ORDER
Plaintiff, :
:
-v- :
:
SAND CANYON CORPORATION f/k/a OPTION ONE :
MORTGAGE CORPORATION, :
:
Defendant. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In this action, Homeward Residential, Inc. ("Homeward"), solely in its capacity as Master Servicer for certain trusts (the "Trusts") and for the benefit of the trustees and beneficiaries of the Trusts, brings claims for breach of warranty and breach of contract against Sand Canyon Corporation ("Sand Canyon"), formerly known as Option One Mortgage Corporation ("Option One"), in connection with the sale of certain mortgage loans. On July 26, 2019, Homeward moved to disqualify one of Sand Canyon's experts. *See* ECF No. 309. By "bottom-line" order entered October 18, 2019, the Court denied the motion for reasons to be explained in an opinion to follow in due course. *See* ECF No. 334. This is that opinion.

## BACKGROUND

This case concerns mortgage loans sold to the Trusts in 2006 by Sand Canyon, then known as Option One, and certain of its subsidiaries. *See* ECF No. 24 ("FAC"), ¶ 1. Homeward alleges that, in connection with that sale, Sand Canyon made misrepresentations, breached

warranties, and violated contractual obligations, resulting in losses to the Trusts. *See id.* ¶¶ 67-90. Sand Canyon disputes these allegations and raises a number of affirmative defenses, including, as relevant here, a claim that the Trusts' losses are attributable, in whole or in part, to the failure of Homeward and Ocwen Loan Servicing ("Ocwen Servicing"), which is affiliated with Homeward and replaced Homeward as loan-servicer in 2013, to properly service the loans. *See* ECF No. 59 ("Answer"), ¶ 14 (Affirmative and Other Defenses).

Homeward and Ocwen Servicing have faced similar allegations in the past. In 2014, shareholders of Ocwen Financial Corporation ("Ocwen Financial"), the parent company of both Homeward and Ocwen Servicing, initiated shareholder derivative litigation alleging that various directors and officers breached their fiduciary duties by, among other things, improperly servicing loans. *See* ECF No. 311-6, ¶ 3; ECF No. 311-7, ¶ 8; ECF No. 311-8, ¶ 1. In response to this litigation, Ocwen Financial formed a Special Litigation Committee ("SLC"), which, in turn, retained the law firm of Carlton Fields Jorden Burt, P.A. ("Carlton Fields"), to investigate the allegations and to determine whether the company should refuse the shareholders' demand for litigation. *See* ECF No. 311-10. Carlton Fields attorneys based in Florida conducted a significant investigation, much of which was protected by attorney-client privilege, and unearthed certain problems relating to loan servicing. *See* ECF No. 310 ("Pl.'s Mem."), at 5, 10; ECF No. 311-10, at 2; ECF No. 311-11, at 15. Ultimately, however, Carlton Fields recommended to the SLC that it not prosecute the shareholders' claims. The SLC agreed that litigation would not be in the company's best interests and refused the shareholders' demand. ECF No. 311-11, at 7-8.

In 2016, Sand Canyon, in order to prove its affirmative defense that the Trusts incurred losses as a result of Homeward's and Ocwen Servicing's deficient loan-servicing practices, hired

2

Brian Olasov, a non-attorney, loan-servicing expert employed by Carlton Fields. *See* ECF No. 311-1 ("Fields Dep."), at 6; ECF No. 311-3; ECF No. 311-5, at 51-65. Carlton Fields conducted an internal conflict check, and cleared Olasov's engagement with Sand Canyon. *See* Fields Dep. 33-38. Sand Canyon's counsel paid fees, not to Olasov directly, but instead to Carlton Fields. *See* ECF No. 311-4. Although Olasov "occasionally" aids Carlton Fields attorneys conducting internal investigations, Fields Dep. 7, he carried out his work for Sand Canyon independently, and he did not report to an attorney, *see id.* at 9-10. Olasov works out of the firm's New York office, *id.* at 23, from which he generally has access to documents saved on the firm's shared network, *see id.* at 15-16. When Homeward notified Sand Canyon of the potential conflict, however, Carlton Fields withdrew Olasov's access to files associated with the internal Ocwen Financial investigation. *See id.* at 16. Olasov stated under penalty of perjury that he never accessed files related to the Ocwen Financial investigation, ECF No. 317, at ¶ 2, testimony that is corroborated by a "forensic examination" of Carlton Fields's computer system, Fields Dep. 16. Notably, Homeward does not contend otherwise. *See* ECF No. 321 ("Pl.'s Reply"), at 1 ("Homeward is not arguing that Mr. Olasov received confidential information from any Ocwen entity.").

