UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

HOMEWARD RESIDENTIAL, INC., solely
in its capacity as Master Servicer for the
Option One Mortgage Loan Trust 2006-2, for
the benefit of the Trustee and the holders of
Option One Mortgage Loan Trust 2006-2
Certificates,

                Plaintiff,

 - against -

SAND CANYON CORPORATION, f/k/a
Option One Mortgage Corporation,

              Defendant.

Index No.: 12-cv-5067 (JMF) (JLC)

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN TESTIMONY FROM DEFENDANT'S EXPERTS

HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
(212) 309-1000

Attorneys for Plaintiff
Homeward Residential, Inc.

## Table of Contents

Abbreviations Used.................................................................................................................iv

Table of Authorities ................................................................................................................v

Introduction .............................................................................................................................1

A.     The issues in this case ........................................................................................................1

     1.     Homeward contends that Sand Canyon breached representations and warranties it gave to two mortgage securitization trusts. ....................1

     2.     The representations and warranties at issue ......................................................2

     3.     The Purchase Price calculation ..........................................................................3

     4.     Homeward's expert reports ................................................................................4

     5.     Sand Canyon's expert reports ............................................................................6

         (i)     Reports concerning Option One's breaches ..........................................6

         (ii)    Reports concerning the Purchase Price calculation ............................7

         (iii)   This motion ...........................................................................................7

B.     The standard on this motion.................................................................................................8

Argument ...............................................................................................................................9

I.     The Court should exclude Mr. Spinelli's testimony in its entirety. .................................9

     A.     The problem of borrower misstatements .............................................................9

     B.     Redacted ...........................................................................10

     C.     Mr. Spinelli's opinions are not relevant, not reliable, and not able to assist the finder of fact. ..............................................................................11

         1.     Redacted ...........................................................11

         2.     Mr. Spinelli's conclusions lack indicia of reliability. .......................16

         3.     Redacted ...........................................................19

         4.     Mr. Spinelli has fallen short of professional standards.....................20

II.     The Court should exclude Professor Schwarcz's testimony in its entirety. ...............................................................................................................22

     A.     Redacted ...........................................................22

     B.     The Court should exclude Professor Schwarcz's testimony Redacted ...........................................................23

1.   Redacted ....................................................................... 23

2.   Redacted ................................................. 26

3.   Redacted .................................................. 26

C.   The Court should exclude Professor Schwarcz's testimony Redacted
     Redacted ......................................................... 31

D.   The Court should exclude Professor Schwarcz's testimony Redacted
     ...................................................................... 37

E.   The Court should exclude Professor Schwarcz's testimony Redacted
     ...................................................................... 39

III.   The Court should exclude Mr. Olasov's testimony in its entirety. ...................................... 40

A.   Mr. Olasov's opinions. ..................................................................................... 40

B.   The Court has already held that Homeward does not have to prove
     borrower default. ........................................................................................ 41

C.   Redacted .................................................................................. 42

D.   The Court should exclude Mr. Olasov's opinions Redacted
     ...................................................................................................... 42

E.   The Court should exclude Mr. Olasov's opinions Redacted
     ...................................................................................................... 44

     1.   The Court should exclude Mr. Olasov's opinion Redacted
          ............................................................................................... 44

     2.   The Court should exclude Mr. Olasov's opinion Redacted
          ............................................................................................... 49

     3.   The Court should exclude Mr. Olasov's opinion Redacted
          ............................................................................................... 54

F.   The Court should exclude Mr. Olasov's other opinions. ...................................... 56

     1.   The Court should exclude Mr. Olasov's opinion Redacted
          ............................................................................................... 56

     2.   The Court should exclude Mr. Olasov's opinion Redacted
          ............................................................................................... 57

     3.   The Court should exclude Mr. Olasov's opinion
          Redacted ................................................................................. 57

4.    The Court should exclude Mr. Olasov's opinion Redacted ................................................. 58

IV.    The Court should exclude Dr. Torous's Redacted Redacted ................................................. 58

A.    Redacted ................................................. 58

B.    Redacted ................................................. 60

Conclusion ................................................................................. 60

## Abbreviations Used

| | | |
|---|---|---|
| 2006-2 Pro Supp | Prospectus Supplement, Option One Mortgage Loan Trust 2006-2, dated as of June 23, 2006 | Otero Decl. Exh. A |
| 2006-3 Pro Supp | Prospectus Supplement, Option One Mortgage Loan Trust 2006-3, dated as of October 19, 2006 | Otero Decl. Exh. B |
| 2006-2 MLPA | Mortgage Loan Purchase Agreement, Option One Mortgage Loan Trust 2006-2, dated as of June 23, 2006 | Otero Decl. Exh. D |
| 2006-3 MLPA | Mortgage Loan Purchase Agreement, Option One Mortgage Loan Trust 2006-3, dated as of October 19, 2006 | Otero Decl. Exh. E |
| 2006-2 PSA | Pooling and Servicing Agreement, Option One Mortgage Loan Trust 2006-2, dated as of June 1, 2006 | Otero Decl. Exh. F |
| 2006-3 PSA | Pooling and Servicing Agreement, Option One Mortgage Loan Trust 2006-3, dated as of October 1, 2006 | Otero Decl. Exh. G |
| Spinelli Report | Expert Report of Joseph A. Spinelli, dated May 31, 2019 | Otero Decl. Exh. H |
| Spinelli Tr. | Transcript of Deposition of Joseph A. Spinelli, taken September 18, 2019 | Otero Decl. Exh. I |
| Schwarcz Report | Expert Report of Steven L. Schwarcz, dated May 31, 2019 | Otero Decl. Exh. O |
| Schwarcz Tr. | Transcript of Deposition of Steven L. Schwarcz, taken August 8, 2019 | Otero Decl. Exh. Q |
| Olasov Report | Expert Report of Brian Olasov, dated May 31, 2019 | Otero Decl. Exh. Y |
| Olasov Tr. | Transcript of Deposition of Brian Olasov, taken August 30, 2019 | Otero Decl. Exh. Z |
| Torous Report | Expert Report of Walter Torous, PhD, dated May 31, 2019 | Otero Decl. Exh. II |
| Torous Tr. | Transcript of Deposition of Walter Torous, PhD, taken September 20, 2019 | Otero Decl. Exh. AA |