## DISCUSSION

The parties vigorously dispute what standards should be applied to Homeward's motion. Noting that Olasov is not a lawyer, Sand Canyon contends that the Court should apply the standard test for whether an expert witness should be disqualified. ECF No. 315 ("Def.'s Opp'n"), at 6-7. That test calls for disqualification only where the movant shows that "(1) it was objectively reasonable for [the movant] to believe that [it] had a confidential relationship with [the expert], and (2) [the movant] actually disclosed confidential information" to the expert.

3

*Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 338 (S.D.N.Y. 2019) (citing *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 311 (S.D.N.Y. 2003)); *accord Capitol Records, Inc. v. MP3tunes, LLC*, No. 07-CV-9931 (WHP), 2010 WL 11590131, at *1 (S.D.N.Y. Apr. 15, 2010) (quoting *Rodriguez*, 293 F. Supp. 2d at 311); *see also, e.g.*, *Gordon v. Kaleida Health*, No. 08-CV-378S(F), 2013 WL 2250506, at *5 (W.D.N.Y. May 21, 2013) ("Disqualification of a party's expert is designed to protect the integrity of the judicial process by ensuring that experts do not use, even unwittingly, confidential information." (internal quotation marks omitted)). Under that test, "instances of expert disqualification are rare," *Capitol Records*, 2010 WL 11590131, at *1 (quoting *Grioli v. Delta Int'l Machinery Corp.*, 395 F. Supp. 2d 11, 13 (E.D.N.Y. 2005)), and for good reason: "If experts [were] too easily disqualified, unscrupulous attorneys [might] attempt to create relationships with numerous potential experts at a nominal fee hoping to preempt the ability of their adversaries to obtain expert assistance," *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001).

By contrast, noting that Olasov works for a law firm, Homeward contends that the Court should apply the standards applicable to disqualification of lawyers and law firms. *See* Pl.'s Mem. 17-21; Pl.'s Reply 1-3. As a general matter, disqualification of counsel "has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, . . . or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764-65 (2d Cir. 1990) (quoting *Bd. of Ed. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Courts presume that an attorney — but not an expert — received confidential information in the course of his or her representation. *See Silver Chrysler Plymouth,*

4

*Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 754 (2d Cir. 1975); *see also, e.g.*, *Gordon*, 2013 WL 2250506, at *10 ("Unlike attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged." (internal quotation marks and alterations omitted) (quoting *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004))). Significantly, however, the presumption "is a rebuttable one," and the Second Circuit has stressed that "the standard of proof for rebuttal" should not be made "unattainably high." *Silver Chrysler Plymouth*, 518 F.2d at 754 (quoting *Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir. 1955)).

      The Court need not resolve this dispute (or decide if some hybrid standard should be applied in light of the unusual circumstances of this case) because, either way, disqualification of Olasov is unwarranted. If the standard for disqualification of an expert were applicable, that would be obvious because Homeward itself does not argue that Olasov received confidential information in connection with Carlton Fields's work relating to Ocwen Servicing. *See* Pl.'s Reply 1. And if the standard for disqualification of an attorney were applicable, Sand Canyon has provided ample evidence to rebut the presumption that Olasov was privy to confidential information. *See* ECF No. 317, at ¶ 2; *see also* Fields Dep. 16. Without more, the fact that confidential files were stored on a shared computer system accessible to Olasov, *see* Fields Dep. 15-16, is not enough. That is, the mere possibility that information *could have* been obtained is not grounds for disqualification when evidence establishes that such a possibility never came to pass. *See Silver Chrysler Plymouth*, 518 F.2d at 757 (affirming the district court's denial of a motion to disqualify a junior attorney because his involvement in the law firm's representation of the movant was limited, he had "rebutted any inference . . . that he possessed confidences that [could] be used against" his former firm's client, and there was "no realistic chance that

confidences were disclosed"). And Carlton Fields has now blocked Olasov's access to files created in the course of the firm's representation of the SLC, *see* Fields Dep. 15-16, minimizing any risk that Olasov will learn confidential information in the future.