## Table of Authorities

**Cases**                                                                  **Page(s)**

523 IP LLC v. CureMD.com,
  48 F. Supp. 3d 600 (S.D.N.Y. 2014)...............................................................12

ACE Sec. Corp. v. DB Structured Prod., Inc.,
  965 N.Y.S.2d 844 (N.Y. Sup. Ct.).............................................................34 n.51

Am. Commercial Lines, LLC v. Water Quality Ins. Syndicate,
  2018 WL 6332908 (S.D.N.Y. Nov. 7, 2018)...........................................30

Amorgianos v. Nat'l R.R. Passenger Corp.,
  303 F.3d 256 (2d Cir. 2002)...........................................................8, 46, 49

APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.,
  592 F.3d 108 (2d Cir. 2010)...............................................................46

AU New Haven, LLC v. YKK Corp.,
  2019 WL 1254763 (S.D.N.Y. Mar. 19, 2019) ...........................................56

Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.,
  2007 WL 1988150 (S.D.N.Y. July 10, 2007)...........................................47

Crown IT Servs., Inc. v. Koval-Olsen,
  782 N.Y.S.2d 708 (N.Y. App. Div. 1st Dep't 2004) .................................42

Daubert v. Merrell Dow Pharm., Inc.,
  509 U.S. 579 (1993)...............................................1, 8, 46, 50, 59, 60

Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured
  Prod., Inc.,
  958 F. Supp. 2d 488 (S.D.N.Y. 2013)........................................34 n.51

Deutsche Bank Nat'l Tr. Co. v. Morgan Stanley Mortg. Capital Holdings
  LLC,
  289 F. Supp. 3d 484 (S.D.N.Y. 2018)........................................57

Eskenazi v. Mackoul,
  905 N.Y.S.2d 169 (N.Y. App. Div. 2d Dep't 2010) .................................43, 43 n.65

F.H. Krear & Co. v. Nineteen Named Trustees,
  810 F.2d 1250 (2d Cir. 1987)...........................................................24, 57

Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.,
  2015 WL 539489 (S.D.N.Y. Feb. 10, 2015)........................................59, 60

Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.,
    2015 WL 685159 (S.D.N.Y. Feb. 18, 2015)....................................................48 n.69

Foros Advisors LLC v. Digital Globe, Inc.,
    333 F. Supp. 3d 354 (S.D.N.Y. 2018)....................................................................30

Homeward Residential, Inc. v. Sand Canyon Corp.,
    298 F.R.D. 116 (S.D.N.Y. 2014) ......................................................................4, 41

Hygh v. Jacobs,
    961 F.2d 359 (2d Cir. 1992)..................................................................................24

In re Gen. Motors LLC Ignition Switch Litig.,
    2017 WL 6729295 (S.D.N.Y. Dec. 28, 2017) .........................................14, 48 n.69

In re LIBOR-Based Fin. Instruments Antitrust Litig.,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018).........................................17 n.31, 57, 58

In re M/V MSC FLAMINIA,
    2017 WL 3208598 (S.D.N.Y. July 28, 2017) .................................................59, 60

In re Mirena,
    341 F. Supp. 3d 213 (S.D.N.Y. 2018)...................................................................25

In re Rezulin Prod. Liab. Litig.,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)..............................................................57, 58

In re Rezulin Prods. Liab. Litig.,
    369 F. Supp. 2d 398 (S.D.N.Y. 2005)..............................................................51, 53

J.T. Colby & Co. v. Apple Inc.,
    2013 WL 1903883 (S.D.N.Y. May 8, 2013) ........................................................52

Joffe v. King & Spalding LLP,
    2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019)................................................17, 31

Kumho Tire Co., Ltd. v. Carmichael,
    526 U.S. 137 (1999)...........................................................................8, 39, 46

Law Debenture Tr. Co. v. Maverick Tube Corp.,
    595 F.3d 458 (2d Cir. 2010)..................................................................................29

MASTR Adjustable Rate Mortgages Tr. 2006-OA2 v. UBS Real Estate
    Sec. Inc.,
    2015 WL 764665 (S.D.N.Y. Jan. 9, 2015) ....................................................34 n.51

McBeth v. Porges,
    2018 WL 5997918 (S.D.N.Y. Nov. 15, 2018).........................................................8

Musman v. Modern Deb, Inc.,
  377 N.Y.S.2d 17 (N.Y. App. Div. 1st Dep't 1975) ...................................................42, 43 n.65

Nimely v. City of New York,
  414 F.3d 381 (2d Cir. 2005)...........................................................................................8, 14, 51

Nomura Asset Acceptance Corp. Alternative Loan Trust v. Nomura Credit
  & Capital, Inc.,
  2014 WL 2890341 (N.Y. Sup. Ct. June 26, 2014), modified on other
  grounds, 2018 WL 6357913 (N.Y. App. Div. 1st Dep't 2018) .......................................34 n.51

Okun v. S. Parker Hardware Co., Inc.,
  377 N.Y.S.2d 70 (N.Y. App. Div. 1st Dep't 1975) ......................................43, 43 n.64, 44 n.66

Purchase Partners, LLC v. Carver Fed. Sav. Bank,
  914 F. Supp. 2d 480 (S.D.N.Y. 2012)....................................................................................47

Tramontane v. Home Depot U.S.A., Inc.,
  2018 WL 4572254 (S.D.N.Y. Sept. 24, 2018)........................................................................51

U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.,
  107 N.Y.S.3d 857 (N.Y. App. Div. 1st Dep't 2019) ........................................................34 n.51

U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3,
  AFL-CIO,
  313 F. Supp. 2d 213 (S.D.N.Y. 2004)...............................................................................51, 53

U.S. v. Garcia,
  413 F.3d 201 (2d Cir. 2005)...................................................................................................12

Wills v. Amerada Hess Corp.,
  379 F.3d 32 (2d Cir. 2004).....................................................................................................52

**Other Authorities**

Federal Rule of Civil Procedure 26 ....................................................................... 5 nn.13, 14 &15

Federal Rule of Evidence 702....................................................1, 8, 46, 51, 53 n.79, 57, 58, 59, 60

### Introduction

In <u>Daubert v. Merrell Dow Pharm., Inc.</u>, the Supreme Court held that "the Rules of

Evidence -- especially Rule 702 -- . . . assign to the trial judge the task of ensuring that an

expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509

U.S. 579, 597 (1993).  Defendant Sand Canyon has produced reports from eight experts.  The

testimony that four of these experts propose to give is neither reliable nor relevant to the issues in

the case, so should be excluded under Rule 702 and <u>Daubert</u>.

**A.**     **The issues in this case**

       1.     <u>Homeward contends that Sand Canyon breached representations and warranties it</u>
           <u>gave to two mortgage securitization trusts.</u>

In 2006, Sand Canyon (then known as Option One Mortgage Corporation) sold pools of

subprime mortgage loans to two mortgage securitizations trusts -- the Option One Mortgage

Loan Trust 2006-2 and the Option One Mortgage Loan Trust 2006-3.  The pool Option One sold

to the 2006-2 Trust contained about 7,500 loans with an outstanding principal balance of

approximately $1.5 billion; the pool it sold to the 2006-3 Trust contained about 7,600 loans with

an outstanding principal balance of also about $1.5 billion.[1]

In the Mortgage Loan Purchase Agreements (henceforth "MLPAs"), Option One gave the

Trusts extensive representations and warranties concerning (i) the loans (individually and in the

aggregate), (ii) Option One itself, and (iii) statements made by Option One.[2]  The MLPAs also

---

[1]     2006-2 Prospectus Supplement (Otero Decl. Exh. A) at 1, 6; 2006-3 Prospectus
Supplement (Otero Decl. Exh. B) at 1.  The 2006-3 Trust includes approximately 1,900 loans
with a combined principal balance of approximately $400 million added to the trust in January
2007.  <u>See</u> Otero Decl. Exh. C (Exhibit 99.1 to 2006-3 Trust's Jan. 3, 2007 8-K).

[2]     2006-2 MLPA (Otero Decl. Exh. D) §§ 3.01 & 3.02; 2006-3 MLPA (Otero Decl.
Exh. E) §§ 3.01 & 3.02.  Option One gave these representations and warranties in the first
instance to the "Purchaser," a wholly-owned subsidiary of Option One.  The representations and
warranties were then assigned to the Trusts in the Pooling and Servicing Agreements (henceforth
"PSA").  2006-2 PSA (Otero Decl. Exh. F) § 2.01; 2006-3 PSA (Otero Decl. Exh. G) § 2.01.

describe the remedy for breach of these representations and warranties: payment by Option One to the Trusts of the "Purchase Price," a contractually defined amount that approximates the outstanding principal balance on the loans.[3]  Both securitizations make the Trust's servicer (Homeward beginning in 2008) responsible for enforcing Option One's breaches of its representations and warranties for the benefit of the Trustees and investors.[4]

      2.   <u>The representations and warranties at issue</u>

The MLPA for each Trust contains over 50 representations and warranties about the mortgage loans being sold to the Trusts.  Homeward retained Mr. Richard Bitner, an expert in the underwriting of subprime loans, ████████ Redacted ████████

████████████████████████████████████████

████ Mr. Bitner determined ████ Redacted ████████

████████████████████████████████████████

████ The main representations and warranties ████ Redacted ████

████████████

> Each Mortgage Loan was originated substantially in accordance with the Originator's [i.e., Option One's] underwriting criteria, which are at least as stringent as the underwriting criteria set forth in the Prospectus Supplement.[5]

> There is no material default, breach of, violation or event of acceleration existing under the related Mortgage or the related mortgage Note . . . .[6]

> The information set forth on each Schedule [concerning the Mortgage Loans] is true and correct in all material respects as of the Cut-off Date or such other date as may be indicated in such schedule.[7]

---

[3]      2006-2 MLPA § 3.04 (describing remedies for breach); 2006-3 MLPA § 3.04 (same).  2006-2 PSA § 1.01 at 42-43 (defining Purchase Price); 2006-3 PSA § 1.01 at 46 (same).

[4]      2006-2 PSA § 3.02(b); 2006-3 PSA § 3.02(b).

[5]      2006-2 MLPA § 3.01(a)(28); 2006-3 MLPA § 3.01(a)(28).

[6]      2006-2 MLPA § 3.01(a)(16); 2006-3 MLPA § 3.01(a)(16).

[7]      2006-2 MLPA § 3.01(a)(4); 2006-3 MLPA § 3.01(a)(4).

Each Mortgage Loan conforms, and all Mortgage Loans in the aggregate conform, in all material respects, to the description thereof set forth in the Prospectus Supplement.[8]

Each Mortgage File contains an appraisal of the Mortgage Property indicating the appraised value at the time of origination for such Mortgaged Property.  Each appraisal has been performed in accordance with the provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989.[9]

Homeward also retained Dr. Charles Cowan, an expert statistician, ██Redacted██

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████

In addition to the loan-specific representations just described, the 2006-2 MLPA contains

a no-falsehoods-or-omissions representation and warranty:

The written statements, reports and other documents prepared and furnished or to be prepared and furnished by the Originator [i.e., Option One] pursuant to this Agreement or in connection with the transactions contemplated hereby taken in the aggregate do not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained therein not misleading.[10]

Homeward contends that Option One breached this representation and warranty in

addition to breaching certain of the § 3.01 representations and warranties.

> 3.   The Purchase Price calculation

Both MLPAs state that an uncured material breach of a loan-specific representation and

warranty requires Option One, at the Trust's option, to repurchase the loan at the Purchase Price:

Within 120 days of the earlier of either discovery by or notice to the Originator [i.e., Option One] of any breach of a representation or warranty made by the Originator that materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest therein of the Purchaser, the Originator shall use its best efforts to cure such

---

[8]   2006-2 MLPA § 3.01(a)(46); 2006-3 MLPA § 3.01(a)(46).
[9]   2006-2 MLPA § 3.01(a)(25); 2006-3 MLPA § 3.01(a)(25).
[10]  2006-2 MLPA § 3.02(xi).

breach in all material respects and, if such breach cannot be cured, the Originator shall, at the Purchaser's option, repurchase such Mortgage Loan at the Purchase Price.[11]

The 2006-2 MLPA, in addition, provides a remedy for breach of the no-falsehoods-or-omissions representation and warranty found in § 3.02(xi) of that Agreement: repurchase at the Purchase Price of <u>all</u> of the Mortgage Loans sold to the Trust:

> In the event that a breach shall involve any representation and warranty set forth in Section 3.02 and such breach cannot be cured within 120 days of the earlier of either discovery by or notice to the Originator [i.e., Option One] of such breach, all of the Mortgage Loans shall, at the Purchaser's option, be repurchased by the Originator at the Purchase Price.[12]

The Purchase Price is a formula set out in the PSAs. Homeward has retained an expert economist, Dr. Karl Snow, Redacted

Homeward is suing for Option One's breach of its representations and warranties and for the Purchase Price remedy. Homeward is not suing for losses caused to the Trusts from borrower defaults caused by Option One's breaches, and Homeward does not have to prove that Option One's breaches caused borrowers to default. The Court rejected Sand Canyon's arguments to the contrary on Sand Canyon's motion to dismiss. <u>Homeward Residential, Inc. v. Sand Canyon Corp.</u>, 298 F.R.D. 116, 131 (S.D.N.Y. 2014).

4.   <u>Homeward's expert reports</u>

Homeward produced five expert reports:

<u>Richard Bitner</u>: Redacted

---

[11]   2006-2 MLPA § 3.04; 2006-3 MLPA § 3.04.
[12]   2006-2 MLPA § 3.04.

4

Redacted

Dr. Charles Cowan: Redacted

Dr. Ming-Sung Tang: Redacted

Dr. Tang's report described the functioning of the algorithm.[14]

Dr. Karl Snow: Redacted

Professor Joseph Mason: Redacted

---

[13]   Mr. Bitner also produced a Supplemental Report pursuant to Rule 26(e) that corrected errors identified in his deposition.  He also produced a Rebuttal Report related to statements that Sand Canyon's appraisal expert made in his report.

[14]   Dr. Tang also produced a Supplemental Report pursuant to Rule 26(e) to correct errors identified in his deposition.  Dr. Cowan also produced a Supplemental Report to conform his conclusions to the revised data in Dr. Tang's Supplemental Report.

[15]   Dr. Snow also produced a Supplemental Report pursuant to Rule 26(e) to conform his conclusions to the revised conclusions of Mr. Bitner and Dr. Cowan.

**Redacted**

5.     Sand Canyon's expert reports

Sand Canyon's expert reports can be divided into reports addressing whether Option One breached its representations and warranties and reports that address the Purchase Price remedy for breach (one report addresses both subjects).

(i)     Reports concerning Option One's breaches

Sand Canyon retained Mr. Christopher Gething, a former Goldman Sachs employee, to review the loans **Redacted**

**Redacted** Sand Canyon also retained Mr. Frank Spinelli to study **Redacted** **Redacted**. And Sand Canyon retained Mr. Frank Gollop to address **Redacted** **Redacted**

Sand Canyon retained Mr. Mark Linné, an appraiser, and Professor Arnold Barnett, a statistician, to address **Redacted**



Redacted [16] Both contend that Redacted

Redacted

Sand Canyon also retained Professor Steven Schwarcz, a law professor, to address Redacted

### (ii)   Reports concerning the Purchase Price calculation

S Redacted

Redacted Sand Canyon retained Mr. Olasov Redacted

Redacted Mr. Olasov

Redacted

Redacted. Sand Canyon retained Dr. Walter Torous Redacted.

Redacted

### (iii)   This motion

By this motion, Homeward asks the Court to exclude, in its entirety, the testimony of Mr. Spinelli, Professor Schwarcz, and Mr. Olasov, and exclude, in part, the testimony of Dr. Torous.

---

[16]    2006-2 MLPA § 3.01(a)(25); 2006-3 MLPA § 3.01(a)(25).
[17]    2006-2 MLPA § 3.01(a)(4); 2006-3 MLPA § 3.01(a)(4).

**B.**     **The standard on this motion**

The rejection of expert testimony is "the exception rather than the rule." McBeth v. Porges, 2018 WL 5997918, at *6 (S.D.N.Y. Nov. 15, 2018).  However, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 595 (1993), so a district court must "make certain that an expert . . . employs . . . the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999), and must "ensure that scientific testimony is not only relevant but reliable." Daubert, 509 U.S. at 589.

"[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between [the expert's] methodology and the expert's conclusions," Nimely v. City of New York, 414 F.3d 381, 396 (2d Cir. 2005), and when the gap between the expert's data and the opinion proffered is too great, "Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony," Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002)).

To ensure that expert testimony is reliable, "the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." Id. at 265 (internal quotation marks omitted).  Moreover, "[n]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Id. at 266.

## Argument

I. **The Court should exclude Mr. Spinelli's testimony in its entirety.**

    A.     <u>The problem of borrower misstatements</u>

Borrowers affirmed that their statements in their loan applications were true and complete, but borrower misrepresentation grew as originators, including Option One, promoted "stated income" or "low-documentation" loans -- "liar loans," as they were called in the business vernacular of the time.[18]  Because borrowers often misstated their income, employment, or debts, investors in mortgage securitizations would often ask for, and get, originator representations and warranties allowing them to put loans back to the originator if borrowers had lied (and so breached the terms of their mortgage and note).  Option One gave just such a representation and warranty in the 2006-2 and 2006-3 securitizations:

> There is no material default, breach, violation or event of acceleration existing under the related Mortgage or the related Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a material default, breach, violation or event of acceleration . . . .[19]

Homeward asked its expert underwriter, Mr. Bitner, ███████ Redacted ███████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████  In making this determination, Mr. Bitner ███████ Redacted ████████████
████████████████

---

[18]     <u>See generally</u>, Financial Crisis Inquiry Commission, The Financial Crisis Inquiry Report: Final Report of the National Commission on the Causes of the Financial and Economic Crisis in the United States 110-11 (2011), <u>available at</u> https://www.govinfo.gov/app/details/GPO-FCIC.
[19]     2006-2 MLPA § 3.01(a)(16), 2006-3 MLPA § 3.01(a)(16).  <u>See also</u> 2006-2 Docket at DE 38-1, ¶ 25 (example of a mortgage making borrower misstatement or omission an event of acceleration).

B.     **Redacted**

Option One was aware of the problem of borrower fraud, and knew that it had made

loans based on borrowers' false statements.  (See note 39 below.)  But Mr. Spinelli contends that

**Redacted**

Mr. Spinelli is a former FBI agent and a former Inspector General of New York State,

and is a Certified Fraud Examiner, credentialed by the Association of Certified Fraud Examiners.

Spinelli Report (Otero Decl. Exh. H) ¶¶ 6, 7-8, 14.  He currently works for the Ankura litigation

support firm.  Id. ¶ 14.  Mr. Spinelli  **Redacted**

**Redacted**



**Redacted**

**Redacted**

---

**Redacted**

C.   Mr. Spinelli's opinions are not relevant, not reliable, and not able to assist the finder of fact.

1.   **Redacted**

**Redacted**

The Court should exclude Mr. Spinelli's evidentiary analysis.

First, it is improper.   **Redacted**

**Redacted**

11

**[Redacted]** But the very task of the finder of fact is to determine whether the evidence is sufficient to support the parties' claims.  An expert can testify that the other party is wrong about some matter, but not that the other party has not offered sufficient evidence with respect to the matter.  E.g., 523 IP LLC v. CureMD.com, 48 F. Supp. 3d 600, 634-35 (S.D.N.Y. 2014) (excluding opinions about what conclusions facts "support"; "determining the weight and sufficiency of the evidence is the factfinder's job"); see also U.S. v. Garcia, 413 F.3d 201, 210 (2d Cir. 2005) (holding that opinion evidence is not admissible "[to] tell the jury what result to reach").  **[Redacted]**

**[Redacted]**

Second, Mr. Spinelli's evidentiary opinions are anyway confused, and he cannot explain the evidentiary test he employs except to say, in effect, "I know it when I see it." **[Redacted]**

. . .

---

[21]    Spinelli Tr. (Otero Decl. Exh. I) at 31:14-19.



Redacted

---

22   Id. at 32:25-33:15.
23   Id. at 35:2-36:8.
24   Id. at 37:24-38:9.



But that notion is confused, and the analytical framework collapses under that confusion. It is fundamental that an expert's approach must be reliable, and, to be reliable, at a bare minimum it must be coherent. E.g., Nimely, 414 F.3d at 399 (incoherent method amounts to "unverifiable subjectivity, amounting to the sort of ipse dixit connection between methodology and conclusion" that must be excluded); In re Gen. Motors LLC Ignition

---

<sup>25</sup> Id. at 38:23-39:5.
<sup>26</sup> Id. at 28:24-29:2.
<sup>27</sup> Id. at 33:8-13.

<u>Switch Litig.</u>, 2017 WL 6729295, at *8 (S.D.N.Y. Dec. 28, 2017) (excluding testimony of expert

who "cannot explain the technical basis for his opinion"); <u>Smith v. Herman Miller, Inc.</u>, 2005

WL 2076570, at *5 (E.D.N.Y. Aug. 26, 2005) (excluding expert report because it did not satisfy

the "burden of demonstrating the existence of a coherent methodology").  Mr. Spinelli fails this

test.



---

[28]    Spinelli Tr. at 45:2-14 (emphasis added).
[29]    <u>Id.</u> at 46:11-22 (emphasis added).

Redacted

2.    Mr. Spinelli's conclusions lack indicia of reliability.

Redacted

30

Redacted

16



Redacted

Redacted

Redacted







3.    Redacted

Homeward sought leave to prove Option One's breaches of its representations and

warranties by means of statistical sampling -- studying a random sample of the loans in the

Trusts and extrapolating from the breach rates in the sample to the breach rates in the pools as a

whole. Sand Canyon opposed Homeward's motion on the grounds that the deal documents

required loan-by-loan proof of breaches. The Court denied Homeward's motion, persuaded by

Sand Canyon's argument that breach had to be proven loan-by-loan. 2006-2 Docket at DE 272.

**Redacted**

4.    Mr. Spinelli has fallen short of professional standards.

**Redacted**

The Code of Professional Practice of the Association of Certified Fraud Examiners requires examiners to consider both exculpatory and inculpatory evidence.[37] **Redacted**

---

[36]    Beth A. Freeborn et al., Federal Trade Commission, Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003 § 2.2 (2012) (excerpt attached as Otero Decl. Exh. J); United States Department of Justice, Public Report: Debtor Audits by the United States Trustee Program Fiscal Year 2017 § I (2018) (Otero Decl. Exh. K).

[37]    Association of Certified Fraud Examiners, Code of Professional Standards § IV.A.3.  See also Association of Certified Fraud Examiners, CFE Code of Professional Standards Interpretation and Guidance 17, available at https://www.acfe.com/uploadedFiles/ACFE_Website/Content/documents/Guidance-Professional-Standards.pdf (last visited Dec. 5, 2019) ("The requirement that CFEs consider both inculpatory and exculpatory evidence is intended to help ensure that CFEs perform fraud examinations objectively and without bias.").



---

See, e.g., Federal Bureau of Investigation, Mortgage Fraud Report 2006 (May 2007) (Otero Decl. Exh. L) (noting that "a fraud analytics company [] analyzed more than 3 million loans and found that between 30 and 70 percent of early payment defaults (EPDs) are linked to significant misrepresentations in the original loan applications.")



Redacted

\*    \*    \*    \*    \*

Redacted

II.     **The Court should exclude Professor Schwarcz's testimony in its entirety.**

A.                        Redacted

B.   The Court should exclude Professor Schwarcz's testimony Redacted

Sand Canyon contends that Option One's no-falsehoods-or-omissions representation in

the 2006-2 MLPA can't be interpreted to apply to Option One's false statements or omissions

concerning the loans Option One sold to the Trust.   Redacted

1.   Redacted

Redacted

Redacted



---

[40] Peter V. Pantaleo et al., "Rethinking the Role of Recourse in the Sale of Financial Assets," 52 Bus. Law. 159, 175 (1996) (Otero Decl. Exh. P) (emphasis added).

Redacted

2.   Redacted

Redacted

3.   Redacted

Redacted



Redacted

Redacted



Redacted

---

41    Schwarcz Tr. at 284:21-285:15 (objection omitted) (emphasis added).
42    Id. at 286:23-287:14 (emphasis added).
43    Id. at 290:20-291:5.
44    Id. at 292:2-15 (emphasis added).



Homeward will argue at trial that Option One's no-falsehoods-or-omissions

representation was breached by false statements and omissions about many, many loans; it will

not be contending that the representation was breached by a false statement or omission about

just a single loan or a handful of loans.

Second, in certain circumstances, custom and usage can be used to disambiguate contract

language, but there must be a threshold showing of ambiguity.  E.g., Law Debenture Tr. Co. v.

Maverick Tube Corp., 595 F.3d 458, 466 (2d Cir. 2010).  There can be no such showing here.

Option One's no-falsehoods-or-omissions representation states that the documents prepared by

Option One "do not contain any untrue statement of material fact or omit to state a material fact

necessary to make the statements contained therein not misleading."  2006-2 MLPA § 3.02(xi).

As written -- by Option One itself[46] -- this representation applies to all statements and omissions:

there is no carve-out for Option One's statements and omissions about mortgage loans (even

---

[45]     On materiality: the § 3.02(xi) no-falsehoods-or-omissions representation is
breached by material false statements or omissions.

[46]     Option One gave its representations and warranties in the MLPAs, and all the
parties to the MLPAs were affiliates of Option One.  The MLPAs were drafted by Thacher
Proffitt & Wood, which represented all of the parties to the MLPA.  See Otero Decl. Exhs. R &
S (stating that Thacher Proffitt & Wood acted as counsel for Option One and affiliates in
connection with the 2006-2 and 2006-3 deals), and MLPAs (which contain Thacher Proffitt
document IDs in the footer).

though, had that been the parties' intent, the representation could easily have been made to

express that intent). ████████████ Redacted ████████████

Third, evidence of custom and usage can be admitted to disambiguate contract language

only when the evidence shows that the custom and usage is "'fixed and invariable' in the

industry in question." E.g., Am. Commercial Lines, LLC v. Water Quality Ins. Syndicate, 2018

WL 6332908, at *12 (S.D.N.Y. Nov. 7, 2018) (quoting British Int'l Ins. Co. Ltd. v. Seguros La

Republica, S.A., 342 F.3d 78, 84 (2d Cir. 2003)); Foros Advisors LLC v. Digital Globe, Inc., 333

F. Supp. 3d 354, 361 (S.D.N.Y. 2018) ("[I]n order for a court to supply an omitted contract term

using 'custom and usage evidence,' the plaintiff 'must establish that the omitted term is fixed and

invariable in the industry in question.'") (quoting KJ Roberts & Co. Inc. v. MDC Partners Inc.,

2014 WL 1013828, at *10 (S.D.N.Y. Mar. 14, 2014)). ████████ Redacted ████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████

Fourth, an advocate of trade usage evidence must show "either that the party sought to be

bound was aware of the custom, or that the custom's existence was 'so notorious' that it should

have been aware of it." Am. Commercial Lines, LLC, 2018 WL 6332908, at *12. ██ Redacted ██

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



C.    The Court should exclude Professor Schwarcz's testimony Redacted
Redacted

When a borrower defaults on a loan and stops making mortgage payments, the servicer

might start foreclosure proceedings.  On foreclosure, the property securing the loan is sold and

the proceeds applied to the outstanding debt on the loan.  In almost every case, the sale of

---

47    Schwarcz Tr. at 303:15-304:2.
48    Id. at 304:18-23.

properties in these two Trusts following borrower default resulted in a loss to the Trusts because the recovery on the sale did not cover the borrower's outstanding mortgage debt.



But Sand Canyon takes the position that the Trusts are not entitled to any remedy for Option One's breaches of its representations and warranties with respect to loans on properties sold from the Trusts.







[50] See S&P/Case-Shiller U.S. National Home Price Index (2005-2019) (Otero Decl. Exh. T) (showing post-2006 market decline; home prices didn't return to 2006 levels until 2017).



---

[51]    E.g., MASTR Adjustable Rate Mortgages Tr. 2006-OA2 v. UBS Real Estate Sec. Inc., 2015 WL 764665, at *14 (S.D.N.Y. Jan. 9, 2015); Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prod., Inc., 958 F. Supp. 2d 488, 504-05 (S.D.N.Y. 2013); U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc., 107 N.Y.S.3d 857, 857 (N.Y. App. Div. 1st Dep't 2019); Home Equity Mortg. Tr. Series 2006-1 v. DLJ Mortg. Capital, Inc., 109 N.Y.S.3d 231, 233 (N.Y. App. Div. 1st Dep't 2019); Nomura Asset Acceptance Corp. Alternative Loan Trust v. Nomura Credit & Capital, Inc., 2014 WL 2890341 (N.Y. Sup. Ct. June 26, 2014), modified on other grounds, 2018 WL 6357913 (N.Y. App. Div. 1st Dep't 2018); ACE Sec. Corp. v. DB Structured Prod., Inc., 965 N.Y.S.2d 844, 850 (N.Y. Sup. Ct.), rev'd on other grounds, 977 N.Y.S.2d 229 (2013), aff'd, 25 N.Y.3d 581 (N.Y. 2015).

[52]    Transcript of March 7, 2018 deposition of Ms. St. George (Otero Decl. Exh. U) at 106:12-15.



the 2011 JPMorgan Chase 10-K acknowledging that it had resolved repurchase claims by either "repurchas[ing] the loan or the underlying collateral" or by making "make-whole payment[s]" to "reimburse the [claimant] for its realized loss on a liquidated property."[54] ▮Redacted▮ Fannie Mae's servicing guidelines, which state that in the event of a breach of a representation or warranty given by a seller of a loan, Fannie Mae may "require the lender to fully reimburse Fannie Mae for its loss through a demand for a make[-]whole payment in the event that Fannie Mae sells the property."[55] ▮Redacted▮

---

53 ▮Redacted▮

54      JPMorgan Chase & Co. Form 10-K (year ending Dec. 31, 2011) (excerpt attached as Otero Decl. Exh. V) at 116.

55      Fannie Mae Single-Family Servicing Guide (excerpt attached as Otero Decl. Exh. W) at 95.



---

[56]   Schwarcz Tr. at 94:18-95:2.
[57]   Id. at 72:5-17.

D.   The Court should exclude Professor Schwarcz's testimony ▮▮▮ **Redacted** ▮▮▮

Option One represented and warranted in § 3.01(a)(4) of the MLPAs that "[t]he information set forth in each Schedule is true and correct in all material respects as of the Cut-off Date or such other date as may be indicated in such schedule."  The PSAs required Option One to provide a Mortgage Loan Schedule containing over 30 items of information about each loan, including the loan-to-value ratio, value of the property, and borrower's FICO score.[58] ▮ Redacted ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

The capitalized term "Schedule" in § 3.01(a)(4) is not defined in the MLPAs or the PSAs. The MLPAs append certain schedules: these are referred to as "Schedules I-X" to those Agreements and contain just loan numbers and the cut-off date principal balance for each loan.[59]

▮▮▮▮▮▮ **Redacted** ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[58]   2006-2 PSA at pp. 33-34; 2006-3 PSA at pp. 35-37.
[59]   2006-2 MLPA § 2.02; 2006-3 MLPA § 2.02.



Redacted

Redacted

E.   The Court should exclude Professor Schwarcz's testimony Redacted

Redacted

III.   **The Court should exclude Mr. Olasov's testimony in its entirety.**

    A.   Mr. Olasov's opinions

Redacted

**Redacted**

B.  The Court has already held that Homeward does not have to prove borrower default.

**Redacted**

Sand Canyon argued in its motion to dismiss that Homeward had to prove borrower default to prevail; the Court rejected that argument.  Homeward Residential, Inc. v. Sand Canyon Corp., 298 F.R.D. 116, 131 (S.D.N.Y. 2014).  Homeward is not claiming that Sand Canyon should compensate the Trusts for losses resulting from borrower default: rather, as the Court has recognized, it is claiming that Option One breached its representations and warranties about the quality of the loans it sold to the Trusts, so making these loans more risky and less valuable than they would have been had they been as Option One represented them to be.  Id.  The measure of damages is the Purchase Price remedy set out in the contracts, not the loss to the Trusts caused by borrower default.  **Redacted**

41

C.   ██████████████ Redacted ██████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████  However, the

Purchase Price remedy in the PSAs is a liquidated damages provision, and there is no duty to

mitigate damages when they are specified in a liquidated damages provision. E.g., Crown IT

Servs., Inc. v. Koval-Olsen, 782 N.Y.S.2d 708, 711 (N.Y. App. Div. 1st Dep't 2004) ("[W]here a

contract contains a valid liquidated damages clause, mitigation is irrelevant."); Musman v.

Modern Deb, Inc., 377 N.Y.S.2d 17, 19 (N.Y. App. Div. 1st Dep't 1975) (a provision that is "in

essence a liquidated damages clause . . . serves to remove this case from the ordinary rule

requiring the [plaintiff] to mitigate damages"). We expect that the parties will address this issue

in their summary judgment briefing, so we won't discuss it further here. ████ Redacted ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

D.   The Court should exclude Mr. Olasov's opinions ████ Redacted ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████  But the Court

need not reach ██████████████ Redacted ██████████████

████████████████████████████████████████

42

Under New York law, a defendant asserting failure to mitigate must quantify the injury the plaintiff suffered by failing to mitigate.  E.g., Eskenazi v. Mackoul, 905 N.Y.S.2d 169, 171 (N.Y. App. Div. 2d Dep't 2010) ("A party seeking to avail itself of the affirmative defense of failure to mitigate damages must establish that the injured party failed to make diligent efforts to mitigate its damages, and the extent to which such efforts would have diminished those damages.") (emphasis added); Okun v. S. Parker Hardware Co., Inc., 377 N.Y.S.2d 70, 71 (N.Y. App. Div. 1st Dep't 1975) ("The burden to show the amount which might have been earned by the plaintiff by way of mitigation of damages is on the defendants.") (emphasis added).  Absent proof of how much damage Homeward supposedly caused the Trusts, Redacted

Redacted

Redacted

---

63  Olasov Tr. (Otero Decl. Exh. Z) at 143:16-18 (emphasis added).
64  Id. at 146: 11-14.
65  Id. at 61:4-8; see also id. at 194:14-23.



E.    The Court should exclude Mr. Olasov's opinions **Redacted**

1.    The Court should exclude Mr. Olasov's opinion **Redacted**

When a borrower defaults and foreclosure commences, the servicer must pay to maintain

the property, pay taxes and utilities, pay for property insurance, and the like.  If the property

securing the loan is not sold to a third party on foreclosure, the Trust must purchase it, and it

becomes a so-called real estate owned ("REO") property.  The servicer is then responsible for the

---

[66]    Id. at 146:14-17.
[67]    Torous Tr. (Otero Decl. Exh. AA) at 27:25-28:2, 28:12-17.

cost of maintaining and eventually selling that property. The servicer also has to pay the Trusts the interest and principal payments the borrower was obliged to pay (until such time as the servicer reasonably determines that these advances cannot be recouped on sale). The servicer is reimbursed for all these payments on the sale of the REO property. On sale, any proceeds remaining after broker and closing costs and reimbursement of the payments made by the servicer are remitted to the Trusts. In the rapidly declining home property market from 2006 onwards, the Trusts recovered little or nothing from the sale proceeds for hundreds of loans.

Redacted

Redacted

Redacted



Redacted



Redacted

\*   \*   \*   \*   \*

Redacted

2.   The Court should exclude Mr. Olasov's opinion Redacted

Redacted

(i)          Redacted

Redacted

49

Redacted

Redacted

Redacted

Redacted



---

[72]     See Appraisal Standards Board, Uniform Standards of Professional Appraisal
Practice Q&A 2 (June 10, 2011) (Otero Decl. Exh. CC) (foreclosure sales "are seldom based on
market expectations").

[73]     See, e.g., "Comparable Sales," Fannie Mae Selling Guide § B4-1.3-08 (Dec. 4,
2019) (Otero Decl. Exh. DD)  (in using REO sales as comparables in a sales comparable
appraisal, "[t]he appraiser must identify and consider any differences from the subject property,
such as the condition of the property and whether any stigma has been associated with it. The
appraiser cannot assume it is equal to the subject property.").

[74]     See Federal Housing Finance Agency, Mortgage Market Note 12-01, "A Primer
on Price Discount of REO Properties" (Otero Decl. Exh. EE) at 4 ("[T]he academic estimates
range from zero to 50 percent depending on location, time and controls used in the econometric
models, [and] the majority of estimates of REO discount in the academic literature are in the 10
to 25 percent range, particularly for nationwide averages.").

[75]     Olasov Report ¶ 130 & n.98



Redacted

Redacted

---

Olasov Tr. at 170:6-7



Redacted



3.   The Court should exclude Mr. Olasov's opinion **Redacted**

---

[80]   See Brian Olasov & KC Conway, "Faulty Appraisals Kill Banks," The American Banker (Dec. 29, 2011) (Otero Decl. Exh. FF) at 4 (referring to appraisals as "one erratic measurement"); id. at 2-3 ("The research, as described at length in the upcoming January issue of Commercial Real Estate Finance World, employs the ratio of appraised value ['AV'] to gross proceeds ['GP']. . . . In aggregate, the AV/GP of all 2,076 liquidations produces a ratio of 1.10.").

[81]   Option One Online Library, Appraisal Option Program (Apr. 11, 2007, SCC.HW1-000994124) (Otero Decl. Exh. GG).

[82]   Transcript of Deposition of Mark Linné, taken Aug. 28, 2019 (Otero Decl. Exh. HH) at 144:10-145:3; 186:7-186:22, 328:5-18.





F.    The Court should exclude Mr. Olasov's other opinions.

Mr. Olasov states a number of other opinions that should be excluded.

1.    The Court should exclude Mr. Olasov's opinion Redacted

Redacted

Redacted

Redacted    Indeed, it's clear

on the face of his Report that he is opining about how to interpret the contracts.  E.g., Olasov

Report ¶ 75 (stating that his opinion "results from evaluating the definition of 'Realized Loss' in

the PSAs [and MLPAs]"); id. ¶ 77 (discussing the interpretation of PSA term "Liquidation

Event"); id. ¶ 78 (discussing interpretation of PSA term "Final Recovery Determination").  It

_____

83    Olasov Tr. at 223:14-224:19

84    Redacted



**Redacted**

2.    The Court should exclude Mr. Olasov's opinion **Redacted**

**Redacted**

3.    The Court should exclude Mr. Olasov's opinion **Redacted**

**Redacted**

4.   The Court should exclude Mr. Olasov's opinion **Redacted**

**Redacted**

IV.   **The Court should exclude Dr. Torous's** **Redacted**

A.   **Redacted**

**Redacted**

**Redacted**

---

[85]   Torous Report (Otero Decl. Exh. II) at Exhibits 23-28.





59

B. 

## Conclusion

For the reasons stated herein, the Court should exclude in its entirety the testimony of

Messrs. Spinelli, Schwarcz, and Olasov, and exclude that of Dr. Torous as discussed herein.

Respectfully submitted,

/s/ Brian V. Otero
Brian V. Otero
Stephen R. Blacklocks
Michael B. Kruse
Sima Kazmir
200 Park Avenue
New York, NY 10166
(212) 309-1000

Attorneys for Plaintiff
Homeward Residential, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December, 2019, I served a copy of the foregoing on all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities and by email.

/s/ Brian V. Otero
Brian V. Otero