Nor can it be said that Olasov's involvement here "undermines the court's confidence in the vigor of" Carlton Fields's "representation." *Bobal*, 916 F.2d at 764-65. Homeward, of course, does not question the vigor of Carlton Fields's representation of Sand Canyon in this case (if Carlton Fields can even be said to represent Sand Canyon). And, putting aside whether it is even relevant to the analysis of disqualification here, Homeward does "not suggest[] that Carlton Fields succumbed to the temptation to dilute its efforts on behalf of the [SLC] because of Mr. Olasov's work," either. Pl.'s Mem. 14. In the final analysis, Homeward's motion, as even it appears to concede, *see id.*, is premised not upon allegations of prejudice Homeward and its affiliates actually suffered, or even on allegations of prejudice that they *could* suffer in the future, but instead on harm that they *might have* suffered, but ultimately did not. *See, e.g.*, *id.* at 11 ("*Suppose*, then . . . ." (emphasis added)); *id.* at 13 ("There *was* a 'realistic risk' that Carlton Fields' adversity to Homeward and Ocwen would chill the vigor with which Carlton Fields represented the Special Litigation Committee." (emphasis added)); *id.* at 15 ("[T]he rules themselves are the safeguard against a spillover of client confidences, and a determination of whether a conflict exists does not await inquiry into the efficiency of the law firm's measures for avoiding any such spill."); *id.* at 16 ("[*I*]*f* the members of the Special Litigation Committee had known . . . ." (emphasis added)). In such circumstances, it is disqualification — not the lack of disqualification — that would harm the integrity of the judicial system.

One housekeeping issue remains. Several documents filed in relation to the present motion were filed under seal or in redacted form. *See* ECF Nos. 309-312, 315-317, 321. When

6

pressed by the Court, however, the parties took the position that nothing needs to be filed under seal except for mortgage loan numbers contained in ECF No. 311-5, which must be redacted in accordance with Rule 5.2(a)(4) of the Federal Rules of Civil Procedure. *See* ECF Nos. 324, 325.[1] Somewhat ironically, however, Carlton Fields requests that the Court maintain under seal or in redacted form "documents related to" its representation of the SLC and Ocwen Financial individual directors. ECF No. 324 at 2. Carlton Fields argues that the SLC and the individual directors are non-parties and that the information "has become part of the record in this matter because of a collateral matter, and their expectation of confidentiality should be respected." *Id.* But judicial documents may be maintained under seal only when the presumption of public access — which is strong "even [when] a Court [does] not" rely on a document "brought to the Court's attention in connection with a contested matter," *Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 417 (S.D.N.Y. 2019) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006)) — is overcome by "competing considerations," such as "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Mut. Marine Office, Inc. v. Transfercom Ltd.*, No. 08-CV-10367 (PGG), 2009 WL 1025965, at *4 (S.D.N.Y. Apr. 15, 2009) (internal quotation marks omitted). Carlton Fields fails to carry its burden of showing that is the case here, as it does not suggest that any

---

[1] The parties also "maintain that the underlying materials themselves continue to be confidential or highly confidential, and so believe[] they should continue to be treated as designated under the Protective Order." ECF No. 311-5. The Court does not understand that to be a request that any document actually filed — including briefs, declarations, and accompanying exhibits — be maintained under seal or redacted (except pursuant to Rule 5.2(a)(4)). To the extent it is such a request, it is denied. The Protective Order in this case, as the parties acknowledge, does not entitle them to file and maintain any materials under seal. ECF No. 66, ¶ 5. And mere agreement between the parties to keep a document confidential is not sufficient to keep a "judicial document" sealed or redacted. *See, e.g.*, *United States v. Wells Fargo Bank N.A.*, No. 12-CV-7527 (JMF), 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015) (citing cases).

information or documents are privileged, and it "provides no reason other than protection of confidentiality for keeping the exhibits under seal." *Accent Delight*, 394 F. Supp. 3d at 417. In fact, it does not even identify the particular documents or portions of documents "related to" its work. Carlton Fields's request is thus denied.

## CONCLUSION

For the reasons stated above, Homeward's motion to disqualify Olasov was DENIED. Additionally, within one week of the date of this Memorandum Opinion and Order, the parties shall file unsealed and unredacted versions of all documents previously filed under seal or in redacted form (except for redactions of all but the last four digits of mortgage loan numbers contained in ECF No. 311-5 in accordance with Rule 5.2(a)(4)).

SO ORDERED.

Dated: October 31, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